BROWNSTEIN HYATT FARBER SCHRECK, LLP
MITCHELL J. LANGBERG, SBN 171912
mlangberg@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, California  90067-3007
Telephone:   310.500.4600
Facsimile:   310.500.4602

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew J. McKissick (*Pro Hac Vice Pending*)
mmckissick@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:   702.464.7054
Facsimile:   702.382.8135

Attorneys for Defendants
ROBINHOOD MARKETS, INC. and
ROBINHOOD FINANCIAL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:21-cv-02304-LB<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 ET. SEQ.**<br><br>Date        June 3, 2021<br>Time:       9:30 a.m.<br>Dept:       Courtroom B, 15th Floor<br><br>Magistrate Judge:<br>        Honorable Laurel Beeler |

PLEASE TAKE NOTICE that, on June 3, 2021, at 9:30 a.m., or as soon thereafter as counsel may be heard in Courtroom B, 15th Floor of the above-entitled court, Defendants Robinhood Markets, Inc. and Robinhood Financial, LLC (collectively, "Defendants"), by and through their attorneys and pursuant to California Code of Civil Procedure § 425.16 *et seq.* will and do hereby move the Court to strike Plaintiff O'Shea Jackson's ("Plaintiff") Second, Third, and Fourth

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   Claims for Relief as stated in his Complaint (the "State Law claims") in their entirety.

2       Defendants move to strike on the grounds that Plaintiff's State Law Claims

3   arise from Defendants exercising their First Amendment rights of free speech on a

4   matter of public interest and that Plaintiff cannot satisfy his burden to show that his

5   claims are legally tenable.  Specifically, Plaintiff lacks standing under federal and

6   state law, Defendants are immune under § 230 of the Communications Decency Act,

7   Defendants' news article does not satisfy the commercial use requirement for each

8   of Plaintiff's State Law Claims, Plaintiff's claims are barred by the First Amendment,

9   Plaintiff's claims are preempted by federal copyright law, and Plaintiff otherwise has

10  not plead tenable claims.

11      This motion is based upon this Notice, the following memorandum of points

12  and authorities, the concurrently filed Request for Judicial Notice and declarations,

13  the pleadings and records contained herein, on such other argument and evidence as

14  may be presented at the hearing, and all matters of which this Court may take judicial

15  notice.

16

17  Dated:  April 22, 2021                    BROWNSTEIN HYATT FARBER
                                             SCHRECK, LLP
18

19

20                                           By:  /s/ Mitchell J. Langberg
                                                 MITCHELL J. LANGBERG
21                                               Attorneys for Defendants
                                                 ROBINHOOD MARKETS, INC.
22                                               AND ROBINHOOD FINANCIAL,
                                                 LLC
23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16 ET. SEQ.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................. 1

II.   STATEMENT OF FACTS .................................................... 2

III.  ARGUMENT ........................................................................ 4

    A.    California's Anti-SLAPP Law In Federal Court ................ 4

    B.    The Article Meets The First Prong Of The Anti-SLAPP Analysis ............................................................................. 5

    C.    Plaintiff's State Law Claims Must Be Dismissed Because He Cannot Meet His Burden Under The Second Prong Of The Anti-SLAPP Analysis ........................................................... 7

        1.    Plaintiff lacks standing for his State Law Claims under both state and federal law. ........................................... 7

        2.    Section 230 of the Communications Decency Act provides an absolute immunity for all of Plaintiff's State Law Claims ............................................................. 10

        3.    Plaintiff cannot meet the second prong of the anti-SLAPP analysis because the Article does not satisfy the commercial use requirement for each of his state claims ........ 12

        4.    Plaintiff's state claims all fail because they are barred, as a matter of law, by the First Amendment ..................................... 13

        5.    Plaintiff's state claims are preempted by federal copyright law ............................................................................. 15

IV.  CONCLUSION ................................................................... 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

CASE NO. 3:21-cv-02304-LB

NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 ET. SEQ.

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. National Video, Inc.*
610 F.Supp. 612 (S.D.N.Y. 1985) .................................................................. 12

*Bolger v. Youngs Drug Prods. Co.*,
463 U.S. 60 (1983) ........................................................................................ 13

*California Federal S. & L. Assn. v. Guerra*,
479 U.S. 272 (1987) ...................................................................................... 15

*Callahan v. Ancestry.com, Inc.*,
Case No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 3,
2021) ....................................................................................................... 10, 11

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...................................................................... 10

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ........................................................................ 4

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ........................................................................ 14

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................ 10

*Edgar v. MITE Corp.*
457 U.S. 624 (1982) ...................................................................................... 15

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ................. 8

*Hebrew University of Jerusalem v. General Motors LLC*,
878 F.Supp. 2d 1021 (C.D. Cal 2012), vacated, 2015 WL 9653154
(C.D. Cal. 2015) ............................................................................................ 13

*Lee v. Am. Nat. Ins. Co.*,
260 F.3d 997 (9th Cir. 2001) .......................................................................... 7

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ................................................................ 6

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ................................................................. 5

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................... 7, 8

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) ................................................................ 4

*Tin Pan Appel v. Miller Brewing Co.*,
    737 F.Supp. 826 (S.D.N.Y. 1990) ........................................................ 12

*Wendt v. Host Intl'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ............................................................... 13

*White v. Samsung Electronics America, Inc.*,
    971 F.2d 1385 (9th Cir. 1992) .................................................... 8, 12, 13

*Yeager v. Cingular Wireless LLC*,
    673 F.Supp.2d 1089 (E.D. Cal. Dec. 7, 2009) .................................... 14

**California Cases**

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006) ........................................................................... 6

*Barry v. State Bar of California*,
    2 Cal. 5th 318 (2017) ........................................................................... 4

*Briggs v. Eden Council for Hope & Opportunity*,
    19 Cal. 4th 1106 (1999) ........................................................................ 4

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) ........................................................................... 5

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019) ........................................................................... 6

*Fleet v. CBS, Inc.*,
    50 Cal.App.4th 1911 (1996) ......................................................... 15, 16

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ................................................................. 6

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 ......................................................................... 5

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ......................................................................... 5

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) .............................................................. 6

*Traditional Cat Ass'n, Inc. v. Gilbreath*,
    118 Cal. App. 4th 392 ......................................................................... 5

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010) .............................................................. 5

**Federal Statutes**

17 U.S.C.
    § 301(a) ......................................................................................... 15

47 U.S.C.
    § 230(c)(1) ...................................................................................... 10
    § 230(e)(3) ...................................................................................... 10

**California Statutes**

California Business & Professions Code
    § 17200 ............................................................................... 10, 12, 16
    § 17204 ........................................................................................... 8

California Civil Code
    § 3344 .................................................................................... 10, 16
    § 3344(a) ...................................................................................... 8, 12

California Code of Civil Procedure
    § 425.16 ......................................................................................... 2, 4
    § 425.16(a)(1) ................................................................................... 4
    § 425.16(b)(1) ................................................................................... 4
    § 425.16(e) ...................................................................................... 5

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16 ET. SEQ.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Robinhood Snacks ("Snacks") are daily and weekly newsletters that deliver financial news, analysis, and insights in a format and tone that distinguishes them from stereotypical dry financial reporting.  One way Snacks accomplishes this is by including pop culture references and images that relate to the subject matter of the content, usually using the references and images to  make light of the newsworthy topic to make it more relatable to readers.

Plaintiff brought this meritless lawsuit because a Snacks newsletter entitled "Why are tech stocks falling?" had the temerity to introduce a serious topic of significant public interest—stock market corrections—by including a still frame from the movie "Are We Done Yet?" along with the caption, "Correct yourself, before you wreck yourself."

As Plaintiff would have it, because his movie character was depicted in the still frame and because he claims to be known for the ubiquitous and oft-parodied phrase "check yo self before you wreck yo self," Defendants are liable for misappropriating his name and likeness and engaging in unfair competition (under California law) and for violating the Lanham Act (under federal law).

Plaintiff's lawsuit is a classic strategic lawsuit against public participation ("SLAPP").  Snacks are available for anyone to access on the Internet.  Therefore, they are published in a public forum.  Snacks report digestible news on business, the markets, and the economy.  Therefore, Snacks content is a matter of public interest. Pursuant to California's anti-SLAPP law, Plaintiff's State Law Claims must be dismissed because he cannot possibly demonstrate a likelihood of success on the merits.  Beside the fact that he lacks standing to assert his claims because he has not suffered any cognizable damages, there are several absolute legal defenses that he cannot overcome.  His state claims are barred by Section 230 of the Communications Decency Act and by copyright preemption.  They are also barred based on the First

Amendment.

As a result, Plaintiff's State Law Claims should be dismissed pursuant to California Code of Civil Procedure section 425.16—California's anti-SLAPP law.

## II.    STATEMENT OF FACTS

The majority of Plaintiff's allegations have nothing to do with the merits (or lack thereof) of his claims.  Instead, they are clearly intended to garner publicity for Plaintiff.  In asserting his meritless claims as a public relations stunt, Plaintiff apparently has no regard for the burden he places on the Court.

Separating Plaintiff's ostensible indignation about Robinhood from his substantive allegations, Plaintiff's claims are based on a single event—the publication of a Snacks newsletter entitled "Why are tech stocks falling?" on March 8, 2021 (the "Article").[1]  Plaintiff characterizes this news and commentary piece in conclusory fashion as an "advertisement . . . for Robinhood's financial services and products[.]"[2]  Yet, on its face, the Article is far from an advertisement.[3]  It is quite obviously a report on topical financial news regarding a correction in the price of "tech stocks," complimented by some associated commentary.[4]

To introduce the topic in a light and humorous way, the Article leads with a photograph and the tagline, "correct yourself, before you wreck yourself."[5]  Plaintiff alleges the photograph depicts his "image and likeness."[6]  He conveniently leaves out that the photograph is actually a still shot which depicts his character from the movie,

---

[1] Compl., ¶ 26 – ECF No. 1.  Citations refer to material in the Electronic Case File ("ECF"), where appropriate, pinpoint citations are to the ECF-generated page numbers at the top of documents.
[2] *Id.*
[3] Compl. Ex. 1 – ECF No. 1-1, 1-8.
[4] The Article explains that a drop of 10% or more from a stock's (or index's or market's) most recent high is a correction and a drop of 20% turns a correction into a "bear market." The Article reports that, just days before, the Nasdaq had momentarily been down 12% since its recent high.  The Article informs readers that just five high-profile tech stocks make up 21% of the S&P 500's value.  It then goes on to comment that many investors believe the tech sector is overvalued, leading to the Article's overall educational takeaway: corrections are normal but necessary to correct the price of overvalued stock, "like a small dip in the hill toward reaching investing goals."
[5] *Id.*
[6] Compl., ¶ 26 – ECF No. 1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

"Are We Done Yet?"[7]—a copyrighted work he does not own.[8]  The still shot, itself, was obtained from The Everett Collection, an online third-party image aggregator, to which Snacks maintained an annual paid subscription.[9]  Plaintiff also incorrectly claims the tagline is a misquote of "the most well-known lyric" from one of his songs.[10]

Though the Article does not even mention his stage name, Plaintiff felt compelled to allege that "Ice Cube" is a federally registered trademark, bearing the Registration Number 3717252.[11]  That registration is a word mark for "Ice Cube" for musical sound recordings, musical video recordings, clothing and entertainment, namely, acting services and live musical performances.[12]  The referenced trademark never appears in the Article, nor has Plaintiff claimed to own a registered trademark for any song lyric.

Anyone could be forgiven for being confused as to why Plaintiff's complaint includes allegations regarding his trademark because he does not allege a trademark infringement.  Nor does he allege a copyright infringement.  Instead, Plaintiff merely claims that the Article—a news report and related commentary—"creates the false impression that [Plaintiff] supports and endorses Robinhood's products and services."[13]

By using an image from a movie in which Plaintiff was cast and comically parodying a ubiquitous phrase, Plaintiff claims that "Defendants' conduct will damage [Plaintiff's] ability to enjoy, maintain, and exploit his hard-won recognition – and indeed, threatens to disrupt his contractual relationships with current and pending third-part endorsements."[14]

---

[7] Fact No. 1, Request for Judicial Notice.
[8] Fact Nos. 2 & 3, Request for Judicial Notice.
[9] Declaration of J. Burgess, ¶ 5.
[10] Compl, ¶ 27 – ECF No. 1.
[11] Compl, ¶ 24 – ECF No. 1.
[12] Fact No. 4, Request for Judicial Notice.
[13] Compl, ¶ 27 – ECF No. 1.
[14] Compl, ¶ 39 – ECF No. 1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Remarkably, Plaintiff does not identify a single lost sale or other particular damage resulting from Defendants' alleged misconduct, despite the fact that he is required to do so to establish standing under both federal and state law.

## III.   ARGUMENT

Meritless state law claims that arise from a defendant's exercise of the First Amendment right of free speech on matters of public interest must be stricken pursuant to California's anti-SLAPP statute.

### A.   California's Anti-SLAPP Law In Federal Court

California Code of Civil Procedure section 425.16 (the "anti-SLAPP Statute") applies to state law claims that are filed in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013)

Pursuant to the anti-SLAPP Statute, any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1).  Section 425.16 is to "be construed broadly."  Cal. Code Civ. Proc. § 425.16(a)(1); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1121–1122 (1999).

A two-pronged process determines whether a cause of action must be stricken under the anti-SLAPP Statute.  Under the first prong, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from protected activity." *Barry v. State Bar of California*, 2 Cal. 5th 318, 321 (2017).

If the defendant's activity is protected, under the second prong, the plaintiff then bears the burden to demonstrate "a probability of prevailing on the claim."  *Id.* That is, plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment

- 4 -

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

Critically, under the second prong, a ***defendant does not "have to make a preemptive factual showing to negate what [plaintiff] might present to satisfy [its] burden.***" *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010) (emphasis added). "The court accept[s] as true the evidence favorable to the plaintiff [citation] and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." *Id.* In order to show a probability of success on the merits under prong two, plaintiff must defeat any privilege or legal defenses raised by the defendant. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 926–927. This includes any constitutional defenses. *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 398 (the anti-SLAPP statute "contemplates consideration of the substantive merits of the plaintiff's complaint, as well as all available defenses to it, including, but not limited to constitutional defenses.").

Where the defendant has made a prima facie showing that the plaintiff's claims arise from protected activity ***and*** plaintiff fails to establish a reasonable probability of prevailing on his claims, those claims must be stricken. *See Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).

## B.    The Article Meets The First Prong Of The Anti-SLAPP Analysis

The March 8 Snacks Newsletter, its use of a movie still frame, and its parody of a song lyric meets the first prong of the anti-SLAPP test because it is protected free speech. To meet the first prong of the anti-SLAPP analysis, a defendant ***is not*** required to show that a claim "has had, or will have, the actual effect of chilling the defendant's exercise of free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 75 (2002). Thus, a defendant meets the first prong merely if it shows "the conduct underlying the plaintiff's cause of action" was "itself" an "act in furtherance of the right of petition or free speech." *Id.* at 78.

Acts qualifying for such protection are defined in California Code of Civil

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Procedure 425.16(e):

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

The Article clearly meets the criteria of both Subsections (e)(3) and (e)(4). First, websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP Statute. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n. 4 (2006); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 n. 3 (9th Cir. 2017) (posting of photographs on websites accessible to the public is a publication in a public forum).  To be clear, although Snacks are free to the public, it would not matter whether a subscription was required, nor does it matter whether the public can contribute to the content. "[A] newspaper or magazine need not be an open forum to be a public forum—it is enough that it can be purchased and read by members of the public." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1037–1038 (2008).

The term "public interest" is construed broadly.  *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007).  Indeed, "[a]ny issue in which the public takes an interest is of 'public interest.'" *Id*. at 1039.  To be sure, reporting and commenting on financial news to educate and inform the public about a price correction in one segment of the stock market is a matter of general public interest.  The use of an image and tagline to help illustrate the point does not change that.  Even if the image and tagline were to be considered independently of the text of the article, to merit protection, the issue need not be significant or of any particular social utility.  *FilmOn.com Inc. v.*

*DoubleVerify Inc.*, 7 Cal. 5th 133, 246 (2019).

Because the Article pertains to a matter of public interest and particularly because it was published in a public forum, Defendants' meet the first prong of the anti-SLAPP analysis.

**C.    Plaintiff's State Law Claims Must Be Dismissed Because He Cannot Meet His Burden Under The Second Prong Of The Anti-SLAPP Analysis**

Under the second prong, Plaintiff cannot show that his claims are legally tenable, and he cannot overcome Defendants' legal defenses.  As noted above, Defendants have no obligation to preempt Plaintiff's showing.  However, because Plaintiff's state claims fail as a matter of law, Defendants address some of the key points that demonstrate that Plaintiff cannot meet his burden.

1.    Plaintiff lacks standing for his State Law Claims under both state and federal law.

A plaintiff asserting state law claims in federal court must satisfy the requisite injury requirement to establish standing under Article III.  *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001).  Here, Plaintiff lacks standing under both Article III and state law.

To invoke the powers of the Court under Article III, Plaintiff must show that he: (1) suffered an injury (2) that is fairly traceable to Defendants' conduct, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  At the pleading stage, Plaintiff is required to "clearly allege facts" demonstrating each element. *Id.* (citation omitted).  Satisfaction of this three-part Article III standing test ensures that this Court does not exceed its constitutional authority. *Id.*

Injury-in-fact is the "'first and foremost' of standing's three elements."  *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998).  As a constitutional requirement, the failure to show an injury-in-fact cannot be cured by

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

relying on a statute that grants the right to sue to a plaintiff "who would not otherwise have standing." *Id.* at 1548 (citation omitted). To satisfy this requirement, Plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). To be concrete, the injury "must be 'de facto'; that is, it must actually exist.... [and be] 'real,' and not 'abstract.' " *Id.* (citing dictionaries). To be particularized, the injury must "'affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Importantly, **both** requirements—concreteness and particularization—must be established; one alone is not enough. *See id.*

Plaintiff's State Law Claims each require an actual injury grounded in fact which was caused by Defendants' conduct. To have standing under California's Unfair Competition Law ("UCL"), the plaintiff must have "suffered an injury in fact and [have] lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. § 17204 (emphasis added). Similarly, standing under California's statutory misappropriation of likeness framework requires that the plaintiff be "injured *as a result*" of the defendant's conduct. Cal. Civ. Code § 3344(a) (emphasis added). An essential element of a common law right of publicity claim under California law requires a "*resulting* injury." *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385, 1397 (9th Cir. 1992) (emphasis added).

In this Court, the injury-in-fact element is a formidable barrier to entry in many instances involving Internet-based conduct. *See In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *4 (N.D. Cal. Dec. 3, 2013) ("[T]hough injury-in-fact may not generally be Mount Everest. . . in the Northern District of California, the doctrine might still reasonably be described as Kilimanjaro."). Where a plaintiff alleges that the defendant profited from the use of his or her likeness, simply pointing to the defendant's profits is insufficient to confer standing. *Id.* at 5 ("[A] plaintiff must do more than point to the dollars in a

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own.").

Here, Plaintiff fails to establish any injury that is both concrete and particularized.    Plaintiff fails to explain how the Article explicitly misleads consumers.   The Complaint is similarly devoid of any facts demonstrating that the Article creates the misimpression that Plaintiff sponsors, endorses, or is affiliated with Defendants—the alleged harms are merely conclusory statements with no factual basis.   For example, Plaintiff alleges that Defendants' conduct "threatens to disrupt his contractual relationships with current and pending third-party endorsements," and that he will suffer a "diversion of trade" and "loss of profits" by virtue of Defendants' conduct without offering any details showing a diversion of trade or loss of profits.[15]

Plaintiff's proffered injuries are purely speculative—they do not actually exist. Plaintiff fails to allege any real-world examples where a contractual relationship was disrupted or where he suffered a value reduction in any property interest he may have. In doing so, Plaintiff fails to make the factual connection showing how Defendants'' conduct *resulted* in economic harm.   The gist of Plaintiff's complaint is that he was offended by Defendants' use of an image from a movie in which he was cast and by comically referencing a ubiquitous phrase.   Not only does Plaintiff have no legally cognizable interest in the materials in which he relies, being offended is simply not enough to invoke the powers of the Court.   Ultimately, Plaintiff's allegations amount to nothing more than a bare recitation of the elements of each cause of action.

Because Plaintiff cannot meet the essential standing element on his State Law Claims, he cannot satisfy the second prong of the anti-SLAPP analysis.   The anti-SLAPP motion should be granted for that reason alone.

---

[15] Compl., ¶ 8 – ECF No. 1

1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

2.  <u>Section 230 of the Communications Decency Act provides an absolute immunity for all of Plaintiff's State Law Claims</u>

Section 230 of the Communications Decency Act provides that: "[n]o provider or member of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This immunity encompasses each of the State Law Claims Plaintiff asserts against Defendants because the website for the Snacks Newsletter is an interactive computer service.  47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (section 230 barred misappropriation of right of publicity claim); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (section 230 barred California unfair competition claim).

Courts have treated § 230 immunity as being "quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.' " *Carafano*, 339 F.3d at 1123. An interactive computer service is entitled to immunity so long as it does not also "function as an information content provider ***for the portion of the statement or publication at issue***." *Id.* (emphasis added).  Where a "third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Id.* at 1124.

*Callahan v. Ancestry.com* provides a recent example of § 230 immunity. In that case, plaintiff brought claims against Ancestry.com under Cal Civ. Code § 3344 and Cal Bus. & Prof. Code § 17200, alleging violations of his rights of publicity and unfair competition, based on Ancestry.com's use of yearbook photos, which it obtained from third-party sources.  *Callahan v. Ancestry.com, Inc.*, Case No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 3, 2021).  Despite the fact that Ancestry.com did not obtain the content from the people who created the yearbook

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

photos, Ancestry.com was nonetheless immune from liability because this content was created entirely by third parties.  *Id.* at *6.  Further, even though Ancestry.com added information to accompany this third-party content, these actions did not amount to "creating content" and thus did not act to strip Ancestry.com of its immunity. *Id.* at *6.  As the Court explained, "by taking information and photos from [third parties] and republishing them on its website . . . [Ancestry.com] engaged in 'a publisher's traditional editorial functions [that] [ ] do not transform an individual into a content provider within the meaning of § 230.  *Id.* at *6 (quoting *Fraley v. Facebook*, 830 F.Supp.2d 785, 802 (N.D. Cal 2011).  As such, Ancestry.com was immune under § 230.  *Id.*

There can be no question that the Snacks website is an interactive computer services—a fact established by Plaintiff's allegations in Paragraph ¶4 of his complaint that the " 'Robinhood Snacks' website and app . . . [is accessible to] millions of consumers across the United States." The Snacks website is indeed accessible to millions of consumers across the country, and there are no limitations placed on this access.[16] A Snacks consumer does not need to be a customer of Defendants' other services to view the content on the Snacks website, and this content is offered completely free of charge.

The image used in the Article was provided by a third-party image aggregator, Everett Collection.[17]  Generally, images used on the Snacks website relate to the subject matter of the content directly by invoking similar concepts, related emotions, or by providing examples through pop culture references to illustrate or make light of topics related to stock market news.  Plaintiff has not alleged—nor could he within the bounds of Rule 11—that the image at issue here was altered in any way.

Because the Snacks website is an interactive computer service and the image at issue here was provided by a third-party information content provider (i.e. Everett

---

[16] Fact No. 5, Request for Judicial Notice.
[17] Declaration of J. Burgess, ¶ 5.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Collection), Defendants are immune under § 230 of the Communication Decency Act from Plaintiff's State Law Claims because they rely entirely on the still frame.

Because Plaintiff's state claims are barred by the Communications Decency Act, the anti-SLAPP motion should be granted.

3.   <u>Plaintiff cannot meet the second prong of the anti-SLAPP analysis because the Article does not satisfy the commercial use requirement for each of his state claims.</u>

As discussed above, the Article on its face was a non-commercial report of news, including educational commentary.  But, by their nature, Plaintiff's unfair competition and right-of-publicity claims only protect commercial interests. California's UCL framework also only prohibits business practices that are "unlawful, unfair or fraudulent." [18]  Cal. Bus. & Prof. § 17200.

Similarly, the right of publicity generally protects an individual's ability to control the commercial exploitation of his or her likeness.  Under California Civil Code § 3344(a), liability is established "for purposes of advertising or selling, or soliciting purchase of products, merchandise, goods or services . . ."  Cal. Civ. Code § 3344(a).  And under California common law, liability is established for the "appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise[.]"  *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385, 1397 (9th Cir. 1992).

Cases involving a celebrity contain a common thread—the allegedly improper use of the plaintiff's likeness is an exploitation through commercial speech, usually through an advertisement.  *See, e.g., Allen v. National Video, Inc.* 610 F.Supp. 612 (S.D.N.Y. 1985) (where Woody Allen sued the defendant for using a look-alike in an advertisement promoting defendants' franchised video rental chain); *Tin Pan*

---

[18]  Because § 17200 is stated in the disjunctive, each of these grounds are based on separate legal theories which are subject to different and, in some cases, special pleading rules.  Because Plaintiff fails to explain which theory he relies, his § 17200 claim fails to state a claim for which relief can be granted.  Compl., ¶ 57 (where Plaintiff relies on the blanket statement that Defendants actions "constitute unfair, unlawful, *and* fraudulent business practices . . .") (emphasis added).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Appel v. Miller Brewing Co.*, 737 F.Supp. 826 (S.D.N.Y. 1990) (where Miller used look-alikes of the three-person rap group "The Fat Boys" in a television commercial promoting its beer); *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385 (9th Cir. 1992) (where gameshow hostess Vanna White sued Samsung for the use of a robotic look-alike in a television commercial); *Wendt v. Host Intl'l, Inc.*, 125 F.3d 806 (9th Cir. 1997) (where the actors who played Cliff and Norm in the television show "Cheers" sued based on robotic look-alikes at Cheers-themed bars in airports); *Hebrew University of Jerusalem v. General Motors LLC*, 878 F.Supp. 2d 1021 (C.D. Cal 2012), vacated, 2015 WL 9653154 (C.D. Cal. 2015) (dismissing claims based on the use of Einstein's image in an ad for the car company).  The "core notion" of commercial speech is that it "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Co.*, 463 U.S. 60, 66 (1983) (citations and quotations omitted).

Here, in contrast to the above examples, the Article is fundamentally noncommercial in nature.  The Article does not present an offer for the sale of goods or services, it does not solicit business, it does not promote the Defendants, and it is offered completely free of charge.  It certainly is not an advertisement when its entire content reported current financial news about tech stocks and provided educational commentary about what constitutes a "correction" and the role of corrections in equity markets.  The Article contains no "call to action," asking the reader to engage in a commercial transaction.

Considering the actual Article at issue as placed on the actual Snacks website, under no set of facts can Plaintiff provide evidence of the requisite commercial use.  Therefore, Plaintiff cannot make out his name and likeness for a UCL claims.  For those reasons, the anti-SLAPP motion should be granted.

4.   Plaintiff's state claims all fail because they are barred, as a matter of law, by the First Amendment

The Article's content was newsworthy and provided educational commentary

- 13 -

relevant to the investing public, and it is therefore protected by the First Amendment. It is well settled that "no cause of action will lie for the publication of matters of the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The First Amendment defense extends "to almost all reporting of recent events[.]" *Id.* (citation omitted). "The First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guarantees of freedom of speech and of the press." *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1096 (E.D. Cal. Dec. 7, 2009) (citations omitted). To balance these interests, a court must evaluate the "nature of the precise information conveyed and the context of the communication." *Id.*

The context of the communication is particularly important; namely, whether the communication is commercial in nature. For example, in *Downing*, the defendant-clothing manufacturer used photographs of famous surf legends in its commercial catalog, which included news information, but primarily promoted its business. *Downing*, 265 F.3d at 1000–02. Because of its commercial character, the *Downing* Court found that the defendant's use of the plaintiff's likeness amounted to "window dressing." *Id.* at 1002. Similarly, the claims in *Yeager* related to communications about the devastation wrought by Hurricane Katrina, which, while newsworthy, were clearly intended to promote the defendant's wireless services. *Yeager*, 673 F.Supp.2d at 1098–99. The commercial nature of these communications swayed the respective courts to find that the First Amendment defense did not apply.

Conversely, as an editorial news report, the Article falls squarely within the protection afforded by the First Amendment. As noted, the Article provides news updates on an important matter of public concern (i.e. the stock market), and its non-commercial nature bolsters that protection. Defendants' use of the materials at issue is relevant to the topic being discussed—corrections in the stock market. These

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

materials effectively "tee up" the topic, linking the materials and the newsworthy topic in a meaningful and humorous way.

As such, Defendants' editorial newsletter is entitled to full First Amendment protection and the anti-SLAPP motion should be granted.

5.      Plaintiff's state claims are preempted by federal copyright law

Just like any state law, California's statutory and common law-based causes of action related to unfair competition and rights of publicity are subject to preemption under the Supremacy Clause of the United States Constitution if they "actually conflict[] with a valid federal statute" or if they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Edgar v. MITE Corp.* 457 U.S. 624, 631 (1982).   In addition, "Congress is empowered to pre-empt state law by so stating in express terms." *California Federal S. & L. Assn. v. Guerra*, 479 U.S. 272, 280 (1987).  Plaintiff's claims are preempted here.

Section 301 of Copyright Act expressly prohibits states from legislating in the area of copyright law.  It states: "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, ***no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State***." 17 U.S.C. § 301(a) (emphasis added).

The fact that actors cannot assert state law rights in another's federally protected motion picture is well settled in California.  On this point, *Fleet v. CBS, Inc.* is instructive.  In *Fleet*, an actor in the movie "White Dragon" sought to prevent the dissemination of individual pictures from the movie, relying on his right of publicity and unfair competition under state law.  *Fleet v. CBS, Inc.*, 50 Cal.App.4th

1911 (1996).  The actor claimed that CBS made unauthorized uses of his likenesses by using still-frame images from the movie in various advertisements and promotional materials.  The *Fleet* Court analyzed the actor's claims under California's common law, Civil Code § 3344, and Business and Professions Code § 17200—the exact same bases of Plaintiff's State Law Claims here.

The *Fleet* Court found that the actor's claims were preempted under federal copyright law.  The Court held that the actor was, in essence, attempting to assert rights in materials that fell within CBS' exclusive rights based on its copyright in the movie, explaining that "because a performance is fixed in tangible form when it is recorded, a right of publicity in [such] performance . . . is subject to preemption." *Id.* at 1924 (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players*, 805 F.2d 663, 677, n. 26 (7th Cir. 1986)).  Accordingly, "[a] claim asserted to prevent nothing more than the reproduction . . . distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." *Id.*

Here, Plaintiff has not alleged that he owns the copyright in the still frame that depicts his movie character, as used in the Article—nor could he do so in good faith.  Just like the still frames used in *Fleet*, the image at issue is a single frame from the movie "Are We Done Yet?" in which Plaintiff starred.  As the *Fleet* Court stated when considering whether California's law was preempted by copyright law, if what plaintiff is "seeking is to prevent a party from exhibiting a copyrighted work they are making a claim 'equivalent to an exclusive right within the general scope of copyright.'" *Id.*at 1920.  Thus, preemption applied.

For the same reason that the *Fleet* actor's claims were preempted, so too are Plaintiff's State Law Claims here.  Plaintiff is attempting to assert his state law right of publicity under California common law and Civil Code § 3344, as well as unfair competition under Business and Professions Code § 17200, to prevent Defendants from reproducing, distributing, and displaying an image from a movie in which Plaintiff has no rights.  Once Plaintiff's performance in "Are We Done Yet?" was

- 16 -

CASE NO. 3:21-cv-02304-LB

NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 ET. SEQ.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

fixed in tangible form (i.e., upon being recorded), any and all rights in and related to that performance were subsumed by the movie studios' copyrights in the film. Because the rights to reproduce, distribute, and display the film (or any portion of it) fall within the exclusive scope of protection afforded to the copyright owners under Section 106 of the Copyright Act, Plaintiff's State Law Claims are preempted under federal copyright law.

Because Plaintiff's claims under state law are preempted, he cannot meet his burden under the second prong of the anti-SLAPP analysis and this anti-SLAPP motion should be granted.

## IV.   CONCLUSION

It is hard to imagine that Plaintiff seriously believed that Defendants were commercially trading on his persona when the Article was published.  Regardless of what he thought and his feelings about Defendants, the Article represents the exercise of free speech rights on a matter of public concern.  Because his state claims are legally untenable and without merit, they must be dismissed under the anti-SLAPP Statute.

Dated:  April 22, 2021

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By:  /s/ Mitchell J. Langberg
     MITCHELL J. LANGBERG
     Attorneys for Defendants
     ROBINHOOD MARKETS, INC.
     AND ROBINHOOD FINANCIAL,
     LLC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007