BROWNSTEIN HYATT FARBER SCHRECK, LLP
MITCHELL J. LANGBERG, SBN 171912
mlangberg@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, California  90067-3007
Telephone:   310.500.4600
Facsimile:   310.500.4602

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew J. McKissick (*Pro Hac Vice Pending*)
mmckissick@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:  702.464.7054
Facsimile:   702.382.8135

Attorneys for Defendants
ROBINHOOD MARKETS, INC. and
ROBINHOOD FINANCIAL, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:21-cv-02304-LB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)**<br><br>Date       June 3, 2021<br>Time:      9:30 a.m.<br>Dept:       Courtroom B, 15th Floor<br><br>Magistrate Judge:<br>       Honorable Laurel Beeler |

PLEASE TAKE NOTICE that, on June 3, 2021, at 9:30 a.m., or as soon thereafter as counsel may be heard in Courtroom B, 15th Floor of the above-entitled court, Defendants Robinhood Markets, Inc. and Robinhood Financial LLC (collectively, "Defendants"), by and through their attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) will and do hereby move the Court to dismiss with prejudice Plaintiff O'Shea Jackson's ("Plaintiff") Complaint in its

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

entirety.

Defendants move to dismiss on the grounds that Plaintiff lacks standing under federal and state law and that the Complaint fails to state a claim for which relief can be granted. Specifically, Defendants' noncommercial conduct does not satisfy the commercial use requirement for each of Plaintiff's claims, Plaintiff's claims are barred by the First Amendment, Plaintiff's claims are preempted by or conflict with federal copyright law, Defendants are immune under § 230 of the Communications Decency Act, Plaintiff has no rights in the materials that form the basis of his claims, and Plaintiff otherwise has not plead tenable claims.

This motion is based upon this Notice, the following memorandum of points and authorities, the concurrently filed Request for Judicial Notice, the pleadings and records contained herein, on such other argument and evidence as may be presented at the hearing, and all matters of which this Court may take judicial notice.

Dated: April 22, 2021

BROWNSTEIN HYATT FARBER SCHRECK, LLP


By: /s/ Mitchell J. Langberg
    MITCHELL J. LANGBERG
    Attorneys for Defendants
    ROBINHOOD MARKETS, INC.
    AND ROBINHOOD FINANCIAL, LLC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 2

III. ARGUMENT ............................................................................................ 4

    A.  Plaintiff's Claims Should Be Dismissed Pursuant to FRCP 12(b)(1) Because He Lacks Standing Under Article III And State Law ............................................................................................... 4

    B.  Plaintiff's Claims Should Be Dismissed Pursuant To FRCP 12(b)(6) Because He Fails To Allege Facts Sufficient To State A Claim ..................................................................................................... 7

        1.  Plaintiff cannot state a claim because the Article does not satisfy the commercial use requirement for each of his claims ................................................................................. 8

        2.  Plaintiff's claims all fail because they are barred, as a matter of law, by the First Amendment ................................... 10

        3.  Plaintiff's Lanham Act claim fails under the Rogers Defense based on Defendants' creative use of the materials ............................................................................... 11

        4.  Plaintiff's state law claims are preempted by federal copyright law ......................................................................... 13

        5.  Because only the copyright owners of the film have rights in the image, Plaintiff's Lanham Act Claim fails ..................... 15

        6.  Section 230 of the Communications Decency Act provides an absolute immunity for all of Plaintiff's state law claims ............................................................................. 17

        7.  Plaintiff cannot base any of his claims on the phrase "Check Yo Self, Before You Wreck Yo Self" ........................... 19

            a.  The phrase "Check Yo Self, Before You Wreck Yo Self" does not identify Plaintiff .................................... 19

            b.  Plaintiff's use of the Phrase in the Article amounts to a non-actionable parody ........................................... 21

IV. CONCLUSION .......................................................................................... 23

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. National Video, Inc.*
610 F.Supp. 612 (S.D.N.Y. 1985) ........................................................ 9

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ............................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 7, 8

*Bayer Co. v. United Drug Co.*,
272 F. 505 (D.N.Y. 1921) ................................................................. 21

*Bolger v. Youngs Drug Prods. Co.*,
463 U.S. 60 (1983) .............................................................................. 9

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ..................................................... 11, 12

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ............................................................ 8

*California Federal S. & L. Assn. v. Guerra*,
479 U.S. 272 (1987) .......................................................................... 13

*Callahan v. Ancestry.com, Inc.*,
Case No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 3,
2021) .................................................................................................. 18

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..................................................... 17, 18

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F3d 1115 (9th Cir. 2010) ............................................................. 4

*Chaquico v. Friedberg*,
271 F.Supp.3d 942 (N.D. Cal. Aug. 11, 2017) ............................. 5, 12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ........................................................................................ 16

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ......................................................................... 10

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ....................................................................... 22

*E.S.S. Ennm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ....................................................................... 12

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................. 17

*Edgar v. MITE Corp.*
    457 U.S. 624 (1982) ....................................................................................... 13

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ....................................................................... 19

*In re Google, Inc. Privacy Policy Litig.*,
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ................. 6

*Hebrew University of Jerusalem v. General Motors LLC*,
    878 F.Supp. 2d 1021 (C.D. Cal 2012), vacated, 2015 WL 9653154
    (C.D. Cal. 2015) ............................................................................................... 9

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 US 375 (1994) ........................................................................................... 4

*Lee v. Am. Nat. Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ........................................................................... 5

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118, 134 S.Ct. 1377 (2014) .............................................................. 5

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507
    F.3d 252, 267 (4th Cir. 2007) ....................................................................... 21

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
    156 F. Supp. 3d 425, 117 U.S.P.Q.2d 1537 (S.D.N.Y. 2016),
    judgment aff'd, 2017 Copr. L. Dec. P 31026, 2016 WL 7436489 (2d
    Cir. 2016)........................................................................................................ 22

CASE NO.  3:21-cv-02304-LB
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Mattel v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) ................................................................. 12

*Mattel, Inc. v. Walking Mountain Prods.*
    353 F.3d 792 (9th Cir. 2003) ................................................................. 22

*Rogers v. Grimaldi*,
    875 F.2d 994 (9th Cir. 1989) ............................................................. 11, 12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................... 4, 5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.) ........................................................................ 7

*Tin Pan Appel v. Miller Brewing Co.*,
    737 F.Supp. 826 (S.D.N.Y. 1990) ............................................................ 9

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................................... 4

*Wendt v. Host Intl'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ................................................................. 9

*White v. Samsung Electronics America, Inc.*,
    971 F.2d 1385 (9th Cir. 1992) ............................................................ 6, 9

*Yeager v. Cingular Wireless LLC*,
    673 F.Supp.2d 1089 (E.D. Cal. Dec. 7, 2009) ............................................ 10

**California Cases**

*Fleet v. CBS, Inc.*,
    50 Cal.App.4th 1911 (1996) .............................................................. 14, 15

**Federal Statutes**

15 U.S.C.
    § 1064(3) ......................................................................................... 21
    § 1125(a) .......................................................................................... 16

17 U.S.C.
    § 301(a) ........................................................................................... 14

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)

47 U.S.C.
    § 230(c)(1) ................................................................................................. 17
    § 230(e)(3) ................................................................................................. 17

Federal Rules of Civil Procedure
    § 12(b) ...................................................................................................... 23
    § 12(b)(1) ............................................................................................ 1, 4, 7
    § 12(b)(6) ............................................................................................ 1, 7, 8

**California Statutes**

California Business & Professions Code
    § 17200 ............................................................................... 8, 14, 15, 18
    § 17204 .......................................................................................................6

California Civil Code
    § 3344 .................................................................................... 14, 15, 18
    § 3344(a) ............................................................................................... 6, 8

California Code of Civil Procedure
    § 425.16 ......................................................................................................1

**Other Authorities**

J. McCarthy, *Trademark and Unfair Competition* § 28:15 (5th ed.
    2021) ....................................................................................................... 19

J. McCarthy, *Trademarks and Unfair Competition* § 31:153 (5th ed.
    2021) ....................................................................................................... 21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This Motion to Dismiss is filed concurrently with Defendants' Special Motion to Strike under California's anti-SLAPP statute (the anti-SLAPP Motion").  Together, these motions request that the Court dismiss Plaintiff's legally untenable claims.  The anti-SLAPP Motion shows that the claims Plaintiff asserts under state law have no legal merit because they seek to impose liability on Defendants arising out of the exercise of their First Amendment rights on matters of public interest.  They should be stricken pursuant to California Code of Civil Procedure section 425.16.

Those state law claims, and Plaintiff's sole federal claim, are also subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff lacks standing to bring any of the claims and, in any event, considering only the facts he alleges and those that are judicially noticeable, all of his claims fail as a matter of law.

Plaintiff's lawsuit is based entirely on a news article published on the Internet that was freely accessible to the public and reported on current news regarding the stock market—specifically, a potential market "correction" in the tech sector.  The article also provided readers commentary and educational content that related to that news, including analysis about why market corrections are consider a normal event to "correct" overpriced stocks.

The news article, entitled "Why are tech stocks falling?" had the temerity to make light of the serious and somewhat dry financial news and commentary by introducing the content with a still frame from the movie "Are We Done Yet?" along with the caption, "Correct yourself, before you wreck yourself."

As Plaintiff would have it, because his movie character was depicted in the still frame and because he claims to be known for the ubiquitous and oft-parodied phrase "check yo self before you wreck yo self," Defendants are liable for misappropriating his name and likeness and engaging in unfair competition (under

California law) and for violating the Lanham Act (under federal law).

Taking as true the well-pleaded facts (but not the improper conclusions) in his complaint, along with matters that are subject to judicial notice, all of Plaintiff's claims are legally untenable. Beside the fact that he lacks standing to assert his claims because he has not properly alleged he suffered any cognizable damages, the facts this Court properly considers either do not support his claims or reveal absolute legal defenses, including that the claims are barred by Section 230 of the Communications Decency Act and by copyright preemption. They are also barred based on the First Amendment.

As a result, in addition to striking Plaintiff's state law claims, this Court should strike all of his claims.

## II.   STATEMENT OF FACTS

Separating Plaintiff's ostensible indignation about Robinhood from his substantive allegations, Plaintiff's claims are based on a single event—the publication of a Snacks newsletter entitled "Why are tech stock falling?" on March 8, 2021 (the "Article").[1] Plaintiff characterizes this news and commentary piece in conclusory fashion as an "advertisement . . . for Robinhood's financial services and products[.]"[2] Yet, on its face, the Article (which is attached to the complaint) is far from an advertisement.[3] It is quite obviously a report on topical financial news regarding a correction in the price of "tech stocks," complimented by some associated commentary.[4]

---

[1] Compl., ¶ 26 – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"), where appropriate, pinpoint citations are to the ECF-generated page numbers at the top of documents.
[2] Id.
[3] Compl. Ex. 1 – ECF No. 1-1, 1-8.
[4] The Article explains that a drop of 10% or more from a stock's (or index's or market's) most recent high is a correction and a drop of 20% turns a correction into a "bear market." The Article reports that, just days before, the Nasdaq had momentarily been down 12% since its recent high. The Article informs readers that just five high-profile tech stocks make up 21% of the S&P 500's value. It then goes on to comment that many investors believe the tech sector is overvalued, leading to the Article's overall educational takeaway: corrections are normal but necessary to correct the price of overvalued stock, "like a small dip in the hill toward reaching investing goals."

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

To introduce the topic in a light and humorous way, the Article leads with a photograph and the tagline, "correct yourself, before you wreck yourself."[5]  Plaintiff alleges the photograph depicts his "image and likeness."[6]  He conveniently leaves out that the photograph is actually a still shot which depicts his character from the movie, "Are We Done Yet?"[7]—a copyrighted work he does not own.[8]  Plaintiff also claims the tagline is a misquote of "the most well-known lyric" from one of his songs.[9]

Though the Article does not even mention his stage name, Plaintiff felt compelled to allege that "Ice Cube" is a federally registered trademark, bearing the Registration Number 3717252.[10]  That registration is a word mark for "Ice Cube" for musical sound recordings, musical video recordings, clothing and entertainment, namely, acting services and live musical performances.[11]  The referenced trademark never appears in the Article, nor has Plaintiff claimed to own a registered trademark for any song lyric.

Anyone could be forgiven for being confused as to why Plaintiff's complaint includes allegations regarding his trademark because he does not allege a trademark infringement.  Nor does he allege a copyright infringement.  Instead, Plaintiff merely claims that the Article—a news report and related commentary—"creates the false impression that [Plaintiff] supports and endorses Robinhood's products and services."[12]

By using an image from a movie in which Plaintiff was cast and comically parodying a ubiquitous phrase, Plaintiff claims that "Defendants' conduct will damage [Plaintiff's] ability to enjoy, maintain, and exploit his hard-won recognition – and indeed, threatens to disrupt his contractual relationships with current and

---

[5] Compl. Ex. 1 – ECF No. 1-1, 1-8.
[6] Compl., ¶ 26 – ECF No. 1.
[7] Fact No. 1, Request for Judicial Notice.
[8] Fact Nos. 2 & 3, Request for Judicial Notice.
[9] Compl, ¶ 27 – ECF No. 1.
[10] Compl, ¶ 24 – ECF No. 1.
[11] Fact No. 4, Request for Judicial Notice.
[12] Compl, ¶ 27 – ECF No. 1.

pending third-part endorsements."[13]

Remarkably, Plaintiff does not identify a single lost sale or other particular damage resulting from Defendants' alleged misconduct, despite the fact that he is required to do so to establish standing under both federal and state law.

## III.  ARGUMENT

### A.  Plaintiff's Claims Should Be Dismissed Pursuant to FRCP 12(b)(1) Because He Lacks Standing Under Article III And State Law

Plaintiff lacks standing under Article III and state law.  Article III standing requirements limit this Court's subject matter jurisdiction.  Therefore, they are properly challenged by a Rule 12(b)(1) motion to dismiss.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F3d 1115, 1122 (9th Cir. 2010).  Plaintiff bears the burden of establishing such jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 US 375, 376-378 (1994).

Where, as here, the challenge to standing is a "facial" attack, the court accepts the well-pleaded facts as true and dismisses only if those facts are insufficient to invoke jurisdiction.  *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003).

Here, Plaintiff has not adequately alleged a cognizable injury, nor could he plausibly do so.  As a result, he does not have standing to assert his claims.  To invoke the powers of the Court, Plaintiff must show that he: (1) suffered an injury (2) that is fairly traceable to Defendants' conduct, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  At the pleading stage, Plaintiff is required to "clearly allege facts" demonstrating each element. *Id.* (citation omitted).  Satisfaction of this three-part Article III standing test ensures that federal courts do not exceed their constitutional authority. *Id.* A plaintiff also must satisfy the requisite injury requirement to establish standing under Article

---

[13] Compl, ¶ 39 – ECF No. 1.

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

III for its state law claims.  *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001).

Injury-in-fact is the " 'first and foremost' of standing's three elements."  *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998).  As a constitutional requirement, the failure to show injury-in-fact cannot be cured by relying on a statute that grants the right to sue to a plaintiff "who would not otherwise have standing."  *Id.* at 1548 (citation omitted).  To satisfy this requirement, Plaintiff must show an " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' "  *Id.* (quoting  *Lujan*, 504 U.S. at 560).  To be concrete, the injury "must be 'de facto'; that is, it must actually exist.... [and be] 'real,' and not 'abstract.' "  *Id*. (citing dictionaries).  To be particularized, the injury must " 'affect the plaintiff in a personal and individual way.' "  *Id*. (quoting  *Lujan*, 504 U.S. at 560 n.1).  Importantly, *both* requirements—concreteness and particularization—must be established; one alone is not enough.  *See id.*

Like Article III's requirements, Plaintiff's specific claims each require an actual injury grounded in fact which was caused by Defendants' conduct.  Under § 43(a) of the Lanham Act, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's [conduct]; [which] occurs when deception of consumers causes them to withhold trade from plaintiff*." Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 134 S.Ct. 1377, 1391 (2014).  The allegations cannot be conclusory.  *Chaquico v. Friedberg*, 271 F.Supp.3d 942, 952 (N.D. Cal. Aug. 11, 2017) (motion to dismiss granted because the plaintiff "fail[ed] to set forth facts that [d]efendants' advertisements create an explicitly misleading description of the [defendants' goods or services].).  When a complaint is completely "devoid of allegations explaining how the [defendant's use] create[s] the misimpression that Plaintiff sponsors, endorses, or is affiliated with the [defendant]" the complaint must be dismissed.  *Id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Plaintiff's state law claims require an actual injury grounded in fact resulting from Defendants' conduct.  To have standing under California's Unfair Competition Law ("UCL"), the plaintiff must have "suffered an injury in fact and [have] lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof. § 17204 (emphasis added).  Similarly, standing under California's statutory misappropriation of likeness framework requires that the plaintiff be "injured *as a result*" of the defendant's conduct.  Cal. Civ. Code § 3344(a) (emphasis added).  An essential element of a common law right of publicity claim under California law requires a "*resulting* injury."  *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385, 1397 (9th Cir. 1992) (emphasis added).

In this Court, the injury-in-fact element is a formidable barrier to entry in many instances involving Internet-based conduct.  *See In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *4 (N.D. Cal. Dec. 3, 2013) ("[T]hough injury-in-fact may not generally be Mount Everest. . . in the Northern District of California, the doctrine might still reasonably be described as Kilimanjaro.").  Where a plaintiff alleges that the defendant profited from the use of his or her likeness, simply pointing to the defendant's profits is insufficient to confer standing.  *Id.* at 5 ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own.").

Here, Plaintiff fails to plead any injury that is both concrete and particularized.  Plaintiff fails to explain how the Article explicitly misleads consumers.  The Complaint is similarly devoid of any facts demonstrating that the Article creates the misimpression that Plaintiff sponsors, endorses, or is affiliated with Defendants—the alleged harms are merely conclusory statements with no factual basis.  For example, Plaintiff alleges that Defendants' conduct "threatens to disrupt his contractual relationships with current and pending third-party endorsements," and that he will suffer a "diversion of trade" and "loss of profits" by virtue of Defendants' conduct

1   without offering any details showing a diversion of trade or loss of profits.[14]

2   Plaintiff's proffered injuries are purely speculative—they do not actually exist.

3   Plaintiff fails to allege any real-world examples where a contractual relationship was

4   disrupted or where he suffered a value reduction in any property interest he may have.

5   In doing so, Plaintiff fails to make the factual connection showing how Defendants''

6   conduct **resulted** in economic harm.  The gist of Plaintiff's complaint is that he was

7   offended by Defendants' use of an image from a movie in which he was cast and by

8   comically referencing a ubiquitous phrase.  Not only does Plaintiff have no legally

9   cognizable interest in the materials in which he relies, being offended is simply not

10  enough to invoke the powers of the Court.  Ultimately, Plaintiff's allegations amount

11  to nothing more than a bare recitation of the elements of each cause of action.

12  Because Plaintiff has not adequately plead the injury necessary to establish

13  standing, his claims should be dismissed pursuant to FRCP 12(b)(1).

14  **B.    Plaintiff's Claims Should Be Dismissed Pursuant To FRCP**
     **12(b)(6) Because He Fails To Allege Facts Sufficient To State A**
15  **Claim**

16  On a motion to dismiss pursuant to FRCP 12(b)(6), all allegations of material

17  fact are taken as true and construed in the light most favorable to the plaintiff.  "The

18  court need not, however, accept as true allegations that contradict matters properly

19  subject to judicial notice or by exhibit. Nor is the court required to accept as true

20  allegations that are merely conclusory, unwarranted deductions of fact, or

21  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

22  Cir.) (internal citations omitted).

23  In considering the allegations and judicially noticed facts properly before it, a

24  court considers whether the complaint states "a claim to relief that is plausible on its

25  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

26  *Twombly*, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely

27  consistent with a defendant's liability, it stops short of the line between possibility

28

[14] Compl., ¶ 8 – ECF No. 1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

and plausibility of 'entitlement to relief.' " *Id.*

Critically, where a complaint and other allowable sources (i.e. exhibits and judicially noticed matter) reveal an absolute defense or bar to recovery, the claims are subject to dismissal under FRCP 12(b)(6). *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

Here, all of Plaintiff's claims should be dismissed for failure to state a claim.

1.  Plaintiff cannot state a claim because the Article does not satisfy the commercial use requirement for each of his claims

As discussed above, the Article on its face was a non-commercial report of news, including educational commentary.  But, by their nature, Plaintiff's unfair competition and right-of-publicity claims only protect commercial interests.  Like trademark infringement, federal unfair competition law seeks to prevent consumer confusion—i.e., to ensure that consumers know what they're buying.  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) ("Under the law of false endorsement, likelihood of customer confusion is the determinative issue.") (citing *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997).  California's UCL framework also only prohibits business practices that are "unlawful, unfair or fraudulent." [15]  Cal. Bus. & Prof. § 17200.

Similarly, the right of publicity generally protects an individual's ability to control the commercial exploitation of her likeness.  Under California Civil Code § 3344(a), liability is established "for purposes of advertising or selling, or soliciting purchase of products, merchandise, goods or services . . ."  Cal. Civ. Code § 3344(a).  And under California common law, liability is established for the "appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise[.]"

---

[15]  Because § 17200 is stated in the disjunctive, each of these grounds are based on separate legal theories which are subject to different and, in some cases, special pleading rules.  Because Plaintiff fails to explain which theory he relies, his § 17200 claim fails to state a claim for which relief can be granted.  Compl., ¶ 57 (where Plaintiff relies on the blanket statement that Defendants actions "constitute unfair, unlawful, *and* fraudulent business practices . . .") (emphasis added).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1    *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385, 1397 (9th Cir. 1992).

2         Cases involving a celebrity contain a common thread—the allegedly improper

3    use of the plaintiff's likeness is an exploitation through commercial speech, usually

4    through an advertisement.  *See, e.g., Allen v. National Video, Inc.* 610 F.Supp. 612

5    (S.D.N.Y. 1985) (where Woody Allen sued the defendant for using a look-alike in

6    an advertisement promoting defendants' franchised video rental chain); *Tin Pan*

7    *Appel v. Miller Brewing Co.*, 737 F.Supp. 826 (S.D.N.Y. 1990) (where Miller used

8    look-alikes of the three-person rap group "The Fat Boys" in a television commercial

9    promoting its beer); *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385 (9th

10   Cir. 1992) (where gameshow hostess Vanna White sued Samsung for the use of a

11   robotic look-alike in a television commercial); *Wendt v. Host Intl'l, Inc.*, 125 F.3d

12   806 (9th Cir. 1997) (where the actors who played Cliff and Norm in the television

13   show "Cheers" sued based on robotic look-alikes at Cheers-themed bars in airports);

14   *Hebrew University of Jerusalem v. General Motors LLC*, 878 F.Supp. 2d 1021 (C.D.

15   Cal 2012), vacated, 2015 WL 9653154 (C.D. Cal. 2015) (dismissing claims based on

16   the use of Einstein's image in an ad for the car company).  The "core notion" of

17   commercial speech is that it "does no more than propose a commercial transaction."

18   *Bolger v. Youngs Drug Prods. Co.*, 463 U.S. 60, 66 (1983) (citations and quotations

19   omitted).

20        Here, in contrast to the above examples, the Article is fundamentally non-

21   commercial in nature.  The Article does not present an offer for the sale of goods or

22   services, it does not solicit business, it does not promote the Defendants, and it is

23   offered completely free of charge.  It certainly is not an advertisement when its entire

24   content reported current financial news about tech stocks and provided educational

25   commentary about what constitutes a "correction" and the role of corrections in

26   equity markets.  The Article contains no "call to action," asking the reader to engage

27   in a commercial transaction.

28        Considering the actual Article at issue as placed on the actual Snacks website,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

under no set of facts can Plaintiff provide evidence of the requisite commercial use. Therefore, Plaintiff cannot make out any of his claims.

### 2. Plaintiff's claims all fail because they are barred, as a matter of law, by the First Amendment

The Article's content was newsworthy and provided educational commentary relevant to the investing public, and it is therefore protected by the First Amendment. It is well settled that "no cause of action will lie for the publication of matters of the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The First Amendment defense extends "to almost all reporting of recent events[.]" *Id.* (citation omitted). "The First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guarantees of freedom of speech and of the press." *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1096 (E.D. Cal. Dec. 7, 2009) (citations omitted). To balance these interests, a court must evaluate the "nature of the precise information conveyed and the context of the communication." *Id.*

The context of the communication is particularly important; namely, whether the communication is commercial in nature. For example, in *Downing*, the defendant-clothing manufacturer used photographs of famous surf legends in its commercial catalog, which included news information, but primarily promoted its business. *Downing*, 265 F.3d at 1000–02. Because of its commercial character, the *Downing* Court found that the defendant's use of the plaintiff's likeness amounted to "window dressing." *Id.* at 1002. Similarly, the claims in *Yeager* related to communications about the devastation wrought by Hurricane Katrina, which, while newsworthy, were clearly intended to promote the defendant's wireless services. *Yeager*, 673 F.Supp.2d at 1098–99. The commercial nature of these communications swayed the respective courts to find that the First Amendment defense did not apply.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Conversely, as an editorial news report, the Article falls squarely within the protection afforded by the First Amendment.  As noted, the article provides news updates on an important matter of public concern (i.e. the stock market), and its noncommercial nature bolsters that protection.  Defendants' use of the materials at issue is relevant to the topic being discussed—corrections in the stock market.  These materials effectively "tee up" the topic, linking the materials and the newsworthy topic in a meaningful and humorous way.

As such, Defendants' editorial newsletter is entitled to full First Amendment protection and all of Plaintiff's claims fail.

3.    Plaintiff's Lanham Act claim fails under the *Rogers* Defense based on Defendants' creative use of the materials

Plaintiff's Lanham Act claim should be dismissed because Defendants' use of the materials was creative.  Courts construe the Lanham Act narrowly when First Amendment values are involved.  *Rogers v. Grimaldi*, 875 F.2d 994, 998 (9th Cir. 1989) ("Because overextension of Lanham Act restrictions in the area of [artistic expression] might intrude on First Amendment values, [courts] must construe the Act narrowly to avoid such a conflict.").  Accordingly, under the *Rogers* test, courts must balance the "trademark and similar rights protected by § 43(a) of the Lanham Act against First Amendment rights in cases involving expressive works." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013).

The *Rogers* test applies to the title and body of a creative work which includes the use of another's likeness.  *Id.* at 1242 (explaining that the "only relevant legal framework for balancing the public's right to be free from consumer confusion about [the plaintiff]'s affiliation with [the defendant's goods or services] and [the defendant]'s First Amendment rights in the context of [a Lanham Act] § 43(a) claim is the *Rogers* test.")

First, for the *Rogers* test to apply, the use which references the plaintiff's likeness must be artistic or expressive in nature.  *Id.*  This is a "low threshold."

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Rogers*, 875 F.2d at 999. "The level of [artistic] relevance merely must be above zero[.]" *E.S.S. Ennm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).  In other words, the requirement is met unless the plaintiff's likeness possesses "***no*** artistic relevance to the underlying work ***whatsoever***." *Id.* at 1100 (emphasis in original).  Even a work that contains both artistic and commercial elements is still subject to the *Rogers* test. *Rogers*, 875 F.2d at 998; *see also Mattel v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002) ("A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer.")

Second,  the work at issue must not " 'explicitly mislead consumers as to the source or the content of the work.' " *Brown*, 724 F.3d at 1245 (quoting *Rogers*, 875 F.2d at 999).  Importantly, the central inquiry here is whether the work "***explicitly*** misleads consumers." *Id.*  (emphasis in original).  "[T]he slight risk that such a use of a celebrity's [likeness] might implicitly suggest endorsement or sponsorship is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable." *Rogers*, 875 F.2d at 1000.

*Chaquico* is illustrative.  There, a former member of the band Jefferson Starship sought to prevent the band from utilizing his likeness in promotional advertisements, relying on Lanham Act § 43(a).  *Chaquico v. Friedberg*, 271 F.Supp.3d 942 (N.D. Cal. Aug. 11, 2017).  Even though the advertisements were purely promotional, they possessed the requisite (low) level of creativity to trigger the *Rogers* test. *Id.* at 951.  Because the advertisements did not explicitly mislead consumers, the former band member's claims were dismissed. *Id.* at 952.

Here, Defendants' use of the image, coupled with the phrase "correct yourself, before you wreck yourself," is sufficiently expressive for purposes of the *Rogers* test—that is, the materials are used as a figure of speech to illustrate stock market trends and corrections.   Defendants' use of these materials makes light of the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

underlying subject matter (i.e., economic fluctuations) in a comical manner vis-a-vis a pop-culture reference.  In this sense, Defendant's use of this material effectively amounts to a parody, which may be considered inherently creative or artistic because it uses those materials to convey a new meaning.  Like a title, Defendants' use is intended to "catch the eye" of consumers and invite them to read the article's contents, but it does not identify Plaintiff as the source of that content.  The "low threshold" of artistic relevance is therefore satisfied, and the use of these materials is a critical component in conveying the message of the underlying news article—stock market corrections.

Moreover, the Article does not explicitly mislead consumers.  The Article does not affirmatively represent that Plaintiff is in any way affiliated with Defendants' news reports, and in fact never even mentions Plaintiff's actual or character name.  Therefore, no reasonable consumer would interpret the comical nature of the reference as suggesting any such relationship.  Even if the Defendants' use were to create a "slight risk" that might implicitly suggest endorsement or sponsorship, this risk is outweighed by the danger in restricting this type of expressive conduct, and the Court must construe the Lanham Act narrowly to avoid such a conflict.

4.   Plaintiff's state law claims are preempted by federal copyright law

Just like any state law, California's statutory and common law-based causes of action related to unfair competition and rights of publicity are subject to preemption under the Supremacy Clause of the United States Constitution if they "actually conflict[] with a valid federal statute" or if they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Edgar v. MITE Corp.* 457 U.S. 624, 631 (1982).  In addition, "Congress is empowered to pre-empt state law by so stating in express terms." *California Federal S. & L. Assn. v. Guerra*, 479 U.S. 272, 280 (1987).  Plaintiff's claims are preempted here.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Section 301 of Copyright Act expressly prohibits states from legislating in the area of copyright law.  It states: "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.  Thereafter, ***no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State***." 17 U.S.C. § 301(a) (emphasis added).

That actors cannot assert state law rights in another's federally protected motion picture is well settled in California.  On this point, *Fleet v. CBS, Inc.* is instructive.  In *Fleet*, an actor in the movie "White Dragon" sought to prevent the dissemination of individual pictures from the movie, relying on his right of publicity and unfair competition under state law.  *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1911 (1996).  The actor claimed that CBS made unauthorized uses of his likenesses by using still-frame images from the movie in various advertisements and promotional materials.  The *Fleet* Court analyzed the actor's claims under California's common law, Civil Code § 3344, and Business and Professions Code § 17200—the exact same bases of Plaintiff's state law claims here.

The *Fleet* Court found that the actor's claims were preempted under federal copyright law.  The Court held that the actor was, in essence, attempting to assert rights in materials that fell within CBS' exclusive rights based on its copyright in the movie, explaining that "because a performance is fixed in tangible form when it is recorded, a right of publicity in [such] performance . . . is subject to preemption." *Id.* at 1924 (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players*, 805 F.2d 663, 677, n. 26 (7th Cir. 1986)).  Accordingly, "[a] claim asserted to prevent nothing more than the reproduction . . . distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." *Id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Here, Plaintiff has not alleged that he owns the copyright in the still frame that depicts his movie character, as used in the Article—nor could he do so in good faith. Just like the still frames used in *Fleet*, the image at issue is a single frame from the movie "Are We Done Yet?" in which Plaintiff starred.  As the *Fleet* Court stated when considering whether California's law was preempted by copyright law, if what plaintiff is "seeking is to prevent a party from exhibiting a copyrighted work they are making a claim 'equivalent to an exclusive right within the general scope of copyright.'"  *Id.* at 1920.  Thus, preemption applied.

For the same reason that the *Fleet* actor's claims were preempted, so too are Plaintiff's state law claims here.  Plaintiff is attempting to assert his state law right of publicity under California common law and Civil Code § 3344, as well as unfair competition under Business and Professions Code § 17200, to prevent Defendants from reproducing, distributing, and displaying an image from a movie in which Plaintiff has no rights.  Once Plaintiff's performance in "Are We Done Yet?" was fixed in tangible form (i.e., upon being recorded), any and all rights in and related to that performance were subsumed by the movie studios' copyrights in the film.  Because the rights to reproduce, distribute, and display the film (or any portion of it) fall within the exclusive scope of protection afforded to the copyright owners under Section 106 of the Copyright Act, Plaintiff's state law claims are preempted under federal copyright law.

Because Plaintiff's claims under state law are preempted, his state law claims fail as a matter of law.

5.   Because only the copyright owners of the film have rights in the image, Plaintiff's Lanham Act Claim fails

Plaintiff's Lanham Act claim fails because he does not own the copyright for the film from which the image was taken.  Lanham Act § 43(a) provides a remedy for the "false designation of origin, false or misleading description of facts, or false or misleading representation of fact" which is likely to result in consumer confusion.

15 U.S.C. § 1125(a).  Importantly, as the U.S. Supreme Court has explained, "§ 43(a) does not have boundless application as a remedy for unfair trade practices."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003) (citation omitted).  Indeed, "because of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,' but can apply only to certain unfair trade practices prohibited by its text." *Id. citing* J. McCarthy, *Trademark and Unfair Competition* § 27:7, p. 27-14 (4th ed. 2002)).

In essence, Lanham Act § 43(a) creates a federal cause of action for the infringement of unregistered trademarks—prohibiting acts that deceive consumers and impair another's goodwill. *Id.* (citing McCarthy, § 27:7).  For example, § 43(a) prohibits actions like Coca-Cola passing off its products as Pepsi-Cola or the reverse passing off of Pepsi-Cola marketing its products as Coca-Cola. *Id.* at 32.  However, the "Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* at 33.

Special considerations exist when, as here, a claim causes the Lanham Act to conflict with copyright law.  As *Dastar* explains, "in construing the Lanham Act, we have been 'careful to caution against the misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)).  The Court elaborated that if a defendant's representation that it is the origin of the creative work conveyed by the copyrighted material, "allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law . . ." *Id.*

The essence of Plaintiff's claim is that through the publication of the Article, Defendants relied on a false or misleading representation of fact which is likely to cause consumer confusion, relying on a third-party copyright to make this showing.  However, as *Dastar* cautions, allowing Plaintiff to assert rights under Lanham Act § 43(a) based on another's copyrighted material would "create a species of mutant

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

copyright law" and, here, would effectively usurp the movie studios' copyrights in its film.  The movie studios possess the exclusive rights in the image at issue, and Plaintiff cannot bypass this exclusivity by relying on federal unfair competition law.

Moreover, the Article contains no "false or misleading description of fact, or false or misleading representation of fact."  The editorial newsletter does not state that the Defendants are affiliated with or authorized by Plaintiff, and the mere use of an image from another's copyrighted work does not suggest any such relationship.  Online articles frequently use third-party images to illustrate the concepts being discussed in the body of the article.  As such, no reasonable consumer would be misled by its contents or mistakenly believe that Plaintiff has endorsed or sponsored Defendants.  Simply put, Defendants' use of the image in this manner—to illustrate and make light of stock trends and corrections—is simply "of no consequence" to the general consuming public.  The Lanham Act claim should be dismissed.

      6.    <u>Section 230 of the Communications Decency Act provides an absolute immunity for all of Plaintiff's state law claims</u>

Plaintiff's claims are barred by Section 230 of the Communications Decency Act, because the Snacks website is an interactive computer service and because the still frame image was not created by Defendants.

Section 230 of the Communications Decency Act provides that: "[n]o provider or member of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This immunity encompasses each of the state law claims Plaintiff asserts against Robinhood because the Snacks Newsletter is an interactive computer service.  47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see also Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1125 (9th Cir. 2003) (section 230 barred misappropriation of right of publicity claim); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (section 230 barred California

unfair competition claim).

Courts have treated § 230 immunity as being "quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.' " *Carafano*, 339 F.3d at 1123. An interactive computer service is entitled to immunity so long as it does not also "function as an information content provider ***for the portion of the statement or publication at issue***." *Id.* (emphasis added). Where a "third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Id.* at 1124.

*Callahan v. Ancestry.com* provides a recent example of § 230 immunity. In that case, plaintiff brought claims against Ancestry.com under Cal Civ. Code § 3344 and Cal Bus. & Prof. Code § 17200, alleging violations of his rights of publicity and unfair competition, based on Ancestry.com's use of yearbook photos, which it obtained from third-party sources. *Callahan v. Ancestry.com, Inc.*, Case No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 3, 2021). Despite the fact that Ancestry.com did not obtain the content from the people who created the yearbook photos, Ancestry.com was nonetheless immune from liability because this content was created entirely by third parties. *Id.* at *6. Further, even though Ancestry.com added information to accompany this third-party content, these actions did not amount to "creating content" and thus did not act to strip Ancestry.com of its immunity. *Id.* at *6. As the Court explained, "by taking information and photos from [third parties] and republishing them on its website . . . [Ancestry.com] engaged in 'a publisher's traditional editorial functions [that] [ ] do not transform an individual into a content provider within the meaning of § 230. *Id.* at *6 (quoting *Fraley v. Facebook*, 830 F.Supp.2d 785, 802 (N.D. Cal 2011). As such, Ancestry.com was immune under § 230. *Id.*

There can be no question that the Snacks website is an interactive computer services—a fact established by Plaintiff's allegations in Paragraph ¶4 of his complaint

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

that the " 'Robinhood Snacks' website and app . . . [is accessible to] millions of consumers across the United States." The Snacks website is indeed accessible to millions of consumers across the country, and there are no limitations placed on this access.[16] A Snacks consumer does not need to be a customer of Defendants' other services to view the content on the Snacks website, and this content is offered completely free of charge.

Generally, images used on the Snacks website relate to the subject matter of the content directly by invoking similar concepts, related emotions, or by providing examples through pop culture references to illustrate and make light of topics related to stock market news.  Plaintiff has not alleged—nor could he within the bounds of Rule 11—that the image at issue here was altered in any way.

The image in the still frame used in the Article originates from content that was created by a third party.[17]  Because the Snacks website is an interactive computer service and the image at issue here comes from content originating with a third-party, Defendants are immune under § 230 of the Communication Decency Act from Plaintiff's state law claims because they rely entirely on the still frame.

7.   Plaintiff cannot base any of his claims on the phrase "Check Yo Self, Before You Wreck Yo Self"

a.   The phrase "Check Yo Self, Before You Wreck Yo Self" does not identify Plaintiff

To the extent that any of Plaintiff's claims rely on the "Check Yo Self" phrase (the "Phrase") or any derivative, the claims are untenable because the Phrase does not identify Plaintiff.

To be actionable under Lanham Act § 43(a), the defendant's use must be based on "a distinctive attribute of the celebrity's identity." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015).  In other words, the defendant's use must clearly identify the plaintiff. *See* J. McCarthy, *Trademark and*

---

[16]  Fact No. 5, Request for Judicial Notice.
[17]  Fact Nos. 1–3, Request for Judicial Notice.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Unfair Competition* § 28:15 (5th ed. 2021).  Because Plaintiff can claim no rights in the image involved in this case, his claims hinge on whether Defendants' use of the phrase "correct yourself, before you wreck yourself" clearly identifies Plaintiff.

The phrase "check yourself before you wreck yourself" is widely used in American pop culture to convey a sense of seriousness by the speaker.  In essence, the phrase means that the listener better proceed cautiously if he or she cannot backup the assertion being made.  Urban dictionary defines the phrase as such: "Take a step back and examine your actions, because you are in a potentially dangerous or sticky situation that could get bad very easily. Often in a harmful manner."[18]

Because of its widespread use, the phrase does not and cannot identify any one individual, including Plaintiff.  A simple online search of the phrase shows just how ubiquitous the phrase has become.  The phrase is used in scholarly articles,[19] popular movies,[20] online blogs,[21] and "#checkyourself" has over 213,000 posts on the popular social media platform Instagram.[22]  In addition, the phrase has spawned numerous comical parody variations, including: "Text Yo'self Beefo You Wreck Yo'self",[23] "Respect Yourself Before You Wreck Yourself",[24] "Stretch Yourself Before You Wreck Yourself",[25] "Czech Yourself Before You Wreck Yourself,"[26] and "Trek Your Self Before You Wreck Yourself"[27] (in reference to the Star Trek movie franchise), to name a few.

If there ever was a time when the phrase could be said to identify Plaintiff (and based on the historical widespread use, that is unlikely), such time has long since passed.  Over the past three decades since Plaintiff released his song,  the phrase has

---

[18] Fact No. 6, Request for Judicial Notice.
[19] Fact No. 7, Request for Judicial Notice.
[20] Fact No. 8, Request for Judicial Notice.
[21] Fact No. 9, Request for Judicial Notice.
[22] Fact No. 10, Request for Judicial Notice.
[23] Fact No. 11, Request for Judicial Notice.
[24] Fact No. 12, Request for Judicial Notice.
[25] Fact No. 13, Request for Judicial Notice.
[26] Fact No. 14, Request for Judicial Notice.
[27] Fact No. 15, Request for Judicial Notice.

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

fallen into the public domain and is now free for all to use.  A helpful analogy is when a trademark becomes generic and no longer identifies the source of the goods it once did; instead, the generic term takes on its own meaning and represents the good themselves. For this reason, when a trademark becomes generic, even a federally registered trademark is subject to cancelation at any time.  15 U.S.C. § 1064(3) (Lanham Act § 14(3)).

As Judge Learned Hand once explained, in holding ASPIRIN to be generic, "[t]he single question, as I view it, in all these cases is merely one fact: What do buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.*, 272 F. 505 (D.N.Y. 1921).  Modern day consumers do not possess a mental association between the phrase and Defendant—the phrase has no source-identifying significance. In other words, the phrase is not a brand and it carries no consumer recognition as such.  The phrase is merely a common, slang phrase used by all walks of life in American culture.

Because Plaintiff has no protectable interest in the Phrase, any claim relying on such interest fails as a matter of law.

> b.    Plaintiff's use of the Phrase in the Article amounts to a non-actionable parody

Regardless of Plaintiff's alleged/perceived trademark (or related) rights in the Phrase, the Article was parodying the Phrase, by telling readers to "correct yourself" (rather than "check yo self") in the context of an article about market corrections.  As such, the parody is non-actionable.

Like other forms of intellectual property, a trademark may be the subject of a parody.   When a trademark is parodied, by definition, there is no trademark infringement because there is no likelihood of confusion.  As McCarthy explains, "the ordinary viewer will not be deceived or confused: she will see the defendant's use is just making fun of the plaintiff's trademark or its owner." J. McCarthy, *Trademarks and Unfair Competition* § 31:153 (5th ed. 2021); *see also Louis Vuitton*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Malletier S.A. v. Haute Diggity Dog, LLC*¸ 507 F.3d 252, 267 (4th Cir. 2007) (finding defendant's CHEWY VUITTON mark to be a parody of the famous luxury handbag retailer's LOUIS VUITTON mark); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 445, 117 U.S.P.Q.2d 1537 (S.D.N.Y. 2016), judgment aff'd, 2017 Copr. L. Dec. P 31026, 2016 WL 7436489 (2d Cir. 2016) ("In some cases . . . it is better to 'accept the implied compliment in [a] parody' and to smile or laugh than it is to sue.").

The Ninth Circuit has long recognized, and indeed supports, parodies of trademarks. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997) ("Parody is regarded as a form of social and literary criticism, having a socially significant value as free speech under the First Amendment."); *Mattel, Inc. v. Walking Mountain Prods.* 353 F.3d 792, 807 (9th Cir. 2003) (finding that artistic photographs parodying BARBIE doll in incongruous situations are neither copyright infringement nor trademark infringement. "Where a mark assumes such cultural significance, First Amendment protections come into play.").  By using another's mark to conjure up an association, while at the same time identifying one's own goods/services, the parodic use becomes a nominative fair use under the trademark analysis. *Mattel*, 353 F.3d   at 810 ("Where use of [a trademark] is grounded in defendant's desire to refer to the plaintiff's product as a point of reference for defendant's own work, [the] use is nominative.")

Here, Defendants are making a parodic use of the phrase "check yourself before you wreck yourself" by changing the first word to "correct." In doing so, Defendants conjure up the association with the popular saying and comically modify it using a rhyme scheme to identify its own editorial commentary related to the stock market, much in the same way CHEWY VUITTON is a play on LOUIS VUITTON. Contrary to Plaintiff's assertions, this change in wording was not a misquote[28]; rather, Defendants deliberately changed this word to effectuate the parody.

---

[28] Compl., ¶ 27 – ECF. No. 1

CASE NO.  3:21-cv-02304-LB
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   This light-hearted play on words does not, and legally cannot, result in

2   consumer confusion because the ordinary consumer will recognize that Defendants'

3   use is making fun of the commonly-used slang phrase.  In other words, though the

4   recognition of the parody, consumers automatically understand that no certain

5   trademark owner is affiliated with this use, and any consumer confusion is therefore

6   avoided.  Accordingly, Defendants' use of the phrase amounts to nominative fair use

7   because it uses this phrase to identify itself.

8   **IV.   CONCLUSION**

9   Plaintiff's claims fail, as a matter of law, for numerous reasons.  He fails to

10   plead facts that give him standing to raise any of his claims.  His various theories of

11   liability all depend on a commercial use when the Article was clearly a news piece

12   complimented by commentary. His state claims are barred by the Communications

13   Decency Act and copyright preemption.  And, the Article is absolutely protected

14   under various First Amendment principles.

15   In short, Ice Cube filed this action looking for publicity and without regard for

16   the merits of his claims.  His professed contempt for Defendants does not amount to

17   a tenable claim for relief.  None of his claims meet the applicable pleading standards

18   under FRCP 12(b).  They should all be dismissed.

19   Dated:  April 22, 2021                    BROWNSTEIN HYATT FARBER
20                                                          SCHRECK, LLP

21

22                                              By:  /s/ Mitchell J. Langberg
23                                                   MITCHELL J. LANGBERG
                                                     Attorneys for Defendants
24                                                   ROBINHOOD MARKETS, INC.
                                                     AND ROBINHOOD FINANCIAL,
25                                                   LLC

26

27

28