FREEDMAN+TAITELMAN, LLP
Michael A. Taitelman, Esq. (SBN 156254)
mtaitelman@ftllp.com
Sean M. Hardy, Esq. (SBN 266446)
smhardy@ftllp.com
1801 Century Park West, Fifth Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Plaintiff O'SHEA JACKSON, SR. (p/k/a "ICE CUBE")

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>        Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 3:21-cv-02304-LB<br><br>**OPPOSITION TO MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 ET SEQ.**<br><br>Date:   June 3, 2021<br>Time:  9:30 a.m.<br>Dept:  Courtroom B, 15th Floor |

# TABLE OF CONTENTS

Contents

I.    INTRODUCTION.................................................................................................. 1

II.   FACTUAL ALLEGATIONS ................................................................................. 2

III.  Legal Standard On Anti-SLAPP Motions In Federal Court. ............................... 3

IV.   Defendants Fail To Meet Their Initial Burden That Their Unauthorized Use Of Plaintiff's Image And Likeness Falls Within The Purview Of The Anti-SLAPP Statute. ................................................ 5

    A.   Public Interest Within The Meaning Of The Anti-SLAPP Statute.................................. 6

    B.   Defendants Fail To Establish That Their Use Of Plaintiff's Image And Likeness Concerns A Matter Of Public Interest Or That They Contributed In Any Way To Any Public Discussion Regarding Those Issues.................................................................................................. 7

V.    The Motion To Strike Should Be Denied Because Plaintiff Can Demonstrate A Probability Of Success On His State Law Claims. ....................................................... 10

    A.   Plaintiff Has Standing To Bring His Claims. ...................................................... 10

    B.   Section 230 of the Communications Decency Act has No Application Here........................... 12

    C.   The Advertisement is Commercial Speech and Not Protected By The First Amendment. ........... 15

    D.   Plaintiff's State Law Claims Are Not Preempted By The Copyright Act. .................................. 20

VI.   Should The Court Find It Necessary, The Court Should Grant Plaintiff Leave To Amend The Complaint........................................................................................... 23

VII.  Conclusion. .......................................................................................................... 23

EVIDENTIARY OBJECTIONS ................................................................................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdul-Jabbar v. General Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996) ...................................................................................16, 19

*Allen v. Cty. of Lake*,
   2014 WL 4979348 (N.D. Cal. Oct. 6, 2014)..................................................................23

*Anthony v. Yahoo! Inc.*,
   421 F. Supp. 2d 1257 (N.D. Cal. 2006) ........................................................................13

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ......................................................................................17

*Batra v. PopSugar, Inc.*,
   2019 WL 482492 (N.D. Cal. Feb. 7, 2019) ...................................................................20

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983).........................................................................................................17

*Callahan v. Ancestry.com Inc.*,
   2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ..................................................................15

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ......................................................................................14

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980).......................................................................................................19

*Charles v. City of L.A.*,
   697 F.3d 1146 (9th Cir. 2012) ......................................................................................17

*Checkmate Strategic Group v. Yahoo!, Inc.*,
   2005 U.S. Dist. LEXIS 46960 (C.D. Cal. Oct. 14, 2005) .............................................13

*Clark v. Am. Online Inc.*,
   2000 WL 33535712 (C.D. Cal. Nov. 30, 2000).............................................................10

*Condit v. National Enquirer, Inc.*,
   248 F. Supp. 2d 945 (E.D. Cal. 2002)..............................................................................7

*Coyle v. O'Rourke*,
   2015 WL 58700 (C.D. Cal. Jan. 5, 2015) ..............................................................20, 22

*Del Amo v. Baccash*,
   2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) ..............................................................20

ii

*Dietemann v. Time, Inc.*,
   449 F.2d 245 (9th Cir. 1971) .................................................................15

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ........................................................... *passim*

*Eastwood v. Nat'l Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) ...............................................................11

*Ebeid v. Facebook, Inc.*,
   2019 WL 2059662 (N.D. Cal. May 9, 2019) .........................................15

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ..........................................................12, 13

*Fraley v. Facebook, Inc.*,
   830 F.Supp.2d 785 (N.D. Cal. 2011) ................................................12, 14

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F.Supp.3d 1011 (C.D. Cal. 2015) ...................................................23

*Giron v. Hong Kong*,
   2017 WL 5495504 (C.D. Cal. Nov. 15, 2017).........................................23

*Grant v. Esquire, Inc.*,
   367 F. Supp. 876 (S.D.N.Y. 1973).........................................................11

*Guzman v. Finch*,
   2019 WL 1877184 (S.D. Cal. Apr. 26, 2019)............................................5

*Hilton v. Hallmark Cards*,
   599 F.3rd 894, 908 (9th Cir. 2010) ...................................................10, 19

*Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*,
   2018 WL 4962086 (C.D. Cal. Jan. 26, 2018) .....................................11, 12

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*,
   418 F. Supp. 2d 1142 (D. Ariz. 2005) ...................................................13

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014)............................................................11, 17

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................10

*Manzari v. Assoc. Newspapers Ltd.*,
   830 F.3d 881 (2016).........................................................................4, 10

iii

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...................................................................................10

*Meribear Prods. Inc. v. Vail*,
   2015 WL 12766576 (C.D. Cal. Aug. 11, 2015)...........................................................8

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ..........................................................................15, 16, 21

*Mindlab Media, LLC v. LWRC Int'l, LLC*,
   2013 WL 1688309 (C.D. Cal. Apr. 15, 2013) ............................................................20

*Nano Found., Ltd. v. Silver*,
   2019 WL 6723428 (C.D. Cal. Aug. 20, 2019) .............................................................5

*No Doubt v. Activision Publ'g, Inc.*,
   702 F. Supp. 2d 1139 (C.D. Cal. 2010) ...............................................................21, 22

*O'Brien v. PopSugar Inc.*,
   2019 WL 462973 (N.D. Cal. Feb. 6, 2019) ...........................................................20, 22

*Penrose Hill, Ltd. v. Mabray*,
   479 F.Supp.3d 840 (N.D. Cal. 2020) ...........................................................................9

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*,
   274 F. Supp. 2d 319 (E.D.N.Y. 2003) ........................................................................11

*Perkins v. Linkedin Corp.*,
   53 F. Supp. 3d 1222 (N.D. Cal. 2014) ........................................................................19

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) .........................................................................................5

*Ricketts v. CBS Corps.*,
   439 F. Supp. 3d 1199 (C.D. Cal. 2020) ......................................................................23

*San Diego Cty. Guns Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) .......................................................................................10

*Shekoski v. Used, LLC*,
   2019 WL 3064115 (C.D. Cal. June 12, 2019) ..............................................................5

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   2007 WL 1455903 (N.D. Cal. May 16, 2007)............................................................22

*Todd v. Lovecruft*,
   2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ..........................................................4, 5, 22

*Waits v. Frito–Lay, Inc.*,
   978 F.2d 1093 (9th Cir.1992) ........................................................................10, 15, 21

OPPOSITION TO MOTION TO STRIKE

*White v. Samsung Elec.*,
    971 F.2d 1395 (9th Cir.1992) ....................................................................10, 15, 19

*Wimer v. Reach Out Worldwide, Inc.*,
    2017 WL 5635461 (C.D. Cal. July 13, 2017)..........................................................22

*Yeager v. Cingular Wireless LLC*,
    673 F. Supp. 2d 1089 (E.D. Cal. 2009)..............................................................17, 18

*Zacchini v. Scripps-Howard Broadcasting Co.*,
    433 U.S. 562 (1977)...........................................................................................1, 15, 16

**California Cases**

*Albanese v. Menounos*,
    218 Cal. App. 4th 923 (2013) ............................................................................................7

*All One God Faith, Inc. v. Organic & Sustainable Indus. Stands., Inc.*,
    183 Cal.App.4th 1186 (2010) ..........................................................................................6

*Baral v. Schnitt*,
    1 Cal.5th 376 (2016) ....................................................................................................4, 9

*Comedy III Productions v. Sarderup* (2001)
    25 Cal. 4th 387 ....................................................................................................1, 19

*Consumer Justice Center v. Trimedica International, Inc.*,
    107 Ca1. App. 4th 595, 601 (2003) ................................................................................8

*D.C. v. R.R.*,
    182 Cal. App. 4th 1190 (2010) ........................................................................................7

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal.5th 133 (2019) ........................................................................................ *passim*

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ....................................................................................20, 21

*Gill v. Curtis Publ'g Co.*,
    38 Cal. 2d 273 (1952) ....................................................................................................16

*Gionfriddo v. Major League Baseball*,
    94 Cal.App.4th 400 (2001) ............................................................................................11

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ....................................................................................................15

*KNB Enterprises v. Matthews*,
    78 Cal.App.4th 362 (2000) ........................................................................................11, 20

v

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...............................................................................12

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
   214 Cal.App.4th 544 (2013) .......................................................................12

*Mann v. Quality Old Time Serv., Inc.*,
   120 Cal.App.4th 90 (2004) ...........................................................................9

*Orthopedic Sys., Inc. v. Schlein*,
   202 Cal. App. 4th 529 (2011) .....................................................................11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal.App.4th 688 (2007) .........................................................................4

*Rand Res., LLC v. City of Carson*,
   6 Cal.5th 610 (2019) ....................................................................................6

*Timed Out, LLC v. Youabian, Inc.*,
   229 Cal. App. 4th 1001 (2014) ...................................................................20

*Troyk v. Farmers Group, Inc.* (2009)
   171 Cal.App.4th 1305 .................................................................................12

*Weinberg v. Feisel*,
   110 Cal.App.4th 1122 (2003) .................................................................6, 8, 9

*Wilson v. Cable News Network, Inc.*
   7 Cal.5th 871 (2019) .............................................................................4, 6, 9

**Other State Cases**

*Doe v. McFarlane*,
   207 S.W.3d 52 (Mo. Ct. App. 2006)...........................................................11

**Federal Statutes**

CDA ...........................................................................................12, 13, 14, 15

Copyright Act ........................................................................................19, 20

Lanham Act...................................................................................................22

**California Statutes**

Cal. Civ. Proc. Code § 425.16(b)...................................................................3

Cal. Civ. Proc. Code § 3344 ...................................................................11, 20

Cal. Civ. Proc. Code § 425.16. .......................................................................1

OPPOSITION TO MOTION TO STRIKE

**Other Authorities**

Fed. R. Evid. 201(b) ................................................................................................................23

Fed. R. Evid. 1002 ..................................................................................................................23

FRCP 12(b)(6) .........................................................................................................................10

OPPOSITION TO MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The anti-SLAPP motion to strike of Defendants Robinhood Markets, Inc. ("Robinhood") and Robinhood Financial, LLC ("Robinhood Financial") (collectively, the "Defendants") fails for the simple reason that the unauthorized use of Plaintiff's image and likeness is not closely connected to an issue of public interest and was used primarily for a commercial purpose.  Although the First Amendment, which California's anti-SLAPP statute is designed to advance, allows considerable latitude to engage in speech and commentary, it does not allow the non-consensual commercial exploitation of a celebrity's name and likeness. *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977).  As the Ninth Circuit held in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), where the primary purpose of the use in question is commercial, it will not be entitled to First Amendment protection.

Defendants are in the business of selling their digital financial products and services, and everything Defendants do is engineered towards that singular purpose. Defendants' use of Plaintiff's persona is subservient to the commercial element – the sale of their financial products and services.  Quite simply, Defendants are promoting their own products and services and stole Plaintiff's image and likeness to aid in that singular commercial endeavor. As the Supreme Court and Ninth Circuit have repeatedly held, such unauthorized exploitation hardly implicates the First Amendment.

Likewise, there is nothing "transformative" about Defendants' use of Plaintiff's image and likeness. Defendants have done nothing more than take a literal depiction of Plaintiff and then accompany that literal depiction with Plaintiff's famous catchphrase, emphasizing their intent to use his persona to gain attention from consumers.  As the California Supreme Court noted in *Comedy III Productions v. Saderup* (2001) 25 Cal. 4th 387, when, as here, "artistic expression takes the form of a literal depiction of a celebrity for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist."  Tellingly, despite attacking Plaintiff's state law claims, Defendants conspicuously ignore the leading California case on this issue.  That is because they have no answer to it.

As discussed below, Defendants have taken the position that whenever an infringer claims that its misappropriation of a celebrity's persona was done in the "public interest," its conduct is somehow automatically immunized. This misconceived argument is rejected by *Zacchini* and every other case

which discusses the weighing process that must be utilized by the trier of fact when the right to publicity comes into conflict with the First Amendment. As these courts have held, whether a defendant's use of a celebrity's likeness is primarily related to a commercial purpose, and therefore not protected by the First Amendment, is a matter of fact that must be left to the jury to decide. The motion should be denied.

## II.   FACTUAL ALLEGATIONS

Plaintiff O'Shea Jackson, Sr., professionally known as Ice Cube ("Plaintiff") is a world-renowned artist. *See* Complaint, Dkt. No. 1 ("Compl."), ¶ 17. Plaintiff first achieved recognition and commercial success as one of the founding members of the pioneering rap group N.W.A. in 1987. Compl., ¶ 17. In 1990, Plaintiff embarked on a successful solo recording career. Compl., ¶ 17. Among Plaintiff many chart-topping albums, his 1992 album *The Predator* featured his certified-platinum single "Check Yo Self." Compl., ¶ 17. "Check Yo Self" has become one of Plaintiff's signature recordings and is an indelible part of his image and likeness. Compl., ¶ 18. Indeed, the lyric and phrase "Check Yo Self" has become nothing less than Plaintiff's catchphrase. Compl., ¶ 18. If Plaintiff uses his signature catchphrase, "Check Yo Self," the public has come to understand that he "means business" and is serious. Compl., ¶ 18.

In addition to his successful music career, Plaintiff has also regularly worked as an actor in motion pictures, beginning with 1991's highly regarded *Boyz n the Hood*. Compl., ¶ 19. Plaintiff has also leveraged his image and likeness in successful entrepreneurial endeavors. Compl., ¶ 20. In 2017, Plaintiff co-founded Big3, a 3-on-3 basketball league that went on to achieve great success. Compl., ¶ 20. Most importantly, Plaintiff has devoted his life to the cause of social justice and civil rights, standing up for the disenfranchised in American society. Compl., ¶ 21. In 2020, Plaintiff's social activism culminated in the publishing of A Contract with Black America, a covenant to right the centuries of wrongs that had been inflicted on Black Americans. Compl., ¶ 21.

Plaintiff's image and likeness are famous and valuable. Compl., ¶¶ 22-23. Plaintiff's stage name "Ice Cube" is a federally registered trademark, further underscoring the fame and value attributable to Plaintiff's persona. Compl., ¶ 24. Plaintiff's business partner, Jeff Kwatinetz, is a civil rights attorney who has recently filed a class action lawsuit against Robinhood, and voiced his disapproval of Robinhood on several media outlets. Compl., ¶ 25. It is public knowledge that Mr. Kwatinetz is associated with Plaintiff, as they partnered in developing the highly successful Big3 basketball league. Compl., ¶ 25. On March 8, 2021, Defendants impermissibly used Plaintiff's image and likeness in connection with an

advertisement (the "Advertisement") for Robinhood's financial services and products on the "Robinhood Snacks" website and app.  Compl., ¶ 26; Dkt. No. 1-1.   The Advertisement uses Plaintiff's image and likeness, including his signature catch phrase, in order to create the false impression that Plaintiff actually endorses Robinhood, its products, and its services.  Compl., ¶ 26; Dkt. No. 1-1.

The Advertisement creates the false impression that Plaintiff supports and endorses Robinhood's products and services.  Compl., ¶ 27.  This is especially true as the Advertisement (mis)quotes the most well-known lyric and catchphrase from Plaintiff's hit single, "Check Yo Self."  Compl., ¶ 27. In truth, Plaintiff absolutely does not, and never would, support Robinhood's products and services.  Compl., ¶ 27. The fact that the Advertisement suggests that Plaintiff endorses Robinhood and its services and products is supported by the fact the Robinhood has a demonstrable pattern and practice of using established celebrities, such as Nas and Jay-Z, to endorse its products and services. Compl., ¶ 28.  Robinhood brazenly relied on its well-publicized association with such prominent rappers when it unlawfully used Plaintiff's image and likeness to create the false impression that Plaintif supports and endorses Robinhood's products and services. Compl., ¶ 28.

Moreover, Robinhood specifically sought to make an example out of Plaintiff due to the fact that his business partner, Jeff Kwatinetz, had sued Robinhood and publicly held the company to account. Compl., ¶ 29. Although Plaintiff had no involvement in that lawsuit, Robinhood's resulting actions speak volumes about its petty, vindictive, and malicious nature as a company. Compl., ¶ 29.  At no time prior has Plaintiff authorized Defendants to use his image or likeness for commercial purposes of any sort, let alone the Advertisement.  Compl., ¶ 30.  On March 10, 2021, Plaintiff notified Defendants in writing that the use of his image and likeness in the Advertisement was not authorized. Compl., ¶ 21.   Plaintiff demanded that Defendants immediately cease and desist from any further unauthorized uses of his image and likeness.  Compl., ¶ 31.  Despite this notice, Defendants have continued to exploit Plaintiff's image and likeness without permission from Ice Cube and without compensating Plaintiff, causing significant damage to Ice Cube and adversely affecting the value of Ice Cube's image and likeness. Compl., ¶ 32.

## III.   Legal Standard On Anti-SLAPP Motions In Federal Court.

California's "anti-SLAPP" statute allows a defendant to file a special motion to strike only in connection with claims that arise from acts in furtherance of a person's protected "right of petition or free speech." Cal. Civ. Proc. Code § 425.16(b); *see FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 143 (2019). However, "[t]he anti-SLAPP statute does not insulate defendants from any liability for claims

arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." *Baral v. Schnitt*, 1 Cal.5th 376, 384 (2016).[1]

On an anti-SLAPP motion, California courts apply a two-step process under which "[t]he moving defendant bears the burden of 'identifying all allegations of protected activity, and the claims for relief supported by them.'" *Todd v. Lovecruft*, 2020 WL 60199, at *5 (N.D. Cal. Jan. 6, 2020) (citations omitted). In order to meet its initial burden, a defendant must make "an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of . . . free speech." *Todd*, at *11 (citation omitted). Here, Defendants must establish that "the challenged statements were made (1) in a public forum and (2) in connection with an issue of public interest." *Todd*, at *11; *see FilmOn*, 7 Cal.5th at 139–40; Cal. Civ. Code Proc. § 425.16(e).

Only once the moving defendant has met its burden does "the burden shift[] to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. *Baral*, 1 Cal.5th at 384; *Wilson v. Cable News Network, Inc*. 7 Cal.5th 871, 888-891 (2019) ("[P]laintiff's second-step burden is a limited one."). At this second step, plaintiffs are "not required to '*prove* the specified claim,' (citation omitted) ... [Plaintiffs] need only convince us that [their] claim has 'minimal merit.'" *Manzari v. Assoc. Newspapers Ltd*., 830 F.3d 881, 889 (2016) (emphasis in original). Claims that have even "minimal merit" should not be dismissed. *Baral*, 1 Cal.5th at 385; *Overstock.com, Inc. v. Gradient Analytics, Inc*., 151 Cal.App.4th 688, 700 (2007). This showing "requires only a 'minimum level of legal sufficiency and triability.'" *Manzari*, 830 F.3d at 889; *Todd*, at *14 (citing another source).

"The court does not weigh evidence or resolve conflicting factual claims." *Baral*, 1 Cal.5th at 384-85.  Instead, "[i]ts inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Id*. The Court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the

---

[1] "The anti-SLAPP law was enacted 'to protect nonprofit corporations and common citizens 'from large corporate entities and trade associations' in petitioning government.'" *FilmOn*, 7 Cal.5th at 143. "In the paradigmatic SLAPP suit, a well-funded developer limits free expression by imposing litigation costs on citizens who protest, write letters, and distribute flyers in opposition to a local project...[s]uch lawsuits are often pernicious, masquerading as standard defamation and interference with prospective economic advantage litigation[.]" *Id.*

plaintiff's claim as a matter of law." *Id.* A plaintiff's "burden of establishing a probability of prevailing is not high[, and t]he Court does not weigh credibility or evaluate the weight of the evidence." *Guzman v. Finch*, 2019 WL 1877184 at *6 (S.D. Cal. Apr. 26, 2019) (citation omitted).

"A district court sitting in diversity must apply the federal standard" in evaluating an anti-SLAPP motion. *Todd*, at *6. In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), the Ninth Circuit "set forth the standard that district courts must now apply." *Todd*, at *7. In federal courts:

> If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under [Rule] 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted.

*Id.* (quoting *Planned Parenthood*). "For purely legal challenges, there is no need for the party opposing the motion to 'submit evidence showing the merit of their claims' [but f]or factual challenges, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.* (quoting *Planned Parenthood*). Where there are factual questions, discovery must be allowed, and the anti-SLAPP motion should be denied. *Planned Parenthood*, 890 F.3d at 834; *see Shekoski v. Used, LLC*, 2019 WL 3064115, at *4–5 (C.D. Cal. June 12, 2019); *Nano Found., Ltd. v. Silver*, 2019 WL 6723428, at *2 (C.D. Cal. Aug. 20, 2019).

## IV. Defendants Fail To Meet Their Initial Burden That Their Unauthorized Use Of Plaintiff's Image And Likeness Falls Within The Purview Of The Anti-SLAPP Statute.

In their motion, Defendants simply ***assume*** in pure conclusory fashion that their misappropriation of Plaintiff's image and catchphrase – the challenged action – is protected by the anti-SLAPP statute because it supposedly concerns a matter of public interest.  However, Defendants only argue that reporting and commenting on the stock market is a matter of "general public interest."  As discussed below, Defendants cannot meet their initial burden because Defendant's use of Plaintiff's persona does not implicate any issues of public interest.  Moreover, even if some of the Advertisement's content can somehow be closely connected to the asserted public issue of the stock market —and Plaintiff disagrees— Defendants fail to demonstrate that the unauthorized use of Plaintiff's persona ***closely contributed*** in any way to the discussion on this claimed issue.  Defendants do not make such arguments because they cannot. ***Nothing*** in the Advertisement's content concerns any public dispute or story ***related to Plaintiff***.

1   Plaintiff's claims are based on Defendants' unauthorized use of his persona.  Plaintiff's celebrity persona

2   is only used in order to attract unsuspecting consumers to Defendants' products and services.

3   Defendants' commercial use of Plaintiff's image and likeness does not contribute in any way, let alone

4   in a closely related way, to public discussion on the stock market, as it must for anti-SLAPP protection.

5   As Defendants failed to meet their initial burden under California Supreme Court precedent, the anti-

6   SLAPP motion must be denied.

7       ## A.   Public Interest Within The Meaning Of The Anti-SLAPP Statute.

8          The anti-SLAPP statute does not define the term "issue of public interest." See *FilmOn*, Cal.5th

9   at 139-40; Todd, at *12. As a result, California courts have, for a long time, broadly construed its

10  meaning; however, in three recent 2019 decisions, the California Supreme Court ***reined in*** such overly

11  broad applications and established a stricter two-part test to determine what is considered a matter of

12  "public interest." *See Wilson*, 7 Cal.5th at 900; *FilmOn*, 7 Cal.5th at 145; *Rand Res., LLC v. City of

13  Carson*, 6 Cal.5th 610, 621 (2019).

14         Under the current standard, in order to meet its initial burden, a moving defendant must show that

15  the speech at issue (1) directly implicated an issue of public interest and (2) "contributed to public

16  discussion or resolution of the issue." *Wilson*, 7 Cal.5th at 900 (citing *FilmOn*). Speech that is "too

17  tenuously tethered to the issues of public interest . . . , and too remotely connected to the public

18  conversation about those issues" fall outside of the ambit of the anti-SLAPP's protection. *FilmOn*, 7 Cal.

19  5th at 140.  It is ***not sufficient*** that the statements "refer to a subject of widespread public interest"; rather,

20  there must be "some degree of closeness between the challenged statements and the asserted public

21  interest." *Id.* at 150; *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1132-33 (2003). Moreover, it is

22  ***insufficient*** to claim that "a specific dispute" bears some relationship to "a broad and amorphous public

23  interest." *Id.*  The court's analysis must focus on "the specific nature of the speech," not on "generalities

24  that might be abstracted from it." *FilmOn*, 7 Cal.5th at 152 (citations omitted).

25         Further, the type of speech that is protected under the anti-SLAPP statute is limited "by its

26  location, its audience, and its timing." *Id.* at 143, 149-50 (instructing lower courts to analyze what

27  constitutes an issue of public interest more strictly in terms of both the text and context of a statement;

28  noting ***disapprovingly*** that in intermediate appellate court opinions "virtually always, defendants succeed

    in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest");

see also *All One God Faith, Inc. v. Organic & Sustainable Indus. Stands., Inc*., 183 Cal.App.4th 1186, 1204, (2010) (in applying the statute, noting that the purpose of the speech matters).

**B.**   **Defendants Fail To Establish That Their Use Of Plaintiff's Image And Likeness Concerns A Matter Of Public Interest Or That They Contributed In Any Way To Any Public Discussion Regarding Those Issues.**

Here, Defendants fail to establish that their unauthorized use of Plaintiff's image and likeness in the Advertisement concerns an issue of public interest.  Further, Defendants have made no effort – none – to demonstrate how the use of Plaintiff's image and likeness contributes in any way to public discussion regarding an issue of public interest.  Defendants do not dispute that, beyond their unauthorized use of Plaintiff's persona to garner attention, the Advertisement does not concern Plaintiff in any way.   It does not report on news concerning Plaintiff and his activities.  It does not offer any criticism or opinion of Plaintiff.  The sole justification for Defendants' use of Plaintiff's image and catchphrase is to generate interest in Plaintiff's wholly unrelated Advertisement, which is not only one of the products and services offered by Defendants, but which also prominently features links to other parts of Robinhood's website. Indeed, when accessing the Advertisement online, the website's main navigation menu prominently features an offer for the user to "**Sign Up**" for the Robinhood stock trading app – a clear and omnipresent solicitation for Defendants' goods and services.

The mere fact that Plaintiff is a celebrity does ***not*** simply convert Defendants' use of his image and likeness into a matter of public interest.  Courts have routinely rejected the notion that "any statement about a person in the public eye is sufficient to meet the public interest requirement of" the anti-SLAPP statute. *Albanese v. Menounos*, 218 Cal. App. 4th 923, 934, 936 (2013) (rejecting the argument that "any statement about a person in the public eye is a matter of public interest"). *See also*; *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226 (2010) ("No authority supports the R.'s broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue."); *Condit v. National Enquirer, Inc.*, 248 F. Supp. 2d 945, 954 (E.D. Cal. 2002) ("Even assuming arguendo that Plaintiff is a 'public figure' for First Amendment purposes, not all speech concerning her necessarily bears on a 'public issue' or an 'issue of public interest' for purposes of § 425.16(e).").

*Albanese* is instructive. The plaintiff in *Albanese* was a "celebrity stylist and style expert" and claimed that the defendant television personality defamed her when the defendant publicly accused her of stealing Dolce and Gabbana goods. *Albanese*, 218 Cal. App. 4th at 926. The defendant contended that

7

the speech was a matter of public interest because the plaintiff was celebrity.   *Id.* at 927.  The *Albanese* court, however, refused to find that such evidence established that the challenged statements at issue— that the plaintiff stole Dolce and Gabbana goods—related to an issue of public interest or public concern:

> At best, the evidence in this case shows there is some public interest in Albanese based on her profession as a celebrity stylist and style expert. But there is no evidence of a *public controversy* concerning Albanese, Menounos, or Dolce and Gabbana. Even if Albanese is rather well known in some circles for her work as a celebrity stylist and fashion expert, there is no evidence that the public is interested in this private dispute concerning her alleged theft of unknown items from Menounos or Dolce and Gabbana. In short, there is no evidence that any of the disputed remarks were topics of public interest.
> *Id.* at 936 (emphasis added).

The same result follows here. The fact that Plaintiff is a celebrity does not give Defendants carte blanche to misappropriate his image and likeness, especially as the Advertisement does not concern **any** controversy or dispute that involves Plaintiff.  The content of the Advertisement is completely divorced from Plaintiff, having nothing to do with him whatsoever.  "Even in cases involving a celebrity, however, there must be some evidence that the celebrity is involved in a 'public controversy or that [the celebrity's] fame is *so great* that her involvement in this private dispute is a matter of public interest.'" *Meribear Prods. Inc. v. Vail*, 2015 WL 12766576, at *3 (C.D. Cal. Aug. 11, 2015) (denying anti-SLAPP motion).

Rather, the anti-SLAPP statute simply does not apply to this private dispute.  *See Consumer Justice Center v. Trimedica International, Inc.*, 107 Ca1. App. 4th 595, 601 (2003) (the anti-SLAPP statute does not apply to a false advertising claim about herbal supplements because "Trimedica's speech is not about herbal supplements in general. It is commercial speech about the specific properties and efficacy of a particular product, Grobust."),

In *Weinberg v. Feisel*, the court examined the types of issues that are considered matters of public interest, including a "lawsuit against a large and wealthy church" that had been covered "extensive[ly]" by the media; "placement of a shelter for battered women"; "allegations of domestic violence against a nationally known political consultant"; and "statements about a participant in the television broadcast Who Wants to Marry a Multimillionaire, which had generated considerable public debate." 110 Cal.App.4th at 1133. Defendants' asserted "issue" does not rise to the same level.

At best, Defendants' use of Plaintiff's image and catchphrase is exactly the sort of "statement" that generally "refer[s] to a subject of widespread public interest" but lacks "some degree of closeness

between the challenged statements and the asserted public interest." *FilmOn*, 7 Cal.5th at 150. The "specific nature of [Defendants'] speech," as opposed to "generalities that might be abstracted from it," is the misappropriation of Plaintiff's literal image and catchphrase – wholly unrelated to the general issue of the stock market. *Id.* at 152; *see Mann v. Quality Old Time Serv., Inc.*, 120 Cal.App.4th 90, 111 (2004), *disapproved on another ground in Baral*, 1 Cal.5th 376 ("[D]efendants' alleged statements were not about pollution or potential public health and safety issues in general, but about WSSI's specific business practices.").

Defendants' infringing use of Plaintiff's persona certainly does not "contribute[] to public discussion or resolution of the issue." *Wilson,* 7 Cal.5th at 902-03 ("[F]or anti-SLAPP purposes . . . ***the part is not synonymous with the greater whole***. . . . selling an herbal breast enlargement product is not a disquisition on alternative medicine. . . . And . . . hawking an investigatory service is not an economics lecture on the importance of information for efficient markets." (internal quotations and citations omitted) (emphasis added); *Jeppson*, 44 Cal. App. 5th at 856 ("Despite the medium of the internet, the topic was not of widespread public interest. There is no issue of public interest when the speaker's words are merely an effort to gather ammunition for another round in the speaker's neighborhood wrangle."); *see also Weinberg*, 110 Cal.App. at 1132–33.

Another court in this district recently denied an anti-SLAPP motion on similar grounds. *Penrose Hill, Ltd. v. Mabray*, 479 F.Supp.3d 840, 853-56 (N.D. Cal. 2020). In *Penrose Hill,* the challenged speech was an online tweet from a prominent wine critic and blogger that was highly critical of plaintiffs, prominent figures in the wine industry. *Id.* at 845-47. The defendant filed an anti-SLAPP motion, arguing that the tweet related to nontraditional methods of selling wine, a matter of public interest. *Id.* at 854-55. Judge Ryu held that "the challenged statements in the Tweet do not have the requisite closeness to that issue." *Id.* at 855. The court found that a "generic reference to transparency in the wine industry" was exactly the kind of "broad and amorphous public interest" that California courts "have found not sufficiently connected to the specific statements at issue." *Id.* The anti-SLAPP motion was denied, as the defendant had failed to establish that the challenged speech was closely connected to a matter of public interest. *Id.* at 856.

The facts of the instant case compel against the application of the anti-SLAPP statute even moreso than in *Penrose Hill,* where the challenged speech was actual criticism concerning the plaintiffs. Here, Plaintiff challenges the use of his image and catchphrase in Defendants' entirely unrelated

9

Advertisement.  In sum, Defendants' conclusory argument that their use of Plaintiff's image and likeness in the Advertisement concerns a matter of public interest fails because the substance, timing, and context of this use demonstrates that Defendants intended to draw attention to their own products and services, and not in connection with an existing public controversy.  For this reason, Defendants' anti-SLAPP motion should be denied.  Defendants have entirely failed to meet the high burden set by the California Supreme Court.  Indeed, they have completely ignored the current, strict standard and thus forfeited this issue.

## V.   The Motion To Strike Should Be Denied Because Plaintiff Can Demonstrate A Probability Of Success On His State Law Claims.

Assuming *arguendo* that the Court determines that Defendants has successfully satisfied the first prong of the anti-SLAPP standard, Plaintiff is "not required to 'prove the specified claim,' (citation omitted) . . . [Plaintiffs] need only convince us that [their] claim has 'minimal merit.'" *Manzari*, 830 F.3d at 889 (emphasis in original).  As set forth below, Plaintiff has done so.  In their motion, Defendants simply repeat the failed facial attacks made in their Rule 12(b)(6) motion to dismiss.  *See Hilton v. Hallmark Cards*, 599 F.3rd 894, 908 (9th Cir. 2010) (affirming denial of anti-SLAPP motion because defense did not establish lack of liability as a matter of law).

### A.   Plaintiff Has Standing To Bring His Claims.

Plaintiff's Complaint pleads facts sufficient to show that Article III and statutory standing exists for Plaintiff to bring his claims.  Article III standing requires a current case or controversy, meaning an injury in fact traceable to defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Id.* at 561 (quotation marks and internal alterations omitted).

Economic injury is "clearly a sufficient basis for standing."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[Economic injury] is a quintessential injury-in-fact."); *San Diego Cty. Guns Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).  "[T]he standard for measuring lost profits in a right of publicity case is the fair market value of the right to use plaintiff's name or likeness in the manner in which it was used by defendant."  *Clark v. Am. Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000); *see also Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1111 (9th Cir.1992); (celebrity

awarded the fair market value of his services on a voice misappropriation claim) and *White v. Samsung Elec.,* 971 F.2d 1395, 1399 (9th Cir.1992) ("the law protects the celebrity's sole right to exploit th[e] value" of her fame).

Persons that are "highly sought after as a celebrity endorser[s]," can and must "guard[] the use of [their] identity very closely[.]" *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 513 (7th Cir. 2014). A multitude of laws exist to compensate for loss of celebrity goodwill and future publicity value. *See Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997). Indeed, it should be undisputed that celebrity endorsement value diminishes with use. *See Grant v. Esquire, Inc.*, 367 F. Supp. 876, 881 (S.D.N.Y. 1973); *Doe v. McFarlane*, 207 S.W.3d 52, 64-66 (Mo. Ct. App. 2006) (negative or over association with certain brands tarnishes celebrities' endorsement value); *cf. Perkins Sch. for the Blind v. Maxi-Aids, Inc.,* 274 F. Supp. 2d 319, 324 (E.D.N.Y. 2003) (absence of quality control procedures creates consumer confusion).

California law has long recognized "the right to profit from the commercial value of one's identity as an aspect of the right of publicity." *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 409 (2001). "What may have originated as a concern for the right to be left alone has become a tool to control the commercial use and, thus, protect the economic value of one's name[.]" *KNB Enterprises v. Matthews*, 78 Cal.App.4th 362, 366 (2000). There are two vehicles a plaintiff can use to protect this right: a common law cause of action for commercial misappropriation; and a statutory claim under California Civil Code section 3344.  To establish the common law claim, a plaintiff must establish: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of the plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 544 (2011). To prove the statutory claim, a plaintiff must also allege "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Id.* (internal citations omitted).

Here, Plaintiff has alleged that Defendants have misappropriated the business and goodwill value of Plaintiff's celebrity persona and, as a result of Defendants' actions, he has "suffered and will continue to suffer substantial monetary damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation[.]" Compl., ¶¶ 40-41.  This is sufficient to establish standing for a right of publicity claim.  *Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*, 2018 WL 4962086, at *6 (C.D. Cal. Jan. 26, 2018) (denying motion to dismiss for lack of standing).

1    Plaintiff's UCL claim specifically pleads that he has lost money or property as a result of

2    Defendants' wrongful acts.  Compl., ¶ 58.  The loss of "money or property" requirement under the UCL

3    encompasses a broad expanse as to the sort of economic injury that suffices for standing and "[t]here are

4    innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v.*

5    *Superior Court* , 51 Cal. 4th 310, 323 (2011). This includes the loss of business to a competitor due to

6    unfair competition, which is the original type of harm addressed by the UCL. *See Law Offices of Mathew*

7    *Higbee v. Expungement Assistance Servs.*, 214 Cal.App.4th 544, 560-61 (2013) (one "identifiable trifle

8    of injury as necessary for standing under the UCL" is a decrease in business value).

9    Plaintiff has pleaded that Defendants' unfair, unlawful and fraudulent practices has deprived him

10   of compensation he is due.  Compl., ¶ 58.  This is sufficient to establish standing. *Hush Hush Sound,*

11   2018 WL 4962086, at *6.  Courts in this district have held a party has standing to bring a claim under the

12   UCL where the defendant profited from the misappropriation of the plaintiff's valuable image and

13   likeness.  *See Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 812 (N.D. Cal. 2011) (UCL standing due to

14   defendant's "failure to compensate [plaintiffs] for their valuable endorsement of third-party products and

15   services to their Facebook Friends"). Plaintiff has a vested interest, as a valuable celebrity, in the monies

16   that should have been paid to him for the use of his image and likeness to endorse Defendants.  "To the

17   extent Plaintiffs allege they have a right to be paid for their endorsements . . . the Court finds that they

     have alleged a loss of money or property sufficient to state a claim under the UCL." *Id*.

18   The claimed economic harm cited in the Complaint is sufficient to provide Plaintiff with standing

19   to pursue their claims. *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1347  ("While it is

20   difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms").

21   Plaintiff has pleaded sufficient injury to bring each of his claims.

22       **B.**     <u>**Section 230 of the Communications Decency Act has No Application Here**</u>.

23   Defendants are not entitled to Communications Decency Act ("CDA") immunity. Defendants are

24   "responsible, in whole or in part, for the creation or development" of the "offending information [and

25   therefore are] not entitled to the CDA's protection." *Fair Hous. Council of San Fernando Valley v.*

26   *Roommates.Com, LLC* ("*Roommates.com*"), 521 F.3d 1157, 1167-68 (9th Cir. 2008).   Defendants

27   generated and are solely responsible for the content of the Advertisement.   Defendants' CDA argument

28   borders on the frivolous and it utterly without merit.

Defendants' self-serving view of CDA protection would expand CDA immunity far beyond its intended scope. The CDA was created to protect internet service providers ("ISPs") from liability for the actions of ***third parties***.  *Id.* at 1174.  The CDA was not intended to allow an ISP to claim immunity from its own actions.  Where, as here, Plaintiff seeks to hold Defendants liable for its conduct, i.e., authoring and disseminating the Advertisement using Plaintiff's image and likeness without his consent, the CDA does not apply.  See *Checkmate Strategic Group v. Yahoo!, Inc.*, 2005 U.S. Dist. LEXIS 46960, at *21 (C.D. Cal. Oct. 14, 2005) (finding CDA protections inapplicable where "plaintiff is not attempting to shift liability from the third parties"). To immunize Defendants' actions here would turn the language and intent of the CDA on its head.

The CDA provides limited protection against secondary liability for service providers, but does not protect primary content creators such as Defendants.  Defendants created new and original content – the Advertisement in question – by generating the text of the Advertisement and intentionally using Plaintiff's image and likeness to generate interest in the Advertisement.  Compl., ¶¶ 6-7, 26-32,  34-42, 46-51, 53-55, 56-61.

Section 230(e)(3) of the CDA defines an "Internet Content Provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  The CDA does ***not*** protect service providers that publish tortious content created by the providers themselves.  *See Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257, 1262-1263 (N.D. Cal. 2006) (holding no CDA immunity where dating service's alleged creation of false profiles induced plaintiff to maintain membership to the site); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1149 (D. Ariz. 2005) (holding that CDA did not bar claims premised on service provider's creation of its own comments and other defamatory content to accompany third-party postings).

As the Ninth Circuit Court of Appeals has held, Section 230 of the CDA immunizes "providers of interactive computer services against liability arising from content created by third parties." *Roommates.com*, 521 F.3d at 1163. The language of the Act itself emphasizes that this immunity is only for secondary liability: "Congress sought to immunize the removal of user- generated content, not the creation of content." *Id.* at 1163-64. Section 230's "grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of the offending

13

content." *Roommates.Com,* 521 F.3d at 1162 (quoting 47 U.S.C. § 230(f)(3)).   In *Roommates.com,* the

Ninth Circuit **expressly rejected** the very argument Defendants advance here:

> [T]he fact that users are information content providers does not preclude Roommate from also being an information content provider by helping develop at least in part the information in the profiles. As we explained in Batzel, the party responsible for putting information online may be subject to liability, even if the information originated with a user.

> *Id.* at 1163 (*citing Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)).

Here, Defendants are not republishing content that originated with a third party – they are creating

original content in the form of the Advertisement.   Courts in this district have already considered and

rejected arguments nearly identical to those made here.   In *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785,

(N.D. Cal. 2011), under a theory of misappropriation of likeness, plaintiffs sued defendant Facebook for

using their identities, images, and likenesses to generate targeted advertising.   Facebook argued that

because it is an "interactive computer service," Section 230 precluded the plaintiffs' claim.   Ruling

against Facebook on Section 230 immunity, Judge Koh found that Facebook was liable because plaintiffs

were not accusing Facebook of "publishing tortious content, but rather of **creating and developing**

**commercial content** that violates their statutory right of publicity." *Fraley*, 830 F. Supp. 2d at 801.

Analogously, here, Defendants are creating new content that contains the unconsented use of Plaintiff's

image and likeness.   Despite Defendants' conclusory statements to the contrary, Defendants intentionally

created the content takes Plaintiff's name and likeness and incorporates them into an Advertisement for

Defendants' products and services.

Defendants' cited authorities are wholly inapposite.   In denying a motion to dismiss based on

CDA immunity on similar grounds, Judge Koh distinguished *Carafano v. Metrosplash.com, Inc.,* 339

F.3d 1119 (9th Cir. 2003) as follows:

> The Ninth Circuit's ruling in *Carafano,* which predates the Court of Appeals' en banc decision in *Roommates.Com,* does not counsel otherwise. In that case, **a third party created a fake dating profile of a popular Hollywood actress**, which included sexually suggestive comments and the actress's home address and contact information. *Carafano,* 339 F.3d at 1120–22. Affirming the district court's grant of summary judgment to Matchmaker.com, the court found CDA immunity because the "critical information about Carafano's home address, movie credits, and the e-mail address that revealed her phone number **were transmitted unaltered to profile viewers**." *Id.* at 1125. "Thus," the court concluded, "Matchmaker did not play a significant role in creating, developing or 'transforming' the relevant

14

information." *Id.* ***Here, by contrast, Plaintiffs have sufficiently alleged that LinkedIn was responsible "at least in part" for creating or developing the reminder emails endorsing*** LinkedIn. *Roommates.Com,* 521 F.3d at 1165. As discussed above, Plaintiffs allege that LinkedIn generated the text, layout, and design of the reminder emails and deprived Plaintiffs any opportunity to edit those emails, which Plaintiffs had no knowledge were being circulated on their behalf. *Id.* ¶¶ 92–93, 99–100. *Carafano,* therefore, is distinguishable.

*Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1249 (N.D. Cal. 2014) (emphasis added).

The decision in *Ebeid v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal. May 9, 2019) is also wholly inapposite.  In *Ebeid,* the plaintiff sought to hold Facebook liable for content the ***plaintiff himself*** had created and that Facebook had simply removed from its platform.  *Id.* at *4.  Here, Plaintiff plainly alleges that Defendants created all of the content of the Advertisement – not that Defendants edited or removed content posted by a third party.

This Court's recent in *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) is equally distinguishable.  In *Callahan,* the website Ancestry.com had taken high school yearbooks from third parties and simply republished them through its online service, adding search functionality and the like.  *Id.* at *5-6.  The Court held that Ancestry.com did not contribute "materially" to the end content, and instead "passively displayed" content created by third parties.  *Id.* at *6.  That is clearly not the case here, where Defendants were solely responsible for the Advertisement.  Defendants' intentionally selected Plaintiff's famous image and then intentionally combined it with his famous catchphrase to make use of his famous persona.  Defendants did not simply act as a neutral forum for a third party to post content, or passively republish content created by a separate person.  Defendants' CDA argument fails.

## C.    The Advertisement is Commercial Speech and Not Protected By The First Amendment.

"The First Amendment is not a license to trespass, to steal, or to intrude . . ." *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971).  Defendants incorrectly claim that the Advertisement is protected by the First Amendment.  In fact, the Advertisement is "commercial speech," which is rarely, if ever, protected by the First Amendment. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 952 (2002) ("The federal Constitution accords less protection to commercial speech.").

The media's rights must take into account a plaintiff's competing interest in protecting his/her identity from unauthorized use. This was expressly recognized by the Supreme Court in *Zacchini v.*

15

*Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) (First Amendment did not provide defense to plaintiff's right of publicity claim). The Ninth Circuit has also repeatedly recognized the right of publicity and the right of celebrities to control the use of their identities.  See*, e.g. Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988); *White v. Samsung Electronics*, 971 F.2d 1395 (9th Cir. 1992); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).  When a defendant takes for itself a person's property- the right to control the use to which his identity is put - to exploit or attract attention to itself, the First Amendment justifications disappear, and the right to publicity will prevail.  As noted by the Ninth Circuit, if the purpose of the use of a person's identity is to exploit that individual, there will be no First Amendment immunity.  *Midler,* 849 F.2d at 462.

The only United States Supreme Court case to rule on the interaction of the First Amendment and the right of publicity is *Zacchini* where our High Court held that even a clearly newsworthy report using a plaintiff's name and likeness in a television newscast may violate his right of publicity without implicating the First Amendment. In *Zacchini* the issue was whether a local television station's newscast  showing plaintiff's "human cannonball" act violated his right of publicity.  The Supreme Court held that the station's interest in free speech did not permit it to broadcast the plaintiff's performance. *Zacchini*, 433 U.S. at 575. The television station's broadcast was completely truthful and it even praised the plaintiff's performance and urged the public to go see it. Yet, its violation of the plaintiff's right to publicity was not immunized by the First Amendment. The Court noted, "The rationale for [protecting the right of publicity] is the straight-forward one of ***preventing unjust enrichment by the theft of good will.*** No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." *Zacchini,* 43 U.S. 562, 576 (US 1977) (citations omitted, emphasis added).

Protection for noncommercial publication of matters in the public interest is associated with "freedom of the press." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). However, this defense "is not absolute."  *Id.*  Instead, a "proper accommodation" must be found between freedom of speech and the right of publicity. *Id.* The California Supreme Court has established a balancing test which weighs any public interest in the speech against the economic and privacy interests at stake. "Factors deserving consideration may include the medium of publication, the extent of the use, the public interest served by the publication, and the seriousness of the interference with the person's privacy." *Gill*

*v. Curtis Publ'g Co.*, 38 Cal. 2d 273, 278-79 (1952).  As discussed below, any tenuous relationship Defendants' Advertisement may have to the public interest is secondary to Defendants' true motivation, which is advertising, and Defendants' marketing has seriously interfered with Plaintiff's rights.

While there is no bright-line test for whether speech is "commercial," certain relevant factors include: (1) is the speech an advertisement; (2) does it refer to a specific product or service; and (3) is the speech economically motivated. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). An affirmative answer to all three questions – as here – provides "strong support" for the conclusion that the speech is commercial. *Id.*[2] In *Bolger v. Youngs Drug Products*, the Supreme Court ruled on whether certain mass-mailed pamphlets were commercial speech.  These pamphlets almost exclusively discussed sexually transmitted diseases, which are matters of public interest.  But, based upon the totality of the pamphlet's characteristics, namely that they were mailed with an economic motive, they were conceded to be advertisements, and they referred to the defendant's product, the Court held that they were commercial speech. 463 U.S. at 66-67. The facts of this case are similar to those the Court found dispositive in *Bolger*. *See also Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518 (7th Cir. 2014) ("An advertisement is no less 'commercial' because it promotes brand awareness . . . rather than explicitly proposing a transaction").   Indeed, "[c]ourts have found commercial speech even when it involves indirect benefits," such as general exposure of a speaker's product. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) (finding that defendant's nutritional supplement guide and rating system was commercial speech).

The authorities cited by Defendants bolster Plaintiff's argument that the Advertisement is commercial speech.  In *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1093 (E.D. Cal. 2009), famous aviator Chuck Yeager brought an action against Cingular Wireless for the use of his name in a publication entitled, "Cingular Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season" (the "Cingular Publication").  The Cingular Publication contained information about Cingular's preparedness for disasters through its emergency preparedness equipment and it also referenced Yeager and his achievement in relation to Cingular's equipment.  The Cingular Publication

---

[2] *See also Charles v. City of L.A.*, 697 F.3d 1146, 1151 (9th Cir. 2012) ([T]he boundary between commercial and noncommercial speech has yet to be clearly delineated.").

did not include a picture of Yeager, nor did it propose a commercial transaction or offer for sale any specific product or services.  Yeager filed suit for violation of California's common law and statutory right of publicity, and violations of the UCL, claiming Cingular violated his right to control the use of his name and identity because Cingular made unauthorized use of Plaintiff's name to promote Defendants' products and services.  The *Yeager* court held that the Cingular Publication was commercial speech not entitled to First Amendment protection.  The Court held that, notwithstanding the fact that the Cingular Publication did not propose a commercial transaction or offer for sale any specific product or service, the sole purpose of the Cingular Publication was to promote Cingular's products.  The use of Yeager's name and identity, then, was only used to attract attention to Cingular's unrelated services and products.  *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d at 1098-99.  The *Yeager* court held:

> In this case, the context of the communication and the nature of the information conveyed demonstrate that plaintiff Yeager's name and accomplishments were used to ***attract attention to defendant's unrelated wireless services***. While emergency preparedness and the availability of wireless services following a natural disaster are matters or public interest and concern, as set forth above, the Publication in this case was not purely informational in nature; rather, it is properly characterized as commercial speech because, *inter alia,* it aimed to positively market defendant's services by linking them to that public concern. Further, plaintiff's name and accomplishments in breaking the sound barrier are ***wholly unrelated*** to defendant's mobile command centers and cellular service in emergency situations.

*Yeager*, 673 F. Supp. 2d at 1099 (emphasis added).

In *Downing,* clothing manufacturer Abercrombie & Fitch used a photograph of plaintiffs competing in a surfing competition, which Abercrombie had purchased from the photographer and owned outright. *Downing,* 265 F.3d at 1000.  The photograph was placed in a clothing catalog that also included news and editorial pieces about the surfing culture.  *Id.* While the surfing theme of the catalog was conceded to be a matter of public interest, the *Downing* court found that the photograph's use did not contribute significantly to the editorial pieces about surfing culture.  *Id.* at 1002 ("The catalog did not explain that [the plaintiffs] were legends of the sport and did not in any way connect [the plaintiffs] with the story preceding it."). Rather, the court reasoned that the defendant used the plaintiffs' photograph "essentially as window-dressing to advance the catalog's surf-theme." *Id.* Therefore, because the plaintiffs' likeness was used primarily to attract consumers to the unrelated product for sale in the sales catalog, such use was not protected by the First Amendment defense. *Id.*

Here, just as in *Downing* and *Yeager,* the content of the Advertisement has nothing to do with Plaintiff: it does not report on news about Plaintiff, and the content of the Advertisement does not relate to or comment on Plaintiff and his endeavors. The Advertisement does not in any way connect Plaintiff's persona – his image and famous catchphrase – to the content of the Advertisement.

Defendants have no defense to Plaintiff's state law claims. Tellingly, Defendants completely fail to acknowledge that the applicability of the First Amendment under California law is "based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation." *Comedy III Prods., Inc. v. Gary Saderup. Inc.*, 25 Cal. 4th 387, 391(200): *see also id.* at 405 ("When artistic expression takes the form of a literal depiction or imitation of a celebrity for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist."). Here, Defendants admit there is no transformative use. They use a literal depiction of Plaintiff and his famous catchphrase. *Hilton*, 599 F.3d at 910 (no transformative use where company used photograph of celebrity accompanied by her famous catchphrase).

Any self-serving advertiser could argue, as Defendants do, that its product promotes First Amendment concerns. *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562 n.5 (1980) (noting that "many, if not most, products may be tied to public concerns," and declining to "grant broad constitutional protection to . . . advertising" on that basis). Even if Defendants' Advertisement did arguably promote a First Amendment concern (it does not), it still would not warrant First Amendment protection because their primary purpose is commercial. *See Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996) (advertisement not entitled to First Amendment protection even though it contained information of significant public interest); *See also White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (advertisement in which parodic "spoof" was entirely subservient to primary message to "buy" product, not protected); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1251 (N.D. Cal. 2014) (Plaintiff's sufficiently alleged that LinkedIn's automatic "reminder emails" were commercial speech). Nothing in the First Amendment prevents Plaintiff here from seeking justice for the harm caused by Defendants' Advertisement.

1

### D.     Plaintiff's State Law Claims Are Not Preempted By The Copyright Act.

The Complaint alleges an injury to Plaintiff arising from the unauthorized use of his recognizable image and likeness as one of the most-recognized celebrities for commercial purposes. The Ninth Circuit has explained that while a photograph itself, "as a pictorial work of authorship," is subject matter protected by the Copyright Act, where the basis of a claim is "not the publication of the photograph itself, as a creative work of authorship," but rather "the *use* of [persons'] likenesses and their names pictured in the published photograph," it is *not* a work of authorship under the Copyright Act. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) (emphasis added). This is because "the name and likeness of a celebrity or other individual," is "not a 'work of authorship' under the Act." *Id.* at 1003–04 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999)). Such a work "does *not* become a work of authorship simply because it is embodied in a copyrightable work such as a photograph." *Id.* (emphasis added).

Courts have held that where it is the use of one's likeness to promote another's business, rather than the publication of photographs themselves, that form the basis of a claim, the facial subject matter of the Complaint is not copyrightable. *See id.*; *O'Brien v. PopSugar Inc.*, 2019 WL 462973, at *1-3 (N.D. Cal. Feb. 6, 2019) (no preemption of right of publicity claim); *Coyle v. O'Rourke*, 2015 WL 58700, at *2, 4–11 (C.D. Cal. Jan. 5, 2015) (no preemption of right of publicity claim arising from defendants' unauthorized use of plaintiffs' images and likeness, embodied in photographs, for commercial purposes); *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013 (2014) (no preemption of right of publicity claim arising from defendants' unauthorized display of models' images on their website to advertise "cosmetic medical services" because "it is [d]efendants' use of the [m]odels' likenesses pictured in the photographs to promote [d]efendants' business that constitutes the alleged misappropriation"); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, (Cal. Ct. App. 2000) (no preemption of claim by copyright owner of erotic photographs against defendant who displayed the images without authorization and for profit on its website because "a human likeness is not copyrightable, even if captured in a copyrighted photograph" and right of publicity claims "against the unauthorized publisher of their photographs are not the equivalent of a copyright infringement claim").[3]

---

[3] *See also Mindlab Media, LLC v. LWRC Int'l, LLC*, 2013 WL 1688309, at *1, 4-5 (C.D. Cal. Apr. 15, 2013) (no preemption of right of publicity claim based on fact that defendant "wrongfully capitalized on [plaintiff's] goodwill and notoriety by misappropriating his image and using it in unauthorized

Defendants rely solely on the inapposite case of *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996). In *Fleet*, the producers of a film did not fully compensate the actors who performed and sold the copyright in the film to a third party. *Id.* at 1915. The actors brought an action pursuant to California Civil Code § 3344 against the third party. Although the actors conceded that the third party owned the copyright, they argued that their images were used without their consent. *Id.* at 1915-16. The Court of Appeal found the plaintiffs' claims were preempted, because they "sought only to prevent CBS from reproducing and distributing ***their performances*** in the film[.]" *Id.* at 1919 (emphasis added). *Fleet* is entirely distinguishable from the case at bar, in which Defendants used a photograph of Plaintiff and coupled it with his famous catchphrase to promote their products and services. Plaintiff is ***not*** seeking to prevent any copyright holder from distributing and reproducing its own copyrighted work. The basis of Plaintiff's right of publicity claims under California law is the contention that Defendants misappropriated Plaintiff's persona for Defendants' own commercial gain. Indeed, the Ninth Circuit in *Downing* specifically distinguished *Fleet* in holding that rights of publicity claims concerning a celebrity's persona are ***not*** preempted. The Ninth Circuit found *Fleet* to be "clearly distinguishable" from cases, such as the instant action, where the plaintiffs' "claim is based on the use of their names and likenesses, which are not copyrightable." *Downing*, 265 F.3d at 1005. Notably, in *Downing,* the defendant actually purchased the photograph depicting the plaintiffs, and thus owned the copyright outright. *Id.* at 1001. This was no bar to the plaintiff's right of publicity claims. *See Schroeder,* 2020 WL 6562242, at *8-9 (distinguishing *Fleet* in finding no preemption).

The distinction between preempted claims, such as those presented in *Fleet,* such as those in *Downing,* 265 F.3d 994, *Midler,* 849 F.2d 460, and *Waits,* 978 F.2d 1093, is well summarized in *No Doubt v. Activision Publ'g, Inc.,* 702 F. Supp. 2d 1139, 1144 (C.D. Cal. 2010). There, the plaintiff musical group alleged that the defendant had made unauthorized use of the personae of the band members by means of realistic computer renderings of the band members in a video game. *Id.* at 1140-1141. In holding that the plaintiff's California statutory and common law misappropriation claims were ***not*** preempted by copyright law, the court observed:

---

advertisements"); *Batra v. PopSugar, Inc.*, 2019 WL 482492, at *1, 4 (N.D. Cal. Feb. 7, 2019); *Del Amo v. Baccash*, 2008 WL 4414514, at *3 (C.D. Cal. Sept. 16, 2008) (to the extent Plaintiff's statutory right of publicity claim "arises from a right of publicity based on the models' likeness, not based on the embodiment of that likeness (i.e., the photographs)," it is not preempted by federal copyright law).

*Laws* and *Fleet* stand for the following proposition: federal law preempts state-law right of publicity claims where the claims are based on the claimant's *copyrightable* activities that are captured in a copyrighted work. *Fleet* involved actors who had performed in a film—that is, a "dramatic work" "fixed in a tangible medium of expression" within the meaning of the Copyright Act. *Laws* involved a singer who had performed in a music recording—that is, a "sound recording" "fixed in a tangible medium of expression" within the meaning of the Copyright Act.

In contrast, where the plaintiff's claims are based on a non-copyrightable personal attribute rather than a copyrightable performance, the Copyright Act does not preempt the claims.

*No Doubt*, 702 F. Supp. 2d at 1144.

Here, the Complaint "does not use the word 'copyright'" at all. *See Coyle*, 2015 WL 58700, at *10. The harm suffered by Plaintiff arises from Defendants' misappropriation of Plaintiff's valuable recognizable likeness and persona for their economic advantage without first obtaining his permission, depriving him of the compensation he commands for marketing products and services and diluting the significant value that Plaintiff has worked hard to develop for his image and likeness. Here, Defendants promoted their products and services by associating Plaintiff's recognizable celebrity image and likeness with their products and services.

Like Plaintiff's California statutory and common law right of publicity claims, Plaintiffs' remaining UCL claim arises from Defendants' use of Plaintiff's image and likeness without permission to promote Defendants' products and services. That claim is derivative of the right of publicity claims and it likewise falls outside of copyright preemption. "The Section 17200 claim—and its incorporated allegations—do not clearly show that "unfair business practices" is subtext for "violations of the Copyright Act's exclusive rights. Accordingly, the Section 17200 claim is not preempted." *Wimer v. Reach Out Worldwide, Inc.*, 2017 WL 5635461, at *5 (C.D. Cal. July 13, 2017); *see also O'Brien v. PopSugar Inc.*, 2019 WL 462973, at *4 (N.D. Cal. Feb. 6, 2019) ("to the extent Plaintiffs' UCL claim relies upon Plaintiffs' non-preempted state law claims, the UCL claim is also not preempted."); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) (same). *See also Schroeder*, 2020 WL 6562242, at *8 (no preemption where UCL claim derivative of Lanham Act claim).

It is the unauthorized use of Plaintiff's recognizable likeness for commercial purposes to attract consumers and users, given Plaintiff's celebrity persona, to promote Defendants' products and services, that is the crux of the Complaint. Plaintiff's state law claims are not preempted.

**VI.** **Should The Court Find It Necessary, The Court Should Grant Plaintiff Leave To Amend The Complaint.**

If the Court were to determine that Plaintiff's California causes of action do not survive Defendants' facial attack, "federal procedure mandates that a plaintiff who loses an anti-SLAPP motion must have the opportunity to amend the complaint." *Todd*, at *8 (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment").

**VII.** **Conclusion.**

For the reasons stated above, Defendants' anti-SLAPP motion should be denied in its entirety. To the extent the Court is inclined to grant any aspect of the motion, Plaintiff respectfully requests leave to amend.

**EVIDENTIARY OBJECTIONS**

Defendants' motion not only lacks merit, but references objectionable materials as well. Defendants improperly relies on extrinsic third-party websites that are inappropriate for judicial notice. Plaintiff objects to Defendants' Request for Judicial Notice (Dkt. No. 13) (the "RJN"), and particularly Fact Numbers 6 through 15 thereto (consisting of online websites/articles). Courts generally deny taking judicial notice of private third-party websites except in very limited circumstances not applicable here, such as securities cases to show "that particular information was available to the stock market." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1028 (C.D. Cal. 2015). The content of these websites is disputed and they do not contain statements "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1014 (9th Cir. 2018). Defendants attempt to use the content of these disputed websites submitted to prove elements of their defenses and burden on this motion. That is not permitted. *See Giron v. Hong Kong*, 2017 WL 5495504, at *7 (C.D. Cal. Nov. 15, 2017). Plaintiff further objects to Fact Number 1 to Defendants RJN, which seeks judicial notice of the contents of a DVD video, which is not a fact whose accuracy cannot reasonably be questioned. *Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1212 n. 4 (C.D. Cal. 2020);

*Allen v. Cty. of Lake*, 2014 WL 4979348, at *3 (N.D. Cal. Oct. 6, 2014); Fed. R. Evid. 201(b).  Plaintiff further objects to the entirety of paragraph 5 the Corrected Declaration of Joseph Burgess (Dkt. No. 20), which purports to describe the existence, contents, and legal effect of a putative licensing contract. Paragraph 5 plainly violates the best evidence rule.  Fed. R. Evid. 1002.


DATED: May 6, 2021                    By: /s/M. Taitelman
                                          Michael A. Taitelman
                                          Sean M. Hardy
                                          FREEDMAN + TAITELMAN, LLP
                                          1801 Century Park West, Fifth Floor
                                          Los Angeles, CA 90067
                                          Tel: (310) 201-0005
                                          Fax: (310) 201-0045
                                          mtaitelman@ftllp.com
                                          smhardy@ftllp.com
                                          Attorneys for Plaintiff O'Shea Jackson, Sr.
                                          (p/k/a "Ice Cube")

OPPOSITION TO MOTION TO STRIKE