FREEDMAN+TAITELMAN, LLP
Michael A. Taitelman, Esq. (SBN 156254)
mtaitelman@ftllp.com
Sean M. Hardy, Esq. (SBN 266446)
smhardy@ftllp.com
1801 Century Park West, Fifth Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Plaintiff O'SHEA JACKSON, SR. (p/k/a "ICE CUBE")

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual, <br><br> Plaintiff, <br><br> v. <br><br> ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 3:21-cv-02304-LB <br><br> **OPPOSITION TO MOTION TO DISMISS** <br><br> Date:    June 3, 2021 <br> Time:    9:30 a.m. <br> Dept:    Courtroom B, 15th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     FACTUAL ALLEGATIONS. ................................................................................ 1

III.    ARGUMENT. ......................................................................................................... 3

  A.   Legal Standard. .................................................................................................. 3

  B.   Plaintiff Has Standing To Bring His Claims....................................................... 4

  C.   The Advertisement is Commercial Speech and Not Protected By The First Amendment. ............. 7

  D.   The Advertisement Does Not Comment on Plaintiff, and Therefore Is Not a Parody Under The Law. ................................................................................................ 11

  E.   *Rogers* Does Not Apply, Because Defendants Did Not Use Plaintiff's Image and Likeness Within an "Artistic or Expressive Work" as the *Rogers* Cases Define It, But in a Commercial Setting For Their Own Products and Services. ...................................................... 14

  F.   Plaintiff's Claims are Not Preempted by the Copyright Act. ........................... 16

    1.   Plaintiff's Lanham Act Claim is Not Preempted because "*Dastar* Preemption" Applies Only to Reverse Passing Off Cases. ........................................................... 16

    2.   Passing Off Violates the Lanham Act Even if it Also Violates the Copyright Act................ 18

    3.   Plaintiff's State Law Claims are Not Preempted by the Copyright Act. ................. 19

  G.   Section 230 of the Communications Decency Act has No Application Here. ............. 22

  H.   Plaintiff's Catchphrase is Not Generic and is an Indelible Part of his Persona. ............ 24

IV.    CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aagard v. Palomar Builders, Inc.*,
  344 F.Supp.2d 1211 (E.D.Cal. 2004)...........................................................................18

*Abdul-Jabbar v. General Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) .............................................................................7, 11, 25

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*,
  748 F. App'x 115 (9th Cir. 2018)..................................................................................5

*Anthony v. Yahoo! Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) .......................................................................23

*Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*,
  467 F. Supp. 2d 394 (S.D.N.Y. 2006) .........................................................................17

*Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*,
  2016 WL 7165728 (C.D. Cal. June 30, 2016) .............................................................17

*Bacardi & Co. Ltd. v. New York Lighter Co., Inc.*,
  No. 97-cv-7140, 2000 WL 298915 (E.D.N.Y. Mar. 15, 2000)....................................13

*Bach v. Forever Living Prods. U.S., Inc.*,
  473 F. Supp. 2d 1110 (W.D. Wash. 2007)...................................................................18

*Batra v. PopSugar, Inc.*,
  2019 WL 482492 (N.D. Cal. Feb. 7, 2019) .................................................................20

*Beastie Boys v. Monster Energy Co.*,
  66 F. Supp. 3d 424 (S.D.N.Y. 2014)............................................................................19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................3

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983)......................................................................................................8, 9

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ...............................................................................14, 15

*Brown v. Entertainment Merchants Ass'n*,
  564 U.S. 786 (2011)......................................................................................................15

*Callahan v. Ancestry.com Inc.*,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021).................................................................24

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)...................................................................................11, 12, 13

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ..................................................................24

*Carson v. Here's Johnny Portable Toilets, Inc.*,
   698 F.2d 831 (6th Cir. 1983) ....................................................................25

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980)..................................................................................11

*Chaquico v. Freiberg*,
   2017 WL 4805578 (N.D. Cal. Oct. 24, 2017).........................................16

*Chaquico v. Freiberg*,
   274 F. Supp. 3d 942 (N.D. Cal. 2017) ....................................................15

*Charles v. City of L.A.*,
   697 F.3d 1146 (9th Cir. 2012) ....................................................................9

*Checkmate Strategic Group v. Yahoo!, Inc.*,
   2005 U.S. Dist. LEXIS 46960 (C.D. Cal. Oct. 14, 2005)........................22

*City of Dallas v. Stanglin*,
   490 U.S. 19 (1989)...................................................................................16

*Clark v. Am. Online Inc.*,
   2000 WL 33535712 (C.D. Cal. Nov. 30, 2000)........................................4

*Coyle v. O'Rourke*,
   2015 WL 58700 (C.D. Cal. Jan. 5, 2015) ..........................................19, 21

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013) ....................................................18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003).......................................................................16, 17, 18, 19

*Del Amo v. Baccash*,
   2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) .......................................20

*Dietemann v. Time, Inc.*,
   449 F.2d 245 (9th Cir. 1971) ......................................................................7

*Dita, Inc. v. Mendez*,
   2010 WL 5140855 (C.D. Cal. Dec. 14, 2010) ........................................16

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) .......................................................... *passim*

*Dr. Seuss Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ...................................................................12, 15, 18

*Eastwood v. Nat'l Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ...................................................................................6

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) .........................................................24

*Elec. Arts, Inc. v. Textron Inc.*,
    2012 WL 3042668 (N.D. Cal. July 25, 2012) .......................................................16

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..........................................................................22, 23

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) .................................................................................24

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................6, 7, 23, 24

*Git-R-Done Prods., Inc. v. Giterdone C Store, LLC*,
    226 F. Supp. 3d 684 (S.D. Miss. 2016) ...............................................................25

*Gordon v. Drape Creative, Inc.*,
    897 F. 3d. 1184 (9th Cir. 2018) ..............................................................................15

*Grant v. Esquire, Inc.*,
    367 F. Supp. 876 (S.D.N.Y. 1973) ..........................................................................6

*Henley v. Devore*,
    2009 WL 10697982 (C.D. Cal. 2009) ..............................................................18, 19

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ...................................................................................11

*Homeland Housewares, LLC v. Sharkninja Operating LLC*,
    2016 WL 4154676 (C.D. Cal. Aug. 2, 2016) ..........................................................5

*Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*,
    2018 WL 4962086 (C.D. Cal. Jan. 26, 2018) .........................................................6

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*,
    418 F. Supp. 2d 1142 (D. Ariz. 2005) ...................................................................23

*Jewel v. Nat'l Sec. Agency*,
    673 F.3d 902 (9th Cir. 2011) ...............................................................................4, 5

*Johnson v. Riverside Healthcare Sys.*,
    534 F.3d 1116 (9th Cir. 2008) ...................................................................................3

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) ...................................................................................6, 9

*LegalForce RAPC Worldwide P.C. v. Glotrade*,
   2019 WL 6036618 (N.D. Cal. Nov. 14, 2019) ...........................................................5, 6

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .........................................................................................................5

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
   507 F.3d 252 (4th Cir. 2007) ...................................................................................13, 14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .........................................................................................................4

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ...................................................................................12, 14

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .........................................................................................4

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ...................................................................................7, 8, 21

*Mindlab Media, LLC v. LWRC Int'l, LLC*,
   2013 WL 1688309 (C.D. Cal. Apr. 15, 2013) ...............................................................20

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010) .........................................................................................3

*Monk v. N. Coast Brewing Co. Inc.*,
   2018 WL 646679 (N.D. Cal. Jan. 31, 2018) ..................................................................25

*Nintendo of Am. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) .........................................................................................18

*No Doubt v. Activision Publ'g, Inc.*,
   702 F. Supp. 2d 1139 (C.D. Cal. 2010) ........................................................................21

*O'Brien v. PopSugar Inc.*,
   2019 WL 462973 (N.D. Cal. Feb. 6, 2019) .............................................................19, 22

*OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*,
   897 F.3d 1008 (9th Cir. 2018) .......................................................................................17

*Pellegrino v. Epic Games, Inc.*,
   451 F. Supp. 3d 373 (E.D. Pa. 2020) .............................................................................19

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*,
   274 F. Supp. 2d 319 (E.D.N.Y. 2003) .............................................................................6

*Perkins v. Linkedin Corp.,*
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ...................................................................11, 24

*Rogers v. Grimaldi,*
    875 F.2d 994 (2nd Cir. 1989).................................................................14, 15, 16

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ........................................................................4

*San Diego Cty. Guns Rights Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ...........................................................................4

*Savage v. Glendale High Union Sch. Dist. No. 205,*
    343 F.3d 1036 (9th Cir. 2003) ........................................................................4

*Schieffelin & Co. v. Jack Co. of Boca,*
    850 F. Supp. 232 (S.D.N.Y. 1994)....................................................................13

*Schroeder v. Volvo Grp. N. Am., LLC,*
    2020 WL 6562242 (C.D. Cal. Sept. 3, 2020) ....................................................19, 21, 22

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    2007 WL 1455903 (N.D. Cal. May 16, 2007)...........................................................22

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ........................................................................3

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
    240 F.3d 832 (9th Cir. 2001) .........................................................................24

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd,*
    2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) ........................................................5

*Waits v. Frito–Lay, Inc.,*
    978 F.2d 1093 (9th Cir.1992) ...................................................................4, 5, 7, 21

*White v. Samsung Elec.,*
    971 F.2d 1395 (9th Cir.1992) ...................................................................4, 7, 11, 25

*Wimer v. Reach Out Worldwide, Inc.,*
    2017 WL 5635461 (C.D. Cal. July 13, 2017)..........................................................22

*Yeager v. Cingular Wireless LLC,*
    673 F. Supp. 2d 1089 (E.D. Cal. 2009)...............................................................9, 10

*Zacchini v. Scripps-Howard Broadcasting Co.,*
    433 U.S. 562 (1977)..................................................................................7, 8

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) .........................................................................3

OPPOSITION TO MOTION TO DISMISS

**California Cases**

*Comedy III Prods., Inc. v. Gary Saderup. Inc.*,
    25 Cal. 4th 387:............................................................................................11

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ............................................................20, 21

*Gill v. Curtis Publ'g Co.*,
    38 Cal. 2d 273 (1952) ............................................................................8

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ............................................................................7

*KNB Enters. v. Matthews*,
    78 Cal. App. 4th 362 (2000) ....................................................................20

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ............................................................................6

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal.App.4th 544 (2013) ......................................................................6

*Timed Out, LLC v. Youabian, Inc.*,
    229 Cal. App. 4th 1001 (2014) ..................................................................20

**Other State Cases**

*Doe v. McFarlane*,
    207 S.W.3d 52 (Mo. Ct. App. 2006) ............................................................6

**Federal Statutes**

Communications Decency Act ........................................................22, 23, 24

Copyright Act................................................................................16, 18, 19

Lanham Act.................................................................................... *passim*

**California Statutes**

California Civil Code § 3344 ........................................................................20

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..................................................................................3

Fed. R. Civ. P. 15(a) ....................................................................................4

Fed. R. Civ. P. 12(b)(1)................................................................................4

Fed. R. Civ. P. 12(b)(6)............................................................................1, 3

OPPOSITION TO MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION.**

The Court should deny the Motion to Dismiss ("Motion") of Defendants Robinhood Markets, Inc. ("Robinhood") and Robinhood Financial, LLC (collectively, the "Defendants").   In the operative Complaint, Plaintiff O'Shea Jackson, Sr., professionally known as Ice Cube ("Ice Cube" or "Plaintiff") establishes that Defendants misappropriated his valuable image and likeness in order create the false impression that he endorses Defendants' products and services.  Defendants did this by using Plaintiff's image, combined with his famous catchphrase, to attract consumers. Defendants now seek to evade responsibility for their misconduct by filing a blunderbuss motion that misses the mark, and raises questions that are suited for summary judgment or trial, not a motion testing the sufficiency of the pleadings. Such a motion is premature where, as here, there has been no discovery; the discovery of Defendants' marketing plan and the full extent of its marketing materials is crucial to the analysis of Defendants' defenses, for instance. Defendants' Motion exceeds the bounds of Rule 12(b)(6), which is meant to address the sufficiency of the pleading itself.

Plaintiff's Complaint is legally sufficient as to each challenged cause of action.  Defendants' own legal citations (when they are not irrelevant to the claim for which they are cited) support a finding that Plaintiff has established all of the required elements for each cause of action. Defendants' use of Plaintiff's image and likeness is pure commercialization, executed without the consent of Plaintiff. Plaintiff's right to publicity outweighs Defendants' desire to commercially exploit his name and likeness, and Defendants' efforts to hide behind the Constitution are in vain. Plaintiff asks the Court to deny Defendants' Motion in its entirety.

**II.   FACTUAL ALLEGATIONS.**

Plaintiff is a world-renowned artist.  *See* Complaint, Dkt. No. 1 ("Compl."), ¶ 17.  Plaintiff first achieved recognition and commercial success as one of the founding members of the pioneering rap group N.W.A. in 1987.  Compl., ¶ 17.  In 1990, Plaintiff embarked on a successful solo recording career. Compl., ¶ 17.  Among Plaintiff many chart-topping albums, his 1992 album *The Predator* featured his certified-platinum single "Check Yo Self."  Compl., ¶ 17.  "Check Yo Self" has become one of Plaintiff's signature recordings and is an indelible part of his image and likeness.  Compl., ¶ 18.  Indeed, the lyric and phrase "Check Yo Self" has become nothing less than Plaintiff's catchphrase.  Compl., ¶ 18.  If

Plaintiff uses his signature catchphrase, "Check Yo Self," the public has come to understand that he "means business" and is serious.  Compl., ¶ 18.

   In addition to his successful music career, Plaintiff has also regularly worked as an actor in motion pictures, beginning with 1991's highly regarded *Boyz n the Hood.*  Compl., ¶ 19.  Plaintiff has also leveraged his image and likeness in successful entrepreneurial endeavors.  Compl., ¶ 20.  In 2017, Plaintiff co-founded Big3, a 3-on-3 basketball league that went on to achieve great success.  Compl., ¶ 20. Most importantly, Plaintiff has devoted his life to the cause of social justice and civil rights, standing up for the disenfranchised in American society. Compl., ¶ 21. In 2020, Plaintiff's social activism culminated in the publishing of A Contract with Black America, a covenant to right the centuries of wrongs that had been inflicted on Black Americans.  Compl., ¶ 21. Plaintiff's image and likeness are famous and valuable.  Compl., ¶¶ 22-23.  Plaintiff's stage name "Ice Cube" is a federally registered trademark, further underscoring the fame and value attributable to Plaintiff's persona.  Compl., ¶ 24. Plaintiff's business partner, Jeff Kwatinetz, is a civil rights attorney who has recently filed a class action lawsuit against Robinhood, and voiced his disapproval of Robinhood on several media outlets.  Compl., ¶ 25.   It is public knowledge that Mr. Kwatinetz is associated with Plaintiff, as they partnered in developing the highly successful Big3 basketball league.  Compl., ¶ 25.

   On March 8, 2021, Defendants impermissibly used Plaintiff's image and likeness in connection with an advertisement (the "Advertisement") for Robinhood's financial services and products on the "Robinhood Snacks" website and app.  Compl., ¶ 26; Dkt. No. 1-1.  The Advertisement uses Plaintiff's image and likeness, including his signature catch phrase, in order to create the false impression that Plaintiff actually endorses Robinhood, its products, and its services.  Compl., ¶ 26; Dkt. No. 1-1. The Advertisement creates the false impression that Plaintiff supports and endorses Robinhood's products and services.  Compl., ¶ 27.  This is especially true as the Advertisement (mis)quotes the most well-known lyric and catchphrase from Plaintiff's hit single, "Check Yo Self." Compl., ¶ 27. In truth, Plaintiff absolutely does not, and never would, support Robinhood's products and services.  Compl., ¶ 27.

   **The fact that the Advertisement suggests that Plaintiff endorses Robinhood and its services and products is supported by the fact the Robinhood has a demonstrable pattern and practice of using established celebrities, such as Nas and Jay-Z, to endorse its products and services**. Compl., ¶ 28.  **Robinhood brazenly relied on its well-publicized association with such prominent rappers when it unlawfully used Plaintiff's image and likeness to create the false impression that Plaintiff**

**supports and endorses Robinhood's products and services**. Compl., ¶ 28.   Moreover, Robinhood specifically sought to make an example out of Plaintiff due to the fact that his business partner, Jeff Kwatinetz, had sued Robinhood and publicly held the company to account.   Compl., ¶ 29. Although Plaintiff had no involvement in that lawsuit, Robinhood's resulting actions speak volumes about its petty, vindictive, and malicious nature as a company. Compl., ¶ 29.

At no time prior has Plaintiff authorized Defendants to use his image or likeness for commercial purposes of any sort, let alone the Advertisement.  Compl., ¶ 30.  On March 10, 2021, Plaintiff notified Defendants in writing that the use of his image and likeness in the Advertisement was not authorized. Compl., ¶ 21.   Plaintiff demanded that Defendants immediately cease and desist from any further unauthorized uses of his image and likeness.  Compl., ¶ 31.  Despite this notice, Defendants have continued to exploit Plaintiff's image and likeness without permission from Ice Cube and without compensating Plaintiff, causing significant damage to Ice Cube and adversely affecting the value of Ice Cube's image and likeness. Compl., ¶ 32.

## III.   ARGUMENT.

### A.   Legal Standard.

The Federal Rules set forth a liberal pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need only give the defendant fair notice of what the claim is, and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Defendants' motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed "unless the plaintiffs' complaint fails to state a claim to relief that is plausible on its face." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (quotations omitted). The issue is not whether the non-moving party will ultimately prevail but whether plaintiffs are entitled to offer evidence to support the claims asserted. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1100 (9th Cir. 2010). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in light most favorable to the non-moving party. *See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008). When a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

When a party challenges subject matter jurisdiction through a facial attack on a complaint per

3

Rule 12(b)(1), the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. *Id.* Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint be "freely given when justice so requires."

### B.    Plaintiff Has Standing To Bring His Claims.

Plaintiff's Complaint pleads facts sufficient to show that Article III and statutory standing exists for Plaintiff to bring his claims. Article III standing requires a current case or controversy, meaning an injury in fact traceable to a defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (quotation marks and internal alterations omitted). The Ninth Circuit has clearly held that "a celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false endorsement under section 43(a) of the Lanham Act." *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1110 (9th Cir.1992).

Economic injury is "clearly a sufficient basis for standing." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[Economic injury] is a quintessential injury-in-fact."); *San Diego Cty. Guns Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996). "[T]he standard for measuring lost profits in a right of publicity case is the fair market value of the right to use plaintiff's name or likeness in the manner in which it was used by defendant." *Clark v. Am. Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000); *see also Waits,* 978 F.2d at 1111 (celebrity awarded the fair market value of his services on a voice misappropriation claim) and *White v. Samsung Elec.,* 971 F.2d 1395, 1399 (9th Cir.1992) ("the law protects the celebrity's sole right to exploit th[e] value" of her fame).

In their 12(b)(1) motion to dismiss, Defendants conflate Article III and statutory standing and employ the wrong procedural mechanism as a result. "Statutory standing, unlike constitutional standing, is not jurisdictional." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) (internal quotation

marks and citation omitted).  "The question whether a plaintiff states a claim for relief typically relates to the merits of a case, not to the dispute's justiciability, and conflation of the two concepts often causes confusion." *Id.*

Under section 43(a) of the Lanham Act, there are "two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  The decision in *Lexmark* concerned **only** a false advertising claim.  *See Id.*, 572 U.S. at 125 ("We granted certiorari to decide the appropriate analytical framework for determining a party's standing to maintain an action for **false advertising** under the Lanham Act.") (emphasis added) (internal quotation omitted).  "False association claims under section 1125(a)(1)(A) do **not** require an allegation of an injury to a commercial interest in reputation or sales." *Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, 2020 WL 7380148, at *13 (C.D. Cal. Sept. 22, 2020) (emphasis added); *see also AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 n.2 (9th Cir. 2018) (applying the standing requirement from *Lexmark* to plaintiff's claims under 1125(a)(1)(B) but **not** those under 1125(a)(1)(A)).  The Ninth Circuit has held that "[a] false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim" under the Lanham Act, 15 U.S.C. 1125(a), where the mark at issue is the celebrity's persona, the use of "which is likely to confuse consumers as to the [celebrity's] sponsorship or approval of the product." *Waits*, 978 F.2d at 1110.

Even if *Lexmark* did apply to false association claims – it does not – Plaintiff has sufficiently alleged standing in any event.  Under *Lexmark*, "allegations of lost sales and damage to ... business reputation" are sufficient to "give [a plaintiff] standing under Article III to press [a] false-advertising claim." *Lexmark*, 572 U.S. at 125.  The decision in *Homeland Housewares, LLC v. Sharkninja Operating LLC*, 2016 WL 4154676 (C.D. Cal. Aug. 2, 2016) is instructive.  In *Homeland Housewares*, the plaintiff alleged the defendant's false advertising damaged "the reputation of Homeland products in the mind of consumers and retail buyers." *Id.* at *2.  Even though the plaintiff did not manufacture the allegedly shoddy product, it alleged it suffered "reputational injury because of its association with the product." *Id.*  The district court held that the allegations that the defendant's false advertising damaged the reputation of a plaintiff's products in the mind of consumers and retail buyers were sufficient to allege an injury in fact. *Id.* at *2-3.  This holding was followed by Judge Koh in this district, noting that "admittedly general" allegations were sufficient to "allege damage to business reputation caused by Defendant's alleged false advertising." *LegalForce RAPC Worldwide P.C. v. Glotrade*, 2019 WL 6036618, at *5

(N.D. Cal. Nov. 14, 2019).   In *LegalForce,* allegations that the defendant's actions "confused" the plaintiff's customers and thus led them to believe the plaintiff's "services . . . were somehow deficient" were sufficient to allege reputational injury.  *Id.*

Persons that are "highly sought after as a celebrity endorser[s]," can and must "guard[] the use of [their] identity very closely. . . ." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 513 (7th Cir. 2014). A multitude of laws exist to compensate for loss of celebrity goodwill and future publicity value. *See Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997). Indeed, it should be undisputed that celebrity endorsement value diminishes with use. *See Grant v. Esquire, Inc.*, 367 F. Supp. 876, 881 (S.D.N.Y. 1973); *Doe v. McFarlane*, 207 S.W.3d 52, 64-66 (Mo. Ct. App. 2006) (negative or over association with certain brands tarnishes celebrities' endorsement value); *cf. Perkins Sch. for the Blind v. Maxi-Aids, Inc.,* 274 F. Supp. 2d 319, 324 (E.D.N.Y. 2003) (absence of quality control procedures creates consumer confusion). Here, Plaintiff has alleged that Defendants have misappropriated the business and goodwill value of Plaintiff's celebrity persona and, as a result of Defendants' actions, he has "suffered and will continue to suffer substantial monetary damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation[.]"  Compl., ¶¶ 40-41. This is sufficient to establish standing for a right of publicity claim.  *Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*, 2018 WL 4962086, at *6 (C.D. Cal. Jan. 26, 2018) (denying motion to dismiss for lack of standing).

Plaintiff's UCL claim specifically pleads that he has lost money or property as a result of Defendants' wrongful acts.  Compl., ¶ 58.  This is sufficient to establish standing. *Hush Hush Sound,* 2018 WL 4962086, at *6.  The loss of "money or property" requirement under the UCL encompasses a broad expanse as to the sort of economic injury that suffices for standing and "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). *See Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal.App.4th 544, 560-61 (2013) (one "identifiable trifle of injury as necessary for standing under the UCL" is a decrease in business value).

Plaintiff has pleaded that Defendants' unfair, unlawful and fraudulent practices have deprived him of compensation he is due.  Courts in this district have held a party has standing to bring a claim under the UCL where the defendant profited from the misappropriation of the plaintiff's valuable image and likeness.  *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 812 (N.D. Cal. 2011) (UCL standing

due to defendant's "failure to compensate [plaintiffs] for their valuable endorsement of third-party products and services to their Facebook Friends"). Plaintiff has a vested interest, as a valuable celebrity, in the monies that should have been paid to him for the use of his image and likeness to endorse Defendants. "To the extent Plaintiffs allege they have a right to be paid for their endorsements . . . the Court finds that they have alleged a loss of money or property sufficient to state a claim under the UCL." *Id*.

The Complaint is clear that the Advertisement's use of Plaintiff's image and likeness, in the form of his photograph and signature catchphrase, is likely to deceive and confuse the public into believing that Plaintiff is associated with or otherwise endorses Defendants' "terrible" products and services. Compl., ¶¶ 3, 17-44. Plaintiff specifically alleges that his signature catchphrase has become an indelible part of his public persona, and that the public has come to understand that if Plaintiff uses his signature catchphrase, he "means business" and is serious. Compl., ¶ 18. Defendants' combined use of Plaintiff's image and famous catchphrase in the Advertisement thus creates the misleading impression that he endorses Defendants' products and services, when he does not. The claimed economic harm cited in the Complaint is sufficient to provide Plaintiff with standing.

**C.   The Advertisement is Commercial Speech and Not Protected By The First Amendment.**

"The First Amendment is not a license to trespass, to steal, or to intrude . . ." *Dietemann v. Time, Inc*., 449 F.2d 245, 249 (9th Cir. 1971). Defendants incorrectly claim that the Advertisement is protected by the First Amendment. In fact, the Advertisement is "commercial speech," which is rarely, if ever, protected by the First Amendment. *See Kasky v. Nike, Inc*., 27 Cal. 4th 939, 952 (2002) ("The federal Constitution accords less protection to commercial speech.").

The media's rights must take into account a plaintiff's competing interest in protecting his/her identity from unauthorized use. This was expressly recognized by the Supreme Court in *Zacchini v. Scripps-Howard Broadcasting Co*., 433 U.S. 562 (1977) (First Amendment did not provide defense to plaintiff's right of publicity claim). The Ninth Circuit has also repeatedly recognized the right of publicity and the right of celebrities to control the use of their identities. See*, e.g. Midler v. Ford Motor Co*., 849 F.2d 460 (9th Cir. 1988); *White v. Samsung Electronics*, 971 F.2d 1395 (9th Cir. 1992); *Waits v. Frito-Lay, Inc*., 978 F.2d 1093 (9th Cir. 1992); *Abdul-Jabbar v. General Motors Corp*., 85 F.3d 407, 410 (9th Cir. 1996). When a defendant takes for itself a person's property- the right to control the use to which

his identity is put - to exploit or attract attention to itself, the First Amendment justifications disappear, and the right to publicity will prevail.  As noted by the Ninth Circuit, if the purpose of the use of a person's identity is to exploit that individual, there will be no First Amendment immunity.  *Midler,* 849 F.2d at 462.

The only United States Supreme Court case to rule on the interaction of the First Amendment and the right of publicity is *Zacchini* where the High Court held that even a clearly newsworthy report using a plaintiff's name and likeness in a television newscast may violate his right of publicity without implicating the First Amendment. In *Zacchini* the issue was whether a local television station's newscast showing plaintiff's "human cannonball" act violated his right of publicity. The Supreme Court held that the station's interest in free speech did not permit it to broadcast the plaintiff's performance. *Zacchini*, 433 U.S. at 575. The television station's broadcast was completely truthful and it even praised the plaintiff's performance and urged the public to go see it. Yet, its violation of the plaintiff's right to publicity was not immunized by the First Amendment. The Court noted, "The rationale for [protecting the right of publicity] is the straight-forward one of ***preventing unjust enrichment by the theft of good will.*** No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." *Zacchini,* 43 U.S. 562, 576 (US 1977) (citations omitted, emphasis added).

Protection for noncommercial publication of matters in the public interest is associated with "freedom of the press." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). However, this defense "is not absolute." *Id.*  Instead, a "proper accommodation" must be found between freedom of speech and the right of publicity. *Id.* The California Supreme Court has established a balancing test which weighs any public interest in the speech against the economic and privacy interests at stake. "Factors deserving consideration may include the medium of publication, the extent of the use, the public interest served by the publication, and the seriousness of the interference with the person's privacy." *Gill v. Curtis Publ'g Co*., 38 Cal. 2d 273, 278-79 (1952).  As discussed below, any tenuous relationship Defendants' Advertisement may have to the public interest is secondary to Defendants' true motivation, which is advertising, and Defendants' marketing has seriously interfered with Plaintiff's rights.

While there is no bright-line test for whether speech is "commercial," certain relevant factors include: (1) is the speech an advertisement; (2) does it refer to a specific product or service; and (3) is the speech economically motivated. *See Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66-67 (1983).

An affirmative answer to all three questions – as here – provides "strong support" for the conclusion that the speech is commercial. *Id.*[1] In *Bolger v. Youngs Drug Products*, the Supreme Court ruled on whether certain mass-mailed pamphlets were commercial speech. These pamphlets almost exclusively discussed sexually transmitted diseases, which are matters of public interest. But, based upon the totality of the pamphlet's characteristics, namely that they were mailed with an economic motive, they were conceded to be advertisements, and they referred to the defendant's product, the Court held that they were commercial speech. 463 U.S. at 66-67. The facts of this case are similar to those the Court found dispositive in *Bolger*. *See also Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518 (7th Cir. 2014) ("An advertisement is no less 'commercial' because it promotes brand awareness . . . rather than explicitly proposing a transaction").

The authorities cited by Defendants bolster Plaintiff's argument that the Advertisement is commercial speech. In *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1093 (E.D. Cal. 2009), famous aviator Chuck Yeager brought an action against Cingular Wireless for use of his name in a publication entitled, "Cingular Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season" (the "Cingular Publication"). The Cingular Publication contained information about Cingular's preparedness for disasters through its emergency preparedness equipment and it also referenced Yeager and his achievement in relation to Cingular's equipment. The Cingular Publication did not include a picture of Yeager, nor did it propose a commercial transaction or offer for sale any specific product or services. Yeager filed suit for violation of California's common law and statutory right of publicity, and violations of the UCL, claiming Cingular violated his right to control the use of his name and identity because Cingular made unauthorized use of Plaintiff's name to promote Defendants' products and services. The *Yeager* court held that the Cingular Publication was commercial speech not entitled to First Amendment protection. The Court held that, notwithstanding the fact that the Cingular Publication did not propose a commercial transaction or offer for sale any specific product or service, the sole purpose of the Cingular Publication was to promote Cingular's products. The use of Yeager's name and identity, then, was only used to attract attention to Cingular's unrelated services and

---

[1] *See also Charles v. City of L.A.*, 697 F.3d 1146, 1151 (9th Cir. 2012) ("[T]he boundary between commercial and noncommercial speech has yet to be clearly delineated.").

products.  *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d at 1098-99.  The *Yeager* court held:

> In this case, the context of the communication and the nature of the information conveyed demonstrate that plaintiff Yeager's name and accomplishments were used to ***attract attention to defendant's unrelated wireless services***.  While emergency preparedness and the availability of wireless services following a natural disaster are matters or public interest and concern, as set forth above, the Publication in this case was not purely informational in nature; rather, it is properly characterized as commercial speech because, *inter alia*, it aimed to positively market defendant's services by linking them to that public concern.  Further, plaintiff's name and accomplishments in breaking the sound barrier are ***wholly unrelated*** to defendant's mobile command centers and cellular service in emergency situations.
> *Yeager*, 673 F. Supp. 2d at 1099 (emphasis added).

In *Downing,* clothing manufacturer Abercrombie & Fitch used a photograph of plaintiffs competing in a surfing competition.  *Downing,* 265 F.3d at 1000.  The photograph was placed in a clothing catalog that also included news and editorial pieces about the surfing culture.  *Id.*  While the surfing theme of the catalog was conceded to be a matter of public interest, the *Downing* court found that the photograph's use did not contribute significantly to the editorial pieces about surfing culture.  *Id.* at 1002 ("The catalog did not explain that [the plaintiffs] were legends of the sport and did not in any way connect [the plaintiffs] with the story preceding it.").  Rather, the court reasoned that the defendant used the plaintiffs' photograph "essentially as window-dressing to advance the catalog's surf-theme." *Id.* Therefore, because the plaintiffs' likeness was used primarily to attract consumers to the unrelated product for sale in the sales catalog, such use was not protected by the First Amendment defense. *Id.*

Here, just as in *Downing* and *Yeager,* the content of the Advertisement has nothing to do with Plaintiff: it does not report on news about Plaintiff, and the content of the Advertisement does not relate to or comment on Plaintiff and his endeavors.  The Advertisement does not in any way connect Plaintiff's persona – his image and famous catchphrase – to the content of the Advertisement.  They are "wholly unrelated." *Yeager*, 673 F. Supp. 2d at 1099.  Defendants do not dispute that, beyond the unauthorized use of Plaintiff's persona, the Advertisement does not concern Plaintiff in any way.   It does not report on news concerning Plaintiff and his activities.  It does not offer any criticism or opinion of Plaintiff. The sole justification for Defendants' use of Plaintiff's image and catchphrase is to generate interest in Plaintiff's wholly unrelated Advertisement, which is not only one of the products and services offered by Defendants, but which also prominently features links to other parts of Robinhood's financial services website.   Indeed, when accessing the Advertisement online, the website's main navigation menu

prominently features an offer for the user to "**Sign Up**" for the Robinhood stock trading app – a clear and omnipresent solicitation for Defendants' goods and services.

Defendants have no defense to Plaintiff's state law claims.  Tellingly, Defendants completely fail to acknowledge that the applicability of the First Amendment under California law is "based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation." *Comedy III Prods., Inc. v. Gary Saderup. Inc.*, 25 Cal. 4th 387, 391(200): *see also id.* at 405 ("When artistic expression takes the form of a literal depiction or imitation of a celebrity for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist.").  Here, Defendants admit there is no transformative use. They use a literal depiction of Plaintiff and his famous catchphrase.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010) (no transformative use where company used photograph of celebrity accompanied by her famous catchphrase).

Any self-serving advertiser could argue, as Defendants do, that its product promotes First Amendment concerns. *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562 n.5 (1980) (noting that "many, if not most, products may be tied to public concerns," and declining to "grant broad constitutional protection to . . . advertising" on that basis). Even if Defendants' Advertisement did arguably promote a First Amendment concern (it does not), it still would not warrant First Amendment protection because their primary purpose is commercial. *See Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996) (advertisement not entitled to First Amendment protection even though it contained information of significant public interest); *See also White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (advertisement in which "spoof" was entirely subservient to primary message to "buy" product, not protected); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1251 (N.D. Cal. 2014) (plaintiffs sufficiently alleged that LinkedIn's automatic "reminder emails" were commercial speech). Nothing in the First Amendment prevents Plaintiff here from seeking justice for the harm caused by Defendants' Advertisement.

### D.   The Advertisement Does Not Comment on Plaintiff, and Therefore Is Not a Parody Under The Law.

First, the Advertisement is not a parody at all.  The Supreme Court made clear the distinction between parody and satire in *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994).  Parody includes a comment on the original work, while satire uses the original work to comment on or promote something

else.  One is protected speech, the other is not.  The Court held:

> [T]he heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works....If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, *which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh*, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger.
> *Id.* at 580 (emphasis added).[2]

The decision *Dr. Seuss Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394 (9th Cir. 1997) is controlling.  In *Dr. Seuss*, defendants published "The Cat NOT in the Hat!," a book telling the story of the O.J. Simpson murder trial using the rhyming cadence of the well-known Dr. Seuss children's books.  The owner of the Dr. Seuss trademarks and copyrights sued, claiming infringement.  Defendants argued that the book was a parody privileged under the First Amendment.  This Court, relying on *Acuff-Rose*, rejected that defense.  While "The Cat NOT in the Hat!" did broadly mimic the style of the original Dr. Seuss book, it was not a parody because "[t]he stanzas ha[d] no critical bearing on the substance or style" of the original. *Dr. Seuss,* 109 F.3d at 1401.  Rather, the defendant authors "merely use[d] the Cat's stove-pipe hat, the narrator ("Dr. Juice"), and the title (The Cat NOT in the Hat!) 'to get attention' or maybe even 'to avoid the drudgery in working up something fresh.'" *Id.*

Similarly, in this case, the Advertisement is not a parody because it makes no comment about Plaintiff.  To the contrary, like the defendant in *Dr. Seuss*, Defendants "merely used [the celebrity persona of Plaintiff] to get attention," or maybe even "to avoid the drudgery in working up something fresh" to sell their products and services.  *Dr. Seuss,* 109 F.3d at 1401.   In contrast to this Ninth Circuit's holding in *MCA Records* that "[t]he ["Barbie Girl"] song does not rely on the Barbie mark to poke fun at another subject but targets Barbie herself," 296 F.3d at 901, the Advertisement says nothing about Plaintiff.  It is not a parody as a matter of law.

---

[2] Although *Acuff-Rose* articulated the distinction between parody and satire in the context of a copyright infringement claim, the Ninth Circuit has recognized it to be equally applicable in trademark infringement cases.  *See, e.g., Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 901 (9th Cir. 2002)*, citing Harley-Davidson, Inc. v. Grottinelli,* 164 F.3d 806, 812-813 (2d Cir. 1999) for the proposition that "a claimed parodic use that makes no comment on the mark is not a permitted trademark parody use."

*Dr. Seuss* makes it clear that a claimed parody which confuses consumers and tarnishes trademarks is an *unsuccessful attempt* at parody which does not enjoy First Amendment protection:

> Some parodies will constitute an infringement, some will not. *But the cry of "parody!" does not magically fend off otherwise legitimate claims of trademark infringement or dilution.* There are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark. A noninfringing parody is merely amusing, not confusing.
> *Dr. Seuss*, 109 F.3d at 1405 (emphasis added).

Cases from other circuits agree that a failed attempt at parody which confuses consumers is not entitled to First Amendment protection. In *Schieffelin & Co. v. Jack Co. of Boca*, 850 F. Supp. 232 (S.D.N.Y. 1994), for example, the owner of the DOM PERIGNON trademarks and trade dress for champagne brought trademark infringement and dilution claims against a "Dom Popignon" parody popcorn product. The court held that, despite the defendant's use of an obvious pun, "[t]he junior user or parodist of another's mark may ***not*** invoke parody as a talisman to defeat liability under the Lanham Act; ***nor is parody a defense to infringement***." *Id.* at 248 (emphasis added). The *Schieffelin* court framed the issue as "whether the similarity of the marks in question is likely to cause confusion among consumers as to the source or sponsorship of defendants' product." *Id.* at 242. Applying the *Polaroid* factors (the Second Circuit's analog to the *Sleekcraft* factors), the court credited plaintiff's survey evidence showing substantial actual confusion as highly probative and held that confusion was likely because defendant had created a confusing parody product. *See also Bacardi & Co. Ltd. v. New York Lighter Co., Inc.,* No. 97-cv-7140, 2000 WL 298915 (E.D.N.Y. Mar. 15, 2000) (applying the *Polaroid* factors in granting summary judgment to the owner of the BACARDI® mark for rum on infringement claims against "Bacarbi" alleged parody liquor bottle cigarette lighter).

Defendants rely on an inapposite case from the Fourth Circuit, *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007). That case is readily distinguishable, for several reasons. First, the court in *Haute Diggity Dog* found the product to be a parody, as defined by *Acuff-Rose*, because it made "a comment on the rich and famous, on the LOUIS VUITTON® name and related marks, and on conspicuous consumption in general." *Id.* at 261. By contrast, the Advertisement does not make any comment on Plaintiff's celebrity persona. Second, *Haute Diggity Dog* concerned a summary judgment ruling, and the product was not found to be confusing to consumers after the court examined the parties' competing evidence. 507 F.3d at 258. Here, the action is only at the pleadings stage, and Plaintiff has no opportunity to conduct discovery to marshal evidence. Third, in *Haute Diggity*

*Dog,* the accused product borrowed "just enough of the original design to allow the consumer to appreciate the point of parody." 507 F.3d at 261.  In the instant case, Defendants have made direct use of Plaintiff's image and catchphrase, with no transformative elements whatsoever.  Finally, in *Haute Diggity Dog,* the court only evaluated infringement after first determining that the accused dog toy was a *successful* parody - which informed its subsequent analysis "to a great extent." *Id.* at 260.  In this case, the Court should confidently begin from the opposite premise – that the Advertisement is *not* a successful parody.

**E.**   **<u>*Rogers* Does Not Apply, Because Defendants Did Not Use Plaintiff's Image and Likeness Within an "Artistic or Expressive Work" as the *Rogers* Cases Define It, But in a Commercial Setting For Their Own Products and Services</u>.**

Defendants devote a significant part of their Motion to the conclusory argument that the Advertisement necessarily qualifies as an "expressive work" which can only be assessed for trademark infringement under the test first articulated in *Rogers v. Grimaldi,* 875 F.2d 994 (2nd Cir. 1989).  Defendants' argument does not withstand scrutiny.  The Advertisement is not a song, film, book, or videogame.  It is not an artistic or expressive work under *Rogers* and its progeny.  In *Rogers,* a producer used the first names of well-known dancers, Ginger Rogers and Fred Astaire, as the title of a Fellini movie about aspiring dancers who would likely never become, "Ginger and Fred." The Second Circuit held that such a referential use, within the title of an artistic work – a film – would be found infringing only (a) if it had no artistic relevance to the work, or if it had artistic relevance, (b) if it explicitly misled movie-going consumers as to the movie's source. Applying this test to "Ginger and Fred," the Second Circuit in *Rogers* found no infringement.

The Ninth Circuit first accepted the *Rogers* test in *MCA Records*.  There, the Danish music group Aqua released "Barbie Girl," a song that referred to Mattel's well-known doll.  The song's lyrics included the phrase, "I'm a Barbie girl, in a Barbie world/Life in plastic, it's fantastic."  The Ninth Circuit found the song was a commentary "about Barbie and the values Aqua claims she represents." 296 F.3d 894, 902 fn. 9.  In the absence of credible evidence of consumer confusion, this Court held such a referential, non- \trademark use of "Barbie Girl" for the purpose of making a critical comment on the doll and her impact on gender roles in society merited treatment under the *Rogers* test.  In contrast to Defendants' confusing use of Plaintiff's image and likeness in the Advertisement, the song's reference to Barbie served a critical, communicative purpose.  Importantly, Aqua used the BARBIE mark not to sell something else but "to target Barbie herself." *Id.* at 901.

To the same effect is *Brown v. Elec. Arts, Inc.,* 724 F.3d 1235 (9th Cir. 2013), which found the use of football player Jim Brown's persona within the video game *Madden NFL* to be non-infringing under *Rogers*. In *Brown,* this Court emphasized that "[t]he *Rogers* test is ***reserved for expressive works***." *Id.* at 1241 (emphasis added). In holding the video game in *Brown* to be an expressive work, the Court was guided by the Supreme Court's decision in *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011): "Like the protected books, plays and movies that preceded them," the Court there held, "video games communicate ideas – and even social messages – through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)" and these similarities to other expressive media "suffice[] to confer First Amendment protection." *Id.* at 790. In contrast to the video game in *Brown*, Defendants' Advertisement employs no "familiar literary devices," tells no story, incorporates no characters, dialogue, plot or music, and conveys no message – certainly nothing about Plaintiff.

Recently, in *Gordon v. Drape Creative, Inc.,* 897 F. 3d. 1184 (9th Cir. 2018), the issue was whether the use of social media taglines (including "Honey Badger Don't Care") in a series of greeting cards infringed the rights of the taglines' owner.  The district court, applying *Rogers*, granted summary judgment in favor of the defendants, but the Ninth Circuit reversed and remanded for trial.  The Ninth Circuit held that "[a] jury could determine that defendants did not add any value protected by the First Amendment but merely appropriated the goodwill associated with Gordon's mark." *Id.* at 1187. Significantly for the present case, the Court noted that "[t]he *Rogers* test is not an automatic safe harbor for any minimally expressive work that copies someone else's mark," adding that *Gordon* "demonstrates *Rogers's* outer limits." *Id.* at 1187, 1193.

The Ninth Circuit in *Gordon* remanded for a factual determination as to whether the defendants' use satisfied the "artistic relevance" prong of *Rogers*. Citing *Parks v. LaFace Records*, 329 F.3d 437, 453 (6th Cir. 2003) the Court warned, "[T]he use of a mark is not artistically relevant if the defendant uses it merely to appropriate the goodwill inhering in the mark or for no reason at all."  This language echoes the holding in *Dr. Seuss*, that the defendant's book infringed Dr. Seuss's trademarks and rejecting the First Amendment defense in that case because the book "merely use[d] the Cat's stove-pipe hat, the narrator ('Dr. Juice'), and the title (The Cat NOT in the Hat!) 'to get attention' or maybe even 'to avoid

the drudgery in working up something fresh.'" 109 F.3d at 1401.[3]

Each of the Ninth Circuit cases applying *Rogers* makes it abundantly clear that *Rogers* only applies to uses of trademarks for communicative purposes within artistic and expressive works. The Supreme Court long ago spotted the tendency of accused parties in a multitude of contexts to claim that their use was a form of "expression" and therefore protected by the First Amendment:

> It is possible to find some kernel of expression in almost every activity a person undertakes — for example, walking down the street or meeting one's friends at a shopping mall — but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.
> *City of Dallas v. Stanglin,* 490 U.S. 19, 25 (1989).

Defendants' Advertisement does not constitute an expressive work under *Rogers,* and their arguments to the contrary should be rejected. Additionally, Plaintiff alleges an explicit intent to deceive by Defendants. Allegations of a specific intent to deceive such as these are sufficient to defeat the second prong of the *Rogers* test on a motion to dismiss. *See*, *Elec. Arts, Inc. v. Textron Inc*., 2012 WL 3042668, at \*5 (N.D. Cal. July 25, 2012) ("As stated, [the complaint] alleges that the helicopters were a main selling point for the game, and [defendant] intended consumer confusion. On a motion to dismiss, this is sufficient to defeat this prong of *Rogers*."); *Dita, Inc. v. Mendez*, 2010 WL 5140855, at \*3 (C.D. Cal. Dec. 14, 2010) ("Not only does the Complaint allege that Defendant's use of the mark is likely to cause consumer confusion, it asserts that Defendant actually intended to mislead the public as to the source or content of the work. Such allegations expressly negate the second prong of the *Rogers* test.").

### F.   Plaintiff's Claims are Not Preempted by the Copyright Act.

### 1.   Plaintiff's Lanham Act Claim is Not Preempted because "*Dastar* Preemption" Applies Only to Reverse Passing Off Cases.

Vaguely citing to *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Defendants (wrongly) asserts that the case stands for the proposition that all Lanham Act claims involving copyrightable material are preempted by the Copyright Act. Not so. Defendants avoid the critical question: under what circumstances is a Lanham Act claim merely a repackaged copyright

---

[3] Defendants' citation to *Chaquico v. Freiberg*, 274 F. Supp. 3d 942, 944 (N.D. Cal. 2017) is misleading and inapposite. The *Chaquico* court later held that, "the Court finds the SAC alleges Defendants' advertisements are not expressive, and that the *Rogers* test does not apply." *Chaquico v. Freiberg*, 2017 WL 4805578, at \*7 (N.D. Cal. Oct. 24, 2017).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claim?  *Dastar* provides an easy answer.  ***Dastar* holds that only certain Lanham Act claims are preempted: those alleging "reverse passing off" of "communicative products."** *Dastar*, 539 U.S. at 37-38.  All other Lanham Act claims are not preempted.  *Id.*; *see also OTR Wheel Eng'g, Inc. v. West Worldwide Servs.,* 897 F.3d 1008, 1012 (9th Cir. 2018) ("Pursuant to the Supreme Court's opinion in [*Dastar*], a claim for reverse passing off cannot be brought to prevent the copying of intellectual property.")

   In *Dastar*, the defendant (Dastar) copied and slightly modified a videotaped documentary produced by the plaintiff (Fox), and distributed it as its own. Fox brought a Lanham Act claim alleging that Dastar was falsely presenting Fox's content as its own. *Dastar,* 539 U.S. at 31. This is of course paradigmatic *reverse passing off*.[4]  The Supreme Court found Fox's Lanham Act claim was preempted because it was simply a repackaged copyright claim.  *Id.* at 36, 37.  The purpose of copyright law, after all, is to combat misappropriation of creative works and plagiarism.  *Id.* at 37, 38.  And because copyright law reflects a careful balancing of authors' rights and the public's freedom to use others' expression, it would be inappropriate to allow the Lanham Act (which is concerned with protecting consumer welfare by avoiding marketplace confusion as to the "source" of goods) to trump copyright law in its own domain. *Id.*, at 33, 34.

   Accordingly, the Court held that a reverse passing off claim cannot be based on "communicative products," (defined as "one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or, as here, a video"), which are the subject of copyright law. *Id.* at 33.  Put another way, *Dastar* holds that a claim for false designation origin is preempted where the "origin" in question is the authorship of a communicative work. *Antidote Int'l*

---

[4] Because the "passing off"/"reverse passing off" distinction is dispositive, and because Defendants not see fit to mention it, an explanatory digression is in order. Typical Lanham Act cases involve a defendant "passing off" his goods as affiliated with the plaintiff. But it is also a violation of the Lanham Act to do the opposite: i.e. to present another's goods or services as one's own. See *Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*, 2016 WL 7165728, at *2 (C.D. Cal. June 30, 2016). Such "reverse passing off" amounts to "taking credit" for another's work. When the goods or services in question happen to be copyrightable (i.e. when they are "communicative products"), reverse passing off thus reduces to a sort of plagiarism that begins to look indistinguishable from copyright infringement, and is thus preempted. *Dastar* at 33.

*Films, Inc. v. Bloomsbury Pub.*, *PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2006).

That *Dastar* does not foreclose *passing off* claims, even where the trademark is copyrightable or is used on communicative products, is crystal clear from its reasoning. The Court noted that allowing a Lanham Act claim for plagiarism "would create a species of mutant copyright law" that would effectively expand copyright-style protections. *Id.*, at 34. The point was perfectly illustrated by the facts of *Dastar* itself. A copyright infringement action—the most obvious claim under the circumstances—was not available because Fox's original documentary had fallen into the public domain. *Id.,* at 26. Undeterred, Fox essentially stated a copyright claim under the rubric of the Lanham Act. *Id.* at 37. The Supreme Court found preemption because Lanham Act liability for appropriation of a copyrightable work would essentially create a "perpetual" copyright that Congress did not intend. *Id*., at 37.

### 2.    Passing Off Violates the Lanham Act Even if it Also Violates the Copyright Act.

*Dastar's* reasoning clearly has no application to passing off cases, which present no specter of mutant copyright law.  And indeed, there are plenty of cases finding that a single act can simultaneously constitute and copyright infringement and passing-off trademark infringement. *See Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (the offending conduct "may have been one act, but it was two wrongs."); *Dr. Seuss Enterprises*, 109 F.3d at 1397. There are also a number of cases specifically rejecting *Dastar* preemption in approving of simultaneous trademark and copyright infringement. *Craigslist Inc. v. 3Taps Inc.,* 942 F. Supp. 2d 962, 979 (N.D. Cal. 2013); *Bach v. Forever Living Prods. U.S., Inc*., 473 F. Supp. 2d 1110, 1116-18 (W.D. Wash. 2007).

Further, a number of cases have specifically found that Lanham Act false endorsement claims, even when based on communicative products, are not preempted under *Dastar*—precisely because false endorsement is by its very nature passing off as opposed to reverse passing off.  *See Aagard v. Palomar Builders, Inc*., 344 F.Supp.2d 1211, 1216 (E.D.Cal. 2004) ("traditional palming off is not preempted by the Copyright Act."). In *Henley v. Devore*, 2009 WL 10697982, at *6-7 (C.D. Cal. 2009), members of the Eagles sued for use of their songs in political parodies (e.g. *All She Wants To Do Is Tax*), coupling a straightforward copyright claim with a false endorsement claim.  The court first made the point that false endorsement claims necessarily allege "passing off." *Id.* at *8. (Plaintiffs "are contending that DeVore and Hart are "palming off" their video on Henley by suggesting his endorsement."). Next, the court rejected *Dastar* preemption precisely because plaintiff's Lanham Act claim, unlike the one in *Dastar*, alleged passing off:

1

Dastar involved a "reverse passing off" theory in which a producer or manufacturer contends that they should have received credit as the source of the goods but did not. 539 U.S. at 27, 31. Here, in contrast, Henley and Campbell allege a false association or endorsement claim, in which they contend that they received credit, at least implicitly, where they should not have."
*Henley*, 2009 WL 10697982 at \*7.

The *Henley* court was clear that "[n]othing in the Supreme Court's opinion in *Dastar* bars prospective plaintiffs from bringing a false endorsement or association claim under the Lanham Act." *Henley*, 2009 WL 10697982 at \*7; *see also Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 385 (E.D. Pa. 2020) (same); *Schroeder v. Volvo Grp. N. Am., LLC*, 2020 WL 6562242, at \*7 (C.D. Cal. Sept. 3, 2020) (same); *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 448 (S.D.N.Y. 2014) (noting that courts "have found viable false endorsement claims where, for example, [a product] bore a celebrity's name and likeness, ... included an image of a celebrity, [or] featured [a] character dressed in a celebrity's signature costume").

Plaintiff's Lanham Act claim is not preempted because it alleges garden variety passing off in the form of false association/endorsement—and thus liability would not represent an expansion of copyright law. Specifically, Plaintiff alleges that consumers would mistakenly associate Defendants' products and services with him. Compl., ¶ 39. Accordingly, Plaintiff's Lanham Act claim is not preempted by copyright law.

### 3.  **Plaintiff's State Law Claims are Not Preempted by the Copyright Act.**

The Complaint alleges an injury to Plaintiff arising from the unauthorized use of his recognizable image and likeness as one of the most-recognized celebrities for commercial purposes. The Ninth Circuit has explained that while a photograph itself, "as a pictorial work of authorship," is subject matter protected by the Copyright Act, where the basis of a claim is "not the publication of the photograph itself, as a creative work of authorship," but rather "the *use* of [persons'] likenesses and their names pictured in the published photograph," it is *not* a work of authorship under the Copyright Act. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) (emphasis added). This is because "the name and likeness of a celebrity or other individual," is "not a 'work of authorship' under the Act." *Id.* at 1003–04 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999)). Such a work "does *not* become a work of authorship simply because it is embodied in a copyrightable work such as a photograph." *Id.* (emphasis added).

Courts have held that where it is the use of one's likeness to promote another's business, rather than the publication of photographs themselves, that form the basis of a claim, the facial subject matter

19

of the Complaint is not copyrightable. *See id.*; *O'Brien v. PopSugar Inc.*, 2019 WL 462973, at \*1-3 (N.D. Cal. Feb. 6, 2019) (no preemption of right of publicity claim); *Coyle v. O'Rourke*, 2015 WL 58700, at \*2, 4–11 (C.D. Cal. Jan. 5, 2015) (no preemption of right of publicity claim arising from defendants' unauthorized use of plaintiffs' images and likeness, embodied in photographs, for commercial purposes); *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013 (2014) (no preemption of right of publicity claim arising from defendants' unauthorized display of models' images on their website to advertise "cosmetic medical services" because "it is [d]efendants' use of the [m]odels' likenesses pictured in the photographs to promote [d]efendants' business that constitutes the alleged misappropriation"); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362 (2000) (no preemption of claim by copyright owner of erotic photographs against defendant who displayed the images without authorization and for profit on its website because "a human likeness is not copyrightable, even if captured in a copyrighted photograph" and right of publicity claims "against the unauthorized publisher of their photographs are not the equivalent of a copyright infringement claim").[5]

Defendants rely solely on the inapposite case of *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996). In *Fleet*, the producers of a film did not fully compensate the actors who performed and sold the copyright in the film to a third party. *Id.* at 1915. The actors brought an action pursuant to California Civil Code § 3344 against the third party. Although the actors conceded that the third party owned the copyright, they argued that their images were used without their consent. *Id.* at 1915-16. The Court of Appeal found the plaintiffs' claims were preempted, because they "sought only to prevent CBS from reproducing and distributing ***their performances*** in the film[.]" *Id.* at 1919 (emphasis added). *Fleet* is entirely distinguishable from the case at bar, in which Defendants used a photograph of Plaintiff and coupled it with his famous catchphrase to promote their products and services. Plaintiff is ***not*** seeking to prevent any copyright holder from distributing and reproducing its own copyrighted work. The basis of Plaintiff's right of publicity claims under California law is the contention that Defendants misappropriated Plaintiff's persona for Defendants' own commercial gain. Indeed, the Ninth Circuit in *Downing*

---

[5] *See also Mindlab Media, LLC v. LWRC Int'l, LLC*, 2013 WL 1688309, at \*1, 4-5 (C.D. Cal. Apr. 15, 2013) (no preemption of right of publicity claim based on fact that defendant "wrongfully capitalized on [plaintiff's] goodwill and notoriety by misappropriating his image and using it in unauthorized advertisements"); *Batra v. PopSugar, Inc.*, 2019 WL 482492, at \*1, 4 (N.D. Cal. Feb. 7, 2019); *Del Amo v. Baccash*, 2008 WL 4414514, at \*3 (C.D. Cal. Sept. 16, 2008) (to the extent Plaintiff's statutory right of publicity claim "arises from a right of publicity based on the models' likeness, not based on the embodiment of that likeness (i.e., the photographs)," it is not preempted by federal copyright law).

specifically distinguished *Fleet* in holding that rights of publicity claims concerning a celebrity's persona are **not** preempted.  The Ninth Circuit found *Fleet* to be "clearly distinguishable" from cases, such as the instant action, where the plaintiffs' "claim is based on the use of their names and likenesses, which are not copyrightable." *Downing,* 265 F.3d at 1005.  Notably, in *Downing,* the defendant actually purchased the photograph depicting the plaintiffs, and thus owned the copyright outright.  *Id.* at 1001.  This was no bar to the plaintiff's right of publicity claims.  *See Schroeder,* 2020 WL 6562242, at *8-9 (distinguishing *Fleet* in finding no preemption).

The distinction between preempted claims, such as those presented in *Fleet,* such as those in *Downing,* 265 F.3d 994, *Midler,* 849 F.2d 460, and *Waits,* 978 F.2d 1093, is well summarized in *No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1144 (C.D. Cal. 2010).  There, the plaintiff musical group alleged that the defendant had made unauthorized use of the personae of the band members by means of realistic computer renderings of the band members in a video game. *Id.* at 1140-1141. In holding that the plaintiff's California statutory and common law misappropriation claims were *not* preempted by copyright law, the court observed:

> *Laws* and *Fleet* stand for the following proposition: federal law preempts state-law right of publicity claims where the claims are based on the claimant's *copyrightable* activities that are captured in a copyrighted work. *Fleet* involved actors who had performed in a film—that is, a "dramatic work" "fixed in a tangible medium of expression" within the meaning of the Copyright Act. *Laws* involved a singer who had performed in a music recording—that is, a "sound recording" "fixed in a tangible medium of expression" within the meaning of the Copyright Act.  In contrast, where the plaintiff's claims are based on a non-copyrightable personal attribute rather than a copyrightable performance, the Copyright Act does not preempt the claims.
>
> *No Doubt*, 702 F. Supp. 2d at 1144 (emphasis in original).

Here, the Complaint "does not use the word 'copyright'" at all.  *See Coyle*, 2015 WL 58700, at *10.  The harm suffered by Plaintiff arises from Defendants' misappropriation of Plaintiff's valuable recognizable likeness and persona for their economic advantage without first obtaining his permission, depriving him of the compensation he commands for marketing products and services and diluting the significant value that Plaintiff has worked hard to develop for his image and likeness. Here, Defendants promoted their products and services by associating Plaintiff's recognizable celebrity image and likeness with their products and services.

Like Plaintiff's California statutory and common law right of publicity claims, Plaintiff's remaining UCL claim arises from Defendants' use of Plaintiff's image and likeness without permission

to promote Defendants' products and services. That claim is derivative of the right of publicity and Lanham Act claims and it likewise falls outside of copyright preemption. "The Section 17200 claim—and its incorporated allegations—do not clearly show that "unfair business practices" is subtext for "violations of the Copyright Act's exclusive rights. Accordingly, the Section 17200 claim is not preempted." *Wimer v. Reach Out Worldwide, Inc.*, 2017 WL 5635461, at *5 (C.D. Cal. July 13, 2017); *see also O'Brien v. PopSugar Inc.*, 2019 WL 462973, at *4 (N.D. Cal. Feb. 6, 2019) ("to the extent Plaintiffs' UCL claim relies upon Plaintiffs' non-preempted state law claims, the UCL claim is also not preempted."); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) (same). *See also Schroeder,* 2020 WL 6562242, at *8 (no preemption where UCL claim derivative of Lanham Act claim).

It is the unauthorized use of Plaintiff's recognizable likeness for commercial purposes to attract consumers and users, given Plaintiff's celebrity persona, to promote Defendants' products and services, that is the crux of the Complaint.  Plaintiff's state law claims are not preempted.

### G.      Section 230 of the Communications Decency Act has No Application Here.

Defendants are not entitled to Communications Decency Act ("CDA") immunity. Defendants are "responsible, in whole or in part, for the creation or development" of the "offending information [and therefore are] not entitled to the CDA's protection." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC* ("*Roommates.com*"), 521 F.3d 1157, 1167-68 (9th Cir. 2008).   Defendants generated and are solely responsible for the content of the Advertisement.   Defendants' CDA argument borders on the frivolous and it utterly without merit.

Defendants' self-serving view of CDA protection would expand CDA immunity far beyond its intended scope. The CDA was created to protect internet service providers ("ISPs") from liability for the actions of ***third parties***.  *Id.* at 1174.  The CDA was not intended to allow an ISP to claim immunity from its own actions.  Where, as here, Plaintiff seeks to hold Defendants liable for their conduct, i.e., authoring and disseminating the Advertisement using Plaintiff's image and likeness without his consent, the CDA does not apply.  See *Checkmate Strategic Group v. Yahoo!, Inc.*, 2005 U.S. Dist. LEXIS 46960, at *21 (C.D. Cal. Oct. 14, 2005) (finding CDA protections inapplicable where "plaintiff is not attempting to shift liability from the third parties"). To immunize Defendants' actions here would turn the language and intent of the CDA on its head.

 The CDA provides limited protection against secondary liability for service providers, but does not protect primary content creators such as Defendants.  Defendants created new and original content –

the Advertisement in question – by generating the text of the Advertisement and intentionally using Plaintiff's image and likeness to generate interest in the Advertisement.  Compl., ¶¶ 6-7, 26-32,  34-42, 46-51, 53-55, 56-61.  Section 230(e)(3) of the CDA defines an "Internet Content Provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."   The CDA does *not* protect service providers that publish tortious content created by the providers themselves.  *See Anthony v. Yahoo! Inc*., 421 F. Supp. 2d 1257, 1262-1263 (N.D. Cal. 2006) (holding no CDA immunity where dating service's alleged creation of false profiles induced plaintiff to maintain membership to the site); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C*., 418 F. Supp. 2d 1142, 1149 (D. Ariz. 2005) (holding that CDA did not bar claims premised on service provider's creation of its own comments and other defamatory content to accompany third-party postings).

As the Ninth Circuit Court of Appeals has held, Section 230 of the CDA immunizes "providers of interactive computer services against liability arising from content created by third parties." *Roommates.com*, 521 F.3d at 1163. The language of the Act itself emphasizes that this immunity is only for secondary liability: "Congress sought to immunize the removal of user- generated content, not the creation of content." *Id.* at 1163-64. Section 230's "grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of the offending content." *Roommates.Com,* 521 F.3d at 1162 (quoting 47 U.S.C. § 230(f)(3)).  In *Roommates.com*, the Ninth Circuit *expressly rejected* the very argument Defendants advance here:

> [T]he fact that users are information content providers does not preclude Roommate from also being an information content provider by helping develop at least in part the information in the profiles. As we explained in Batzel, the party responsible for putting information online may be subject to liability, even if the information originated with a user.
> *Id.* at 1163 (*citing Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)).

Here, Defendants are not republishing content that originated with a third party – they are creating original content in the form of the Advertisement.  Courts in this district have already considered and rejected arguments nearly identical to those made here.  In *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, (N.D. Cal. 2011), under a theory of misappropriation of likeness, plaintiffs sued defendant Facebook for using their identities, images, and likenesses to generate targeted advertising.   Facebook argued that because it is an "interactive computer service," Section 230 precluded the plaintiffs' claim.  Ruling

against Facebook on Section 230 immunity, Judge Koh found that Facebook was liable because plaintiffs were not accusing Facebook of "publishing tortious content, but rather of ***creating and developing commercial content*** that violates their statutory right of publicity." *Fraley*, 830 F. Supp. 2d at 801. Analogously, here, Defendants are creating new content that contains the unconsented use of Plaintiff's image and likeness. Despite Defendants' conclusory statements to the contrary, Defendants intentionally created the content takes Plaintiff's name and likeness and incorporates them into an Advertisement for Defendants' products and services. Defendants are Information Content Providers.

Defendants' cited authorities are wholly inapposite. In denying a motion to dismiss based on CDA immunity on similar grounds, Judge Koh distinguished *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003), noting it predated *Roommates.com* and concerned a fake dating profile created by a third party. *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1249 (N.D. Cal. 2014). The decision in *Ebeid v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal. May 9, 2019) is also wholly inapposite. In *Ebeid,* the plaintiff sought to hold Facebook liable for content the ***plaintiff himself*** had created and that Facebook had simply removed from its platform. *Id.* at *4. Here, Plaintiff plainly alleges that Defendants created all of the content of the Advertisement – not that Defendants edited or removed content posted by a third party.

This Court's recent in *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) is equally distinguishable. In *Callahan,* the website Ancestry.com had taken high school yearbooks from third parties and simply republished them through its online service, adding search functionality and the like. *Id.* at *5-6. The Court held that Ancestry.com did not contribute "materially" to the end content, and instead "passively displayed" content created by third parties. *Id.* at *6. That is clearly not the case here, where Defendants were solely responsible for the Advertisement. Defendants did not simply act as a neutral forum for a third party to post content, or passively republish content created by a separate person. Defendants' CDA argument fails.

### H.   Plaintiff's Catchphrase is Not Generic and is an Indelible Part of his Persona.

Defendants' final argument – that Plaintiff's famous catchphrase is generic and not a distinctive attribute of his celebrity persona – is patently improper at the pleadings stage. "Whether a mark is generic is a question of fact." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir. 2001). The authority cited by Defendants confirms this. Simply put, this Circuit recognizes false endorsement claims for misuse of a celebrity's persona that is "implied through the imitation of a distinctive attribute of the celebrity's identity[.]" *Fifty-Six Hope Rd. Music, Ltd. v.*

*A.V.E.L.A., Inc.,* 778 F.3d 1059, 1068 (9th Cir. 2015) (affirming jury verdict for celebrity).  Protectable persona broadly includes "visual likeness, vocal imitation, or other uniquely distinguishing characteristic[s]." *Abdul-Jabbar,* 85 F.3d at 410.  Numerous courts have held that a celebrity's catchphrase constitutes a protectable aspect of his or her persona. *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 837 (6th Cir. 1983) ("Here's Johnny!"); *Git-R-Done Prods., Inc. v. Giterdone C Store, LLC,* 226 F. Supp. 3d 684, 689–90 (S.D. Miss. 2016) ("Get 'er done.").

In cases involving a celebrity, as here, the Ninth Circuit has used an eight-factor test to determine whether there is a likelihood of confusion: (1) the level of recognition that the plaintiff has among the segment of society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines.  *Downing,* 265 F.3d at 1007-08.  Defendants fail to mention, let alone analyze, the eight-factor test applicable here and ignore binding Ninth Circuit precedent.

Given the predominantly factual nature of this eight-part test, courts routinely reject summary judgement as well as pleadings attacks on false endorsement claims.  *Id.* For example, *Downing* reversed summary judgment on famous surfers' false endorsement claims against a clothing manufacturer holding that a jury could find several factors of this test favor the plaintiffs. *Id.* Similarly, the Ninth Circuit overturned summary judgment on false endorsement clams by TV personality Vanna White stemming from defendant's use of a robot in its TV commercials bearing a resemblance to White, finding the likelihood of confusion inquiry ripe for a jury.  *White,* 917 F.2d at 1401.  Motions to dismiss celebrity false endorsement claims are particularly inappropriate, "given the fact-intensive nature of the likelihood of confusion inquiry."  *Monk v. N. Coast Brewing Co. Inc.,* 2018 WL 646679, at *3 (N.D. Cal. Jan. 31, 2018).

## IV.   **CONCLUSION**.

For the reasons stated above, the Motion should be denied in its entirety.  To the extent the Court is inclined to grant any aspect of the Motion, Plaintiff respectfully requests leave to amend.

DATED: May 6, 2021                           By: /s/M. Taitelman
                                                          Michael A. Taitelman
                                                          Sean M. Hardy
                                                          FREEDMAN + TAITELMAN, LLP
                                                          *Attorneys for Plaintiff O'Shea Jackson, Sr.*
                                                          *(p/k/a "Ice Cube"*