1   BROWNSTEIN HYATT FARBER SCHRECK, LLP
    MITCHELL J. LANGBERG, SBN 171912
2   mlangberg@bhfs.com
    2049 Century Park East, Suite 3550
3   Los Angeles, California  90067-3007
    Telephone:      310.500.4600
4   Facsimile:      310.500.4602

5   BROWNSTEIN HYATT FARBER SCHRECK, LLP
    Matthew J. McKissick (*Pro Hac Vice Pending*)
6   mmckissick@bhfs.com
    100 North City Parkway, Suite 1600
7   Las Vegas, Nevada 89106
    Telephone:      702.464.7054
8   Facsimile:      702.382.8135

9   Attorneys for Defendants
    ROBINHOOD MARKETS, INC. and
10  ROBINHOOD FINANCIAL, LLC

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"),      Case No. 3:21-cv-02304-LB
    an individual,
16                                               **REPLY IN SUPPORT OF MOTION TO
                  Plaintiff,                      STRIKE PURSUANT TO
17                                               CALIFORNIA CODE OF CIVIL
          v.                                     PROCEDURE § 425.16 ET. SEQ.**
18
    ROBINHOOD MARKETS, INC., a Delaware          Date       June 3, 2021
19  corporation; ROBINHOOD FINANCIAL LLC,        Time:      9:30 a.m.
    a Delaware limited liability company,        Dept:      Courtroom B, 15th Floor
20
                  Defendants.                     Magistrate Judge:
21                                                          Honorable Laurel Beeler

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   DEFENDANTS HAVE MET THEIR FIRST PRONG BURDEN ................................ 2

    A.    The "Public Interest" Question Applies To The Article, As A Whole, Not Just The Still Frame Image About Which Plaintiff Complains ............................ 3

    B.    The Article Pertains To An Issue Of Public Interest................................................. 5

    C.    Defendants Need Not Show A "Functional Relationship" To Meet Their Prong 1 Burden ......................................................................................................... 7

    D.    Even If The Wilson And FilmOn Two-Part Tests Applied, Plaintiff Has Misapplied That Test And Defendants' Article Satisfies It....................................... 9

        1.    Wilson and FilmOn Clarify That, In Subdivision (e)(4) Cases, "In Connection With" Requires Courts To Analyze The Statements In Context ............................................................................................................. 9

        2.    Defendants satisfy the two-part test .............................................................. 10

    E.    The Article's Use Of The Screen Frame Image And Caption Is Not An Issue Of Private Interest Or Commercial Speech ................................................... 12

III.  THE MOTION TO STRIKE SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON HIS STATE LAW CLAIMS ............................................................................................................. 13

IV.   CONCLUSION ........................................................................................................... 13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Hilton v. Hallmark Cards,*
   599 F.3d 894 (9th Cir. 2010).......................................................................................5, 6, 7, 12

*Sarver v. Chartier,*
   813 F.3d 891 (9th Cir. 2016)................................................................................................4, 5, 7

**California Cases**

*Albanese v. Menounos,*
   218 Cal. App. 4th 923 (2013)..................................................................................................6, 12

*Consumer Justice Center v. Trimedica International, Inc.,*
   107 Cal. App. 4th 595 (2003).................................................................................................10, 12

*FilmOn.com Inc. v. DoubleVerify Inc.,*
   7 Cal. 5th 133 (2019) ...........................................................................................................*passim*

*M.G. v. Time Warner, Inc.,*
   89 Cal. App. 4th 623 (2001)......................................................................................................3, 4

*Nygard, Inc. v. Uusi-Kerttula,*
   159 Cal. App. 4th 1027 (2008).......................................................................................................6

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO,*
   105 Cal. App. 4th 913 (Cal. Ct. App. 2003) .......................................................................6, 7, 10

*Tamkin v. CBS Broad., Inc.,*
   193 Cal. App. 4th 144 (2011).........................................................................................................5

*Wilson v. Cable News Network, Inc.,*
   7 Cal. 5th 871 (2019) ...........................................................................................................*passim*

**California Statutes**

California Code of Civil Procedure
   § 425.16.............................................................................................................................................4
   § 425.16(e)(3)................................................................................................................................1, 6
   § 425.16(e)(4)...................................................................................................................................2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

**B**ROWNSTEIN **H**YATT **F**ARBER **S**CHRECK, **LLP**
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants' anti-SLAPP motion, their Rule 12(b) motion, and their concurrently filed reply in support of the Rule 12(b) motion[1] demonstrate that Plaintiff's claims are legally untenable. Plaintiff's smoke-and-mirrors effort to convince this Court that the Snacks newsletter about legitimate financial news (the "Article") is really an advertisement is unavailing.  Defendants' Article is protected free speech.  The use of the movie image and the paraphrased blurb that accompanied it did not constitute an endorsement or any other commercial use that is subject to the claims Plaintiff has asserted.  For these reasons, and all the other reasons set out in the original motions, Plaintiff's claims are legally untenable and fail.

That Plaintiff's claims have no legal merit does not end the analysis for this motion.  Because the Article ***was*** a written statement made in a public forum in connection with an issue of public interest, California's anti-SLAPP statute ***does*** apply.  Contrary to Plaintiff's assertions, Defendants do not contend the anti-SLAPP statute immunizes anything.  Rather, where the statute applies, only a plaintiff—like Ice Cube—who has asserted legally untenable claims is subject to the remedies the California Legislature has adopted to protect the exercise of First Amendment rights.

Plaintiff does not dispute that the Article was published in a public forum.  This admission significantly narrows the first prong of the anti-SLAPP analysis.  Defendants' anti-SLAPP motion asserted that the statute applies because the Article met two of the four categories of speech the law protects:

- a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. §425.16(e)(3), and

- "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue

---

[1] Because Defendants' arguments that Plaintiff's state-law claims are legally untenable are identical to the arguments on those very same claims in the concurrently filed Reply in Support of Motion to Dismiss Pursuant to FRCP 12(b), Defendants do not repeat them here and incorporate them by this reference.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1    of public interest." Cal. Code Civ. Proc. §425.16(e)(4).

2         Because Plaintiff does not and could not dispute that the Article was made in a public forum,

3    Subdivision (e)(3) is all this Court need consider.  Therefore, this Court no longer needs to consider

4    the "catchall" of Subdivision (e)(4)—which applies to conduct (not just statements) regardless of

5    public forum.

6         The so-called "new law" Plaintiff cites from the California Supreme Court in *Wilson* and

7    *FilmOn* is not only misapplied by Plaintiff but, in relevant part, pertains only to the "catchall" of

8    Subdivision (e)(4).  The upshot of those cases is that because it is materially different than the other

9    three categories, "the ***catchall*** provision demands 'some degree of closeness' between the

10   challenged statements and the asserted public interest."  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7

11   Cal. 5th 133, 150 (2019) (emphasis added).

12        Subdivision (e)(3) does not require the same "degree of closeness."  Because the Article

13   was a written statement in a public forum, the Court only need determine whether Defendants have

14   made a *prima facie* showing that the ***Article*** was written in "connection" with "an issue of public

15   interest."  Plaintiff's effort to parse the movie image and caption from the Article is misguided.  The

16   question is not whether the use of the image was in the public interest.  That the Article is quite

17   obviously speaking to an issue of public interest is enough for Defendants to enjoy the anti-SLAPP

18   First Amendment protections the California Legislature created—just as any other publisher of

19   news and commentary.[2]

20        The anti-SLAPP statute applies to the claims Plaintiff brought under state law.  Those

21   claims are legally untenable.  Therefore, this anti-SLAPP motion should be granted.

22   **II.     DEFENDANTS HAVE MET THEIR FIRST PRONG BURDEN**

23        In the moving papers, Defendants argued that the anti-SLAPP statute applies for two

24   reasons.  First, Defendants argued the statute applied under Subdivision (e)(3) because the Article

25   was a written statement in a public forum made in connection with a matter of public interest.

26   Second, Defendants argued the statute applied under Subdivision (e)(4) because the Article

27

28   [2] In any event, as discussed below, Defendants meet both the requirements for Subdivision (e)(3)
     and (e)(4).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

constituted conduct in furtherance of the exercise of the right of free speech made in connection with a matter of public interest.

Because there is no dispute that the Article was published in a public forum, there is no need for this Court to apply the "catchall" provisions of Subdivision (e)(4). Plaintiff confuses the straightforward Prong 1 analysis by mischaracterizing the import of recent cases, asking the Court to utilize a legal test applicable only to Subdivision (e)(4), and wholly ignoring that Defendants used the movie still frame image and paraphrased tag line to further the Article's cautionary message about stock market corrections. In doing so, Plaintiff ignores the very authority he claims controls the analysis. An examination of California and Ninth Circuit authority demonstrates that the anti-SLAPP statute applies here.

Although the Prong 1 analysis is truly as simple as Defendants offered in their motion, an explanation of the rules is necessary in light of Plaintiff's distortion of the applicable standard. Because the Court must determine whether the Article that was published in a public forum was made "in connection with" an "issue of public interest," Defendants address the "public interest" and "in connection" issues separately.

### A. The "Public Interest" Question Applies To The Article, As A Whole, Not Just The Still Frame Image About Which Plaintiff Complains

Plaintiff attempts to steer the Court away from everything about the Article except for the use of the still frame image and the paraphrased captioning, unilaterally recasting Defendants' message by asserting that the use of the image and phrase themselves must be in the public interest. But the determination of whether Defendants' speech pertained to an issue of public interest is not parsed so narrowly. California courts have made clear that a defendant's statement as a whole must be evaluated to determine whether a defendant's public forum speech was connected to an issue of public interest, at the same time rejecting attempts by plaintiffs to define the public issue only in terms of a plaintiff's claimed injury.

The California Courts of Appeal rejected a nearly identical argument regarding the focus of the public interest consideration in *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623 (2001). Plaintiffs were former players and coaches of a little league team who appeared in a 1997 team

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

photograph. *Id.* at 626.  The team's manager later pleaded guilty to molesting five children he had coached in little league.  *Id.*  In 1999, Sports Illustrated and HBO used the photograph to illustrate stories about adult coaches who sexually molested youths playing team sports.  *Id.*  Plaintiffs sued for invasion of privacy and infliction of emotional distress, and the defendants filed an anti-SLAPP motion under CCP § 425.16.  *Id.*

In its Prong 1 analysis, the court rejected plaintiffs' argument that the public interest to be considered was the narrow subject matter of the photograph, itself.  Instead, the court considered whether the subject of the print and television programs as a whole were public issues or in the public interest:

> Although plaintiffs try to characterize the "public issue" involved as being limited to the narrow question of the identity of the molestation victims, that definition is too restrictive. The broad topic of the article and the program was not whether a particular child was molested but rather the general topic of child molestation in youth sports, an issue which, like domestic violence, is significant and of public interest.

*Id.* at 629.[3]

The Ninth Circuit rejected a similar attempt to artificially narrow the asserted public interest in *Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016).  Plaintiff was a former Army sergeant who asserted claims for misappropriation of his right of publicity and other claims in connection with the allegedly false portrayal of him in the film "The Hurt Locker."  *Id.* at 896.  Like Plaintiff here, on the issue of public interest, the *Sarver* plaintiff asked the court to ignore the nature of the public interest represented by the work as a whole:

> Rather than ask whether the film's portrayal of the Iraq War raises a question of public concern, Sarver call on us to ask specifically whether the defendants' alleged misappropriation of his private persona is of public interest."

*Id.*  The court refused to do so.  Focusing on the public interest aspect of the analysis,[4] the court

---

[3] Notably, because the application of the anti-SLAPP statute is not an immunity but only a mechanism to identify and dispose of meritless lawsuits, the fact that the court found the anti-SLAPP statute to apply did not end the case.  In the *M.G.* case, the plaintiffs were able to show their claims were legally and factually tenable.  Therefore, the motion was ultimately denied.  *Id.* at 630.

[4] The *Sarver* court appears to have conducted its Prong 1 analysis under Subdivision (e)(4) (*id.* at 901).  Therefore, as discussed below, the portion of the analysis regarding the functional relationship between the statement and the public interest is not applicable here.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1  found that the "focus on the conduct of the Iraq War satisfies California's standards for determining

2  whether an issue is one of public concern."  *Id.*

3  Thus, it is not the alleged appropriation of a person's persona, here through a still frame of

4  a movie, that is itself the relevant public issue to which a connection must be made.  Instead, it is

5  the subject matter of the communication in which the person's persona has been used, here the

6  Article, that is relevant.  *Tamkin v. CBS Broad., Inc.,*193 Cal. App. 4th 144 (2011) (holding that

7  defendants "demonstrated that their challenged conduct [e.g. using plaintiff's name in drafts of a

8  television show script] was in furtherance of the creative process of developing and broadcasting"

9  the television show, and finding "no requirement in the anti-SLAPP statute that the plaintiff's

10  persona [alleged to be misappropriated] be a matter of public interest").

### B.     The Article Pertains To An Issue Of Public Interest

12  Focusing first on whether the public interest criteria is satisfied by examining the Article as

13  a whole, it is evident that Defendants' speech regarding a stock market correction involved an issue

14  of public interest.

15  A Ninth Circuit case involving Paris Hilton is instructive.[5]  *See Hilton v. Hallmark Cards*,

16  599 F.3d 894 (9th Cir. 2010).  In that case, celebrity Paris Hilton sued the Hallmark greeting cards

17  company for "using her image and catch-phrase ['that's hot'] in a birthday card without her

18  permission."  *Id.* at 899.  The image depicted Hilton as a waitress in a comical portrayal of scenes

19  from a television show in which she starred, playing on her catch-phrase "that's hot" to refer to a

20  plate of food she carries*.  Id.*  Hilton sued for trademark infringement and misappropriation of her

21  name and likeness, and Hallmark moved to strike the right of publicity claim under California's

22  anti-SLAPP statute.  *Id.*  The district court denied the motion.  *Id.* at 900.

23  On appeal, the Ninth Circuit examined (among other things) whether the sale of Hallmark's

24  greeting card was "in connection with a public issue or an issue of public interest."[6]  Like the

_____

[5] While not related to financial news, *Hilton* offers a useful example showing just how far the concept of public interest can stretch.
[6] The *Hilton* case was considering Subdivision (e)(4).  However, the consideration for the what *is* a "public interest" under Subdivisions (e)(3) and (e)(4) is the same.  Again, as discussed below, once a public interest has been identified, (e)(4) requires analysis regarding the functional relationship between the statement and the public interest that is not applicable here, under (e)(3).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

California Supreme Court later did in *Wilson* (discussed below), the *Hilton* Court analyzed the anti-SLAPP statute's definition of "public issue or issue of public interest . . . broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence." *Id.* at 906.  The court, finding that the greeting card addressed an issue of public interest, rejected Hilton's assertion that the suit was merely "a garden variety private dispute over who profits from her image" that implicated "no issue of public interest because it involves no issue at all, only a celebrity who interests many people." *Id.* at 905–08.

The *Hilton* Court reached its conclusion after examining two tests adopted by the California Courts of Appeal: the *Weinberg* test and the *Rivero* test.  Notably, both tests are identified with approval in *FilmOn.com*, 7 Cal. 5th at 149 (2019) ("Our courts have ably distilled the characteristics of 'a public issue or an issue of public interest.'") (citing *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913, 919-924; *Weinberg*, 110 Cal. App. 4th 1122, 1132-33  (2003)).

*Rivero* identifies "three categories of public issues: (1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread, public interest.'"  *Hilton*, 599 F.3d at 906*; see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (finding that "'an issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest.").[7]

*Weinberg*'s test (which the *FilmOn* court describes as setting forth "additional attributes of protected conduct," 7 Cal. 5th at 149) is "designed to distinguish between the issues of 'public, rather than merely private, interest.'" *Hilton*, 599 F.3d at 907.  Under *Weinberg*, "'public interest' does not equate with mere curiosity," but instead "a matter of public interest should be something

---

[7] Plaintiff's attempt to distinguish *Nygard* through discussion of *Albanese v. Menounos*, 218 Cal. App. 4th 923 (2013), is unavailing.  The *Albanese* court focused on the fact that there was only "some public interest" in *Albanese* (whereas Plaintiff admits he is "famous" and "world-renowned," ECF 21 at 10 of 32, p. 7:5-23), and that there was no evidence that the public was interested in the parties' private dispute about alleged theft of high-end clothing.  218 Cal. App. 4th at 936.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

of concern to a substantial number of people." *Sarver*, 813 F.3d at 901-02 (*citing Weinberg*, 110 Cal. App. 4th at 1132).

The *Hilton* Court found that both tests were satisfied.  *Hilton*, 599 F.3d at 907.  Under *Rivero*, there was no dispute that the comical depiction of Hilton concerned a person in the public eye, and Hilton is also a topic of widespread public interest.  *Id.*  The *Weinberg* test was also met because Hilton's "career is 'something of concern to a substantial number of people.'"  *Id.*  Thus, *Hilton* determined Hallmark's comical depiction of Hilton and the use of her catchphrase satisfied the public interest requirement.

Here, there can be no reasonable dispute that the Article's discussion of financial news and related analysis is a matter of public interest.  To be sure, while he has tried to divert attention away from Defendants' asserted public interest,  ***Plaintiff has offered no argument or authority that financial news and related analysis is not a matter of public interest.***  How could he?  If Paris Hilton's career is a matter of public interest, so too are the topics of stock market news and commentary, and stock market corrections, that pertain to ***public*** companies that trade ***publicly*** on a stock exchange.  No evidentiary showing is required to accept that there are a plethora of websites, magazines, televisions programs, and more that devote themselves to such topics.  By definition, these issues are certainly ones "in which the public is interested."

## C.    Defendants Need Not Show A "Functional Relationship" To Meet Their Prong 1 Burden

Having conceded the applicability of Subdivision (e)(3), the "new law" cited by Plaintiff requiring a "functional relationship" between the public interest and the use of the still frame image and caption is inapplicable.  The "functional relationship" requirement is limited to the "catchall" category of protected speech under Subdivision (e)(4).

Plaintiff argues that the California Supreme Court cases of *Wilson* and *FilmOn.com* have "reined in" the public interest analysis "and established a stricter two-part test to determine what is considered a matter of 'public interest.'"[8]  However, the two-part test requiring the consideration of context to evaluate the functional relationship between the conduct and the public interest ***plays***

---

[8] Oppo. to Motion to Strike – ECF No. 21 at 14.

1    *no role* in an analysis under Subdivision (e)(3).

2          As demonstrated by the California Supreme Court, close review of the statutory language

3    is required.  Section 425.16(e) begins by expressly stating that it is defining the term "act in

4    furtherance of a person's right of petition or free speech under the United States or California

5    Constitution in connection with a public issue."  As explained by the Supreme Court:

> 6    Section 425.16, subdivision (e)(1), (2), and (3), each describe circumstances in which a "written or oral statement or writing" is eligible for protection as an "act" in furtherance of speech or petitioning rights—when the statement is made before an official proceeding, made in a public place on a public issue, and so on. Subdivision (e)(4) extends protection to "any other conduct" that meets the requirements specified in that subdivision.

10   *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 899 (2019).  In other words, the speech defined

11  in each of the first three Subdivisions (here, a writing in a public forum in connection with a matter

12  of public interest) are, by definition, acts in furtherance of speech or petitioning rights.  But

13  Subdivision (e)(4), which protects conduct (not just speech) and does not require a public forum,

14  demands something more:

> 15    It follows that a defendant who claims its speech was protected as "conduct in furtherance of the exercise of [free speech rights] in connection with a public issue or an issue of public interest" (id., subd. (e)(4)) must show not only that its speech referred to an issue of public interest, but also that its speech contributed to public discussion or resolution of the issue

19  *Id.* at 900.  Thus, whereas showing a public interest is sufficient for Subdivisions (e)(1)-(3),

20  Subdivision (e)(4) also requires a showing that the conduct contributed something to the discussion

21  or resolution of the issue.

22       Thus, it is only in that Subdivision that the court considers context (as opposed to content)

23  at all:

> 24    So, within the framework of section 425.16, subdivision (e)(4), a court must consider the context as well the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest.

27  *FilmOn.com Inc.*, 7 Cal. 5th at 149.

28       Because Subdivision (e)(4) requires consideration of context, the *FilmOn* court applied a

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1  two-part test:

> The inquiry under the catchall provision instead calls for a two-part analysis rooted in the statute's purpose and internal logic. First, we ask what public issue or issue of public interest the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful.

*Id.* at 149-150 (internal quotations and citations omitted).

Therefore, it is only Subdivision (e)(4) that requires the court to ask whether there is a functional relationship between the speech and the asserted public interest. Simply, "***the catchall provision*** demands some degree of closeness between the challenged statements and the asserted public interest." *Id.* at 150 (emphasis added) (internal quotations and citation omitted). Tellingly, Plaintiff chose not to include the emphasized portion of this *Wilson* quote in his Opposition.[9]

Because Plaintiff has not disputed that the Article was a written statement made in a public forum, Subdivision (e)(3) applies and (e)(4) need not be considered. Therefore, because the Article pertained to a matter of public interest and the use of the still frame image and associated caption were connected to it, Defendants have met their Prong 1 burden. Defendants are not required to show any "functional relationship," "degree of closeness," or advancement of a public debate.

### D. Even If The *Wilson* And *FilmOn* Two-Part Tests Applied, Plaintiff Has Misapplied That Test And Defendants' Article Satisfies It

Even if the *Wilson* and *FilmOn* two-part test applied to Subdivision (e)(3) or had the Article not been published in a public forum, Defendants would still meet their Prong 1 burden. Plaintiffs misstate and misapply the law.

1.  *Wilson and FilmOn* Clarify That, In Subdivision (e)(4) Cases, "In Connection With" Requires Courts To Analyze The Statements In Context

Plaintiff falsely claims that the *FilmOn* court "instruct[s] lower courts to analyze what constitutes an issue of public interest more strictly" and that the court noted certain lower-court

[9] Oppo. to Motion to Strike – ECF No. 22 at 14.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   opinions "*disapprovingly*."[10]  The California Supreme Court disagrees.  *FilmOn*, 7 Cal. 5th at 150

2   (noting that its articulated rule "adds no additional requirement beyond those already in the catchall

3   provision").

4       The *FilmOn* court disapproved of arguments made by defendants in two lower-court

5   decisions where defendants had *attempted* to connect their very specific speech to "an abstract issue

6   of public interest" that was not part of their actual speech—attempted connections which both the

7   California Supreme Court and the lower courts deemed too tenuous.[11]  *FilmOn.com*, 7 Cal. 5th at

8   150.

9       The Court then held that, in a Subdivision (e)(4) case, the context of a statement (including

10  audience, speaker and purpose) is relevant to the determination of whether the statement furthers

11  the exercise of constitutional speech rights in connection with a matter of public interest.  *Id.* at

12  149-52.  As discussed above, the Court found that "the catchall provision demands 'some degree

13  of closeness' between the challenged statements and the asserted public interest," agreeing "it is

14  not enough that the statement refer to a subject of widespread public interest; the statement must in

15  some manner itself contribute to the public debate."  *Id.* at 150.  The Court found that ultimately,

16  courts "examine whether a defendant—through public or private speech or conduct—participated

17  in, or furthered, the discourse that makes an issue one of public interest."  *Id.* at 151.

18          2.    Defendants satisfy the two-part test

19      Even if the Court were to apply the inapplicable two-part test that considers context in non-

20

21  _____
    [10] Oppo. to Motion to Strike – ECF No. 22 at 14.

22  [11] The *FilmOn* court cited and quoted in parentheticals the two decisions as follows: (1)
    *Consumer Justice Center v. Trimedica International, Inc.*, 107 Cal. App. 4th 595, 601 (2003) for

23  the proposition: "defendants' advertisements of a breast enlargement product were not 'about the
    general topic of herbal supplements' but were instead 'commercial speech about the specific

24  properties and efficacy of a particular product'"; (2) *Rivero v. Am. Fed'n of State, County, & Mun.
    Employees, AFL-CIO*, 105 Cal. App. 4th at 919, 924 for the proposition: "rejecting union's

25  argument that, in publishing statements heralding suspension of a custodial supervisor, it was
    commenting on the abusive supervision of employees throughout a publicly financed educational

26  institution."  Thus, the *FilmOn*  court agreed with the manner in which the lower courts handled
    the defendants' arguments when those courts determined that Prong 1 was not met.  Ironically,

27  although Plaintiff claims these cases were disapproved, he relies on *Consumer Justice Center*
    (ECF 21 at 16 of 32, p. 7:16-21), and far from being cited with disapproval, the *FilmOn* court

28  cites *Rivero* for the proposition that courts have "ably distilled the characteristics" of a public
    issue or issue of public interest (*FilmOn*, 7 Cal. 5th at 149).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

public forum cases, Defendants would still satisfy the test.[12]  As discussed above, the "public interest" requirement is easily satisfied.  Like Paris Hilton, Plaintiff admits he is a person in the public eye and that he is a topic of widespread public interest, as he asserts he is a "world-renowned artist" who the public associates with his catch-phrase to mean he is "serious."[13]  Although Defendants agree that Plaintiff is of public interest, his persona itself is not the public interest Defendants implicate through the Article.  The Article concerns corrections to the stock market, an issue that is also a topic of widespread public interest and could affect a large number of investors.  Likewise, the public interest about corrections to the stock market is the focus of the Article.

Moreover, Defendants use the still frame image and the paraphrase in connection with the Article to report and comment on this public issue.  Defendants' use of the image and language need only assist Defendants in communicating their message, which must itself contribute to public discussion of the public issue.  Analyzed in context under the *FilmOn* decision, Defendants—who communicate financial news to their readers through Snacks—used the image and language to, at the same time, emphasize and lighten, Defendants' message about current market conditions regarding tech stocks with the goal of making it more digestible and relevant to the Article's audience.  The Article contributes to public discussion of the issue by conveying relevant data and explaining that corrections are normal.  Like the greeting card at issue in Hilton, the connection between the Article's use of the image and language and the public interest in fluctuations in the market is direct.  In sum, Defendants satisfy the various articulations of the "in connection with" requirement even  under the inapplicable cases Plaintiff advances because Defendants' variant of the catch-phrase explains to readers how the market essentially "checked" (i.e. "corrected") itself in a way that was likely to avoid more "serious" financial consequences ("wrecked") that may take place without periodic market adjustments.

---

[12] Plaintiff makes conflicting arguments about the standards for Prong 1.  On one hand, Plaintiff asks the Court to follow 2019 California Supreme Court precedent requiring it to evaluate the statements in context.  On the other hand, he asks the Court to ignore context when he attempts to divorce the image and tagline from the Article's message and focuses only on his celebrity status.
[13] Oppo. to Motion to Strike – ECF No. 22 at 10.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

**E.     The Article's Use Of The Screen Frame Image And Caption Is Not An Issue Of Private Interest Or Commercial Speech**

In addition to related issues regarding the substantive tenability of his claims addressed in the 12(b) motion, Plaintiff incorrectly seeks to avoid applicability of the anti-SLAPP statute by focusing on authority that distinguishes between private and public matters.  (ECF 21 at 15-16 of 32, pp. 7:26-8:21.)   Unlike in *Albanese* and other cases dealing with purely private issues or controversies, the Article does not comment on Plaintiff's private life or a dispute between the parties regarding Plaintiff's actions.  *See, e.g., Albanese*, 218 Cal. App. 4th at 934, 936 (2013) (determining "there is no evidence that the public is interested in this private dispute concerning her alleged theft of unknown items from Menounos or Dolce and Gabbana").

Likewise, Plaintiff erroneously relies on *Consumer Justice Center*, 107 Ca1. App. 4th at 601, in a strained attempt to characterize the parties' dispute as a "private" dispute over commercial speech to which the anti-SLAPP statute does not apply.  The rule articulated in *Consumer Justice Center* is specific to advertisements.  *Id.*; *see also FilmOn*, 7 Cal. 5th at 150 (characterizing *Consumer Justice Center* as a case about "advertisements"); *see also Hilton*, 599 F.3d at 905, n. 7 (rejecting Hilton's claim that the greeting card was commercial speech, which is "best understood as speech that merely advertises a product or service for business purposes").  As discussed more fully in the 12(b) motion, although Plaintiff characterizes the Article as an "advertisement," even a cursory examination of it demonstrates that it is a news article designed to convey information to the public and not an advertisement for goods or services.  *Consumer Justice Center* does not apply.

Additionally, Defendants have not used the image and catch-phrase in isolation or claim that his persona alone satisfies the public interest factor.  (ECF 21 at 15 of 32, p. 7:16-25.)  Rather, as explained herein, Defendants have used the movie still frame image and a variant of his catchphrase—which Plaintiff claims is itself of interest to the public—to report and comment on the state of the stock market and provide insight about how specific events (corrections) can forestall serious financial consequences.

In sum, Defendants' Article is clearly a written statement made in a public forum in connection with an issue of public concern.  No matter how Plaintiff attempts to contort the

1  applicable law or try to force the application of law that is inapposite, Defendants have met their

2  Prong 1 burden.

3  **III.    THE MOTION TO STRIKE SHOULD BE GRANTED BECAUSE PLAINTIFF
         CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON HIS STATE
4         LAW CLAIMS**

5  Under the second prong, Plaintiff cannot show that his claims are legally tenable, and he

6  cannot overcome Defendants' legal defenses.   As noted above, Defendants' reply arguments

7  regarding the legal tenability of Plaintiff's state law claims are set forth in full in the concurrently

8  filed Reply in Support of Motion to Dismiss Pursuant to FRCP 12(b).

9  Because Plaintiff's state claims fail as a matter of law, the anti-SLAPP motion should be

10  granted.

11  **IV.    CONCLUSION**

12  Because Defendants' Article was a writing made in a public forum in connection with a

13  matter of public interest, California's anti-SLAPP statute applies to Plaintiff's state-law claims.

14  Because each and every one of those claims is legally untenable, this anti-SLAPP motion should

15  be granted.

16

17  Dated:  May 13, 2021                        BROWNSTEIN HYATT FARBER
                                             SCHRECK, LLP
18

19

20                                           By:  /s/ Mitchell J. Langberg
                                               MITCHELL J. LANGBERG
21                                             Attorneys for Defendants
                                               ROBINHOOD   MARKETS,  INC.   AND
22                                             ROBINHOOD FINANCIAL, LLC

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007