FREEDMAN+TAITELMAN, LLP
Michael A. Taitelman, Esq. (SBN 156254)
mtaitelman@ftllp.com
Sean M. Hardy, Esq. (SBN 266446)
smhardy@ftllp.com
1801 Century Park West, Fifth Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Plaintiff O'SHEA JACKSON, SR. (p/k/a "ICE CUBE")

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:21-cv-02304-LB<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF LANHAM ACT (15 U.S.C. § 1125(a))**<br><br><br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff, O'SHEA JACKSON, SR., professionally known as ICE CUBE ("Ice Cube" or "Plaintiff"), by and through his undersigned counsel, brings this Complaint against Defendants, ROBINHOOD MARKETS, INC. ("Robinhood") and ROBINHOOD FINANCIAL LLC ("Robinhood Financial") (Robinhood and Robinhood Financial are, collectively, the "Defendants"), for damages and injunctive relief, and in support thereof states as follows:

**INTRODUCTION**

1.     Robinhood is an unscrupulous and predatory conglomerate that professes to be a financial services company for the everyday person.  In truth, Robinhood is a wolf in sheep's clothing.  It is the archetypal example of an amoral corporation that places profits over people.  Robinhood's corporate malfeasance is no secret.  Over the course of its brief existence, Robinhood has been: (a) the subject of investigations too numerous to list, but currently by not less than five separate governmental bodies; (b)

fined several times by federal regulatory agencies, including most recently a $65 million settlement with the SEC in December 2020; and (c) named as a defendant in hundreds of lawsuits, including currently over 50 class action lawsuits.  No wonder.  In 2020 alone, it was widely reported that Robinhood's stock trading app – which depends on trigger-finger immediacy – went down not less than *90* separate times. In June 2021, FINRA, the financial industry's self-regulating authority, imposed on Robinhood the largest fine in its history - $57 million plus $12.6 million in restitution – due to Robinhood's widespread abuses and flouting of industry regulations. Berkshire Hathaway vice chairman Charles Munger recently summarized Robinhood as "a gambling parlor masquerading as a respectable business" and, "basically a sleazy, disreputable operation."  Robinhood is selling a garbage trading platform to the American public and laughing all the way to the bank.

2.     At this point, the evidence is clear that Robinhood is selling a dangerous bill of goods to unsuspecting consumers across the nation.  Robinhood CEO Vlad "the Stock Impaler" Tenev recently offered corporate crocodile tears during sworn Congressional testimony when confronted with the fact that an inexperienced 20-year-old Robinhood user committed suicide after he was wrongly told he owed over $730,000 due to some risky Robinhood trades.  There was no Robinhood helpline for the user to call and several emails for help went unanswered by Robinhood until the date of his suicide.  Human lives are simply collateral damage as Robinhood single-mindedly rushes toward an initial public offering, so its feckless and apathetic Millennial founders can jump ship and live out their days in luxury and hedonism.  Robinhood is simply another get-rich-quick scheme for the most privileged people in America.  Robinhood flagrantly displays its belief that it is exempt from the rules and laws that govern everyone else in the United States.

3.     In a cynical effort to appeal to a young demographic, and specifically young Black customers, Robinhood has engaged celebrity hip-hop artist endorsers such as Jay-Z, Nas, and Snoop Dogg to endorse its products and services.  However, in an act of unmitigated gall and transparent retribution, Robinhood and its subsidiary have now used the image and likeness of Ice Cube – *without* his permission – to promote Robinhood's terrible products and services.  Robinhood has picked on the wrong man this time.

4.     Robinhood's wholly-owned subsidiary Robinhood Financial serves as a propaganda arm

for Robinhood.  Through its "Robinhood Snacks" website and app, Robinhood Financial advertises and promotes Robinhood's financial services and products to millions of consumers across the United States.

5.      Ice Cube is one of the world's best-known artists – a rapper, actor, and entrepreneur whose life story has served as an inspiration to millions.  From his days as one of the founding members of the seminal rap group N.W.A., to his platinum-record selling solo career, to his successful acting endeavors, Ice Cube's image and likeness have become a well-established brand.  Ice Cube is also a noted activist for social justice and civil rights, having shepherded and promoted A Contract with Black America in 2020 to address the systemic racism affecting Black Americans.

6.      In March 2021, in the midst of Robinhood's meltdown, Defendants deliberately and shamelessly misappropriated Ice Cube's image and likeness to promote Robinhood's horrible products and services – the last things in the world to which Ice Cube would *ever* attach his image and likeness.  This blatant theft of Ice Cube's image and likeness to endorse Robinhood's dangerous products and services has resulted in substantial damage to Ice Cube.  In short, just as Robinhood's recent well-known conduct has resulted in Congressional investigations and numerous class action lawsuits, so too has it stolen and diminished the hard-earned image and brand of Ice Cube, one of the most prominent Black voices in America.

7.      Ice Cube has spent years meticulously building the value of his image and overall brand by carefully scrutinizing the products and services he is asked to endorse.  This highly selective process has established Ice Cube's name and image as a respected brand in multiple categories, ranging from music to sports.  Robinhood is the antithesis of everything that Ice Cube stands for.  It represents corporate greed on a massive scale.  In Ice Cube's view, Robinhood is a textbook example of a greedy corporation taking advantage of its unwitting consumers.  Despite Ice Cube's written demand that Defendants cease and desist from their continued commercial use of his image and likeness, they shockingly failed and refused to do so.  Knowing that Ice Cube was offended and wished his image and likeness to be removed should have been enough for Robinhood to do the right thing.  But Robinhood just doesn't care about people – whether they are famous or not.  Robinhood and its puppet Robinhood Financial act with impunity out of malice and greed, under the mistaken belief that they are above the law.  Given their intransigence, Ice Cube now brings this action to set the record straight: Robinhood is a scam that Ice

Cube wants nothing to do with.

## JURISDICTION AND VENUE

8.     This is an action arising under the Lanham Act, 15 U.S.C. § 1121, California Civil Code § 3344.1, and California common law.

9.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     Defendants are subject to personal jurisdiction in California.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because the events giving rise to the claims occurred in this district, Defendants' principal place of business is in this district, Defendants engaged in their wrongful acts and infringement on Plaintiff's rights in this district, and Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

12.     Plaintiff Ice Cube is, and at relevant times was, a citizen of a California, residing in the City of Los Angeles, Los Angeles County, California.

13.     Plaintiff alleges, on information and belief, that Defendant Robinhood is a Delaware corporation and is headquartered in this district, in the City of Menlo Park, San Mateo County, California.

14.     Plaintiff alleges, on information and belief, that Defendant Robinhood Financial is a Delaware limited liability company and is headquartered in this district, in the City of Menlo Park, San Mateo County, California.

15.     Plaintiff alleges, on information and belief, that Defendant Robinhood Financial is a wholly owned subsidiary of Robinhood.

## GENERAL ALLEGATIONS

16.     Ice Cube is a world-renowned artist.  Ice Cube first achieved recognition and commercial success as one of the founding members of the pioneering rap group N.W.A. in 1987.  In 1990, Ice Cube embarked on a successful solo recording career.  Among Ice Cube's many chart-topping albums, his 1992 album *The Predator* featured his certified-platinum single "Check Yo Self."

17.     "Check Yo Self" has become one of Ice Cube's signature recordings and is an indelible part of his image and likeness.  Indeed, the lyric and phrase "Check Yo Self" has become nothing less than Ice Cube's catchphrase.  If Ice Cube uses his signature catchphrase, "Check Yo Self," the public has come to understand that he "means business" and is serious.

18.     In addition to his successful music career, Ice Cube has also regularly worked as an actor in motion pictures, beginning with 1991's highly regarded *Boyz n the Hood.*

19.     Ice Cube has also leveraged his image and likeness in successful entrepreneurial endeavors.  For instance, in 2017, Ice Cube co-founded Big3, a 3-on-3 basketball league that went on to achieve great success.

20.     Most importantly, Ice Cube has devoted his life to the cause of social justice and civil rights, standing up for the disenfranchised in American society.  In 2020, Ice Cube's social activism culminated in the publishing of A Contract with Black America, a covenant to right the centuries of wrongs that have been inflicted on Black Americans.

21.     The image of Ice Cube is famous and valuable.

22.     The likeness of Ice Cube is famous and valuable.

23.     "Ice Cube" is further a registered trademark with the United States Patent and Trademark Office, bearing the Registration Number 3717252.  This registered trademark underscores the fame and value attributable to Ice Cube's brand and persona.

24.     Ice Cube's business partner, Jeff Kwatinetz, is a civil rights attorney who recently filed a class action lawsuit against Robinhood, and has publicly voiced his disapproval of Robinhood and its business practices on several media outlets.  It is public knowledge that Mr. Kwatinetz is associated with Ice Cube, as they partnered in developing the highly successful Big3 basketball league.

25.     "Robinhood Snacks" is an integral component in Robinhood's marketing strategy and is itself one of the products and services offered by Defendants.  In March 2019, Robinhood acquired the existing company MarketSnacks and thereafter integrated the "Robinhood Snacks" product into Robinhood's overall commercial platform.  "Robinhood Snacks" is part of Robinhood Financial, Robinhood's wholly-owned subsidiary.  "Robinhood Snacks" is accessed through the "Robinhood Learn" portal on Robinhood's interactive website.  On February 18, 2021, Robinhood CEO Vlad Tenev

submitted prepared testimony to the United States House of Representatives Committee on Financial Services.  In this testimony, Mr. Tenev stated, "It is common in the financial services industry for broker-dealer firms' operations to be subsidiaries of a larger holding company, as is the case with Robinhood." Mr. Tenev admitted that "Robinhood Financial acts as an introducing broker for our customers by taking their trade orders."

26.    In his prepared testimony to Congress, Mr. Tenev further stated that, "[a]s broker-dealers, both Robinhood Financial and Robinhood Securities are registered with the SEC, and are members of the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC")."

27.    In his Congressional testimony, Mr. Tenev elaborated that Robinhood's business strategy is to blur the distinction between entertainment and investing.  He stated that Defendants "subscribe to the belief that participation and information are power.  We provide simple, easy-to-understand and easy-to-use tools and educational resources that are not filled with complex industry jargon.  This helps support customers from all backgrounds in their investing journey."  Mr. Tenev testified that "[f]inancial literacy remains a key area of investment as Robinhood Financial continues to grow as a trading platform.  We fully recognize, and have always taken seriously, the responsibility that comes with helping our customers invest."  In order to allow its customers to better use its trading app, Mr. Tenev boasted that "Robinhood Financial has published more than 650 articles to help people learn about investing and answer their most fundamental questions about investing such as 'What is a Limit Order?' along with articles covering a host of other subjects."

28.    During questioning before Congress, U.S. Representative David Scott asked Mr. Tenev, "Do you, Robinhood, do you have any policies in place to ensure that investors are making trades based on legitimate, material, financial information, and not the influence of social media, the design of trading platforms or any other superfluous information? Do you have anything in regard to that?"  Mr. Tenev responded, "Absolutely.  Congressman, we provide educational resources to our customers, including our redesigned Robinhood Learn Portal, which is not just available to Robinhood customers, but to the general public and had over 3.2 million people visiting in 2020."  Later, Mr. Tenev testified that "We recently released a revamped Learn portal . . . We call it Learn 2.0 . . . with the aim of taking a

customer from basic concepts, such as what is a share, what is a stock, what's an ETF, all the way through the more advanced concepts.  We're continuing to invest more and more on Learn as well as on Snacks, which is our popular podcast, and all other forms of content which we distribute."

29.     Defendants' "Robinhood Snacks" product thus serves several purposes for Robinhood: it is a product that itself entices and introduces potential customers to sign up for the Robinhood trading app, and it also purports to offer an "educational" component so that Robinhood Financial can claim it satisfies various FINRA requirements.  In his Congressional testimony, for instance, Mr. Tenev remarked on how Defendants supposedly "improved our options educational materials and hired a dedicated Options Education Specialist to support our continued education initiatives."

30.     Defendants' customer base is overwhelmingly young, with the average customer being 31 years of age.  Defendants have made a concerted push to market their products and services in order to attract more Black customers.  For instance, Mr. Tenev informed Congress that "Robinhood users are more racially and ethnically diverse than the industry average.  Based on a representative sampling between July and December 2020, African Americans investors represent nine percent of Robinhood's customer based, compared with just three percent at incumbent firms."

31.     On July 1, 2021, as part of its planned Initial Public Offering, Robinhood filed its Form S-1 with the SEC.  In its Form S-1, Robinhood admitted that "Robinhood Snacks" was itself one of the commercial products and services offered by the company.  In its Prospectus Summary, Robinhood stated "Education is core to accomplishing our mission. We believe access to easy-to-understand investment information and education is fundamental to expanding participation in the U.S. financial system. This is why we have created educational content for everyone, no matter where they are on their investing journey. That means jargon-free financial literacy resources and digestible financial news direct to customers. As of March 31, 2021, our Robinhood Snacks newsletter and podcast had nearly 32 million subscribers, and the daily podcast was downloaded nearly 40 million times in 2020, with more than 10 million additional downloads in the three months ended March 31, 2021. Our library of financial literacy resources, Robinhood Learn, had more than seven million cumulative page views as of March 31, 2021, and monthly unique visits to Robinhood Learn rose nearly six-fold from January 2020 to March 2021."

32.     Elsewhere in its July 1, 2021 Form S-1, Robinhood states that "we provide education and build safeguards into our products so that our customers are in the best position to succeed.  Over 50% of our customers are first-time investors, and first-timers in particular don't have a reference point for how to begin their investing journey.  That's why we created Robinhood Learn, which as of March 31, 2021 had over 7 million views, with monthly unique visits up six-fold from January 2020 to March 2021. **Our customers also love Robinhood Snacks, which gives bite-sized digestible financial content to over 32 million subscribers.**  We will continue to experiment with new content and mediums in an effort to meet you where you are, and we commit to speaking clearly and transparently to you." (Emphasis added.) Robinhood also boasted that it had more than double the industry average of Black investors on its platform.

33.     Notably, in its Form S-1 disclosures to potential investors, Robinhood provides an entire section dedicated to "Risks Related to Our Brokerage Products and Services."  Among these highlighted risks is "Robinhood Snacks" – a clear admission that it is among Defendants' brokerage products and services.  Robinhood bluntly tells its potential investors that "***Providing investment education tools could subject us to additional risks if such tools are construed to be investment advice or recommendations.***"  (Emphasis in original.)

34.     In this section of its Form S-1, Robinhood concedes that, "We provide a variety of investment education and tools and financial news (including our 'Robinhood Snacks' newsletters and podcasts) to our customers that we do not consider investment advice or an investment recommendation, **but we cannot guarantee that such services could not be construed as constituting investment advice or recommendations by customers or regulatory agencies**. Additionally, Robinhood Gold members have access to stock research reports prepared by our third-party partner, Morningstar, Inc. Risks associated with providing investment advice include those arising from how we disclose and address possible conflicts of interest, inadequate due diligence, inadequate disclosure, human error and fraud. New regulations, such as the SEC's Regulation Best Interest and certain state broker-dealer regulations, will impose heightened conduct standards and requirements if we are deemed to provide recommendations to retail investors. In addition, various states are considering potential regulations or have already adopted certain regulations that could impose additional standards of conduct or other

obligations on us if we provide investment advice or recommendations to our customers. Furthermore, we could be subject to investigations by regulatory agencies if our services are construed as constituting investment advice or recommendations. For example, in 2020, the MSD issued certain amendments to the Massachusetts securities law, which, among other things, apply a fiduciary conduct standard to broker-dealers and agents when dealing with their customers. In December 2020, the Enforcement Section of MSD filed a complaint against us stipulating that the fiduciary conduct standard applies to us by alleging that our product features and marketing strategies amount to investment recommendations. See "Business—Legal Proceedings" for more information. To the extent that the services we provide are construed or alleged to constitute investment advice or recommendations and we fail to satisfy regulatory requirements, fail to know our customers, improperly advise our customers, or risks associated with advisory services otherwise materialize, we could be found liable for losses suffered by such customers, or could be subject to regulatory fines, penalties and other actions such as business limitations, any of which could harm our reputation and business." (Emphasis added).

35.     In its own effort to lure investors for its Initial Public Offering, Robinhood admits that the true purpose of "Robinhood Snacks" is entice consumers into using Robinhood's products and services.  The Form S-1 provides that "Robinhood customers are highly engaged with our platform across multiple products and services; by March 31, 2021, which is less than two years after Cash Management was introduced in 2019, over 3.4 million of our customers were debit card holders with our Cash Management offering, and, from our launch of fractional shares in 2019 to March 31, 2021, approximately 11 million customers have placed a fractional trade on Robinhood. Additionally, as of March 31, 2021, our Robinhood Snacks newsletter and podcast had nearly 32 million subscribers, and the daily podcast was downloaded nearly 40 million times in 2020, with more than 10 million additional downloads in the three months ended March 31, 2021. Our library of financial literacy resources, Robinhood Learn, had more than seven million cumulative page views as of March 31, 2021, and monthly unique visits to Robinhood Learn rose nearly six-fold from January 2020 to March 2021. **We believe that the extent to which our existing and potential customers use and engage with our products and services is an important indicator of their level of interest in our platform. While not all forms of engagement directly impact our financial results, we believe that having**

**highly engaged customers allows us to develop long-term relationships with them and introduce them to new products and services as our platform and offerings develop over time.**" (Emphasis added.)

36.     Based on the information revealed by Defendants in the July 1, 2021 Form S-1, Ice Cube is informed and believes, and thereon alleges, that Defendants allocate the operating expenses for "Robinhood Snacks" from their marketing budget.  The facts, as revealed by Defendants' own statements before Congress and to the SEC, demonstrate that "Robinhood Snacks" is a gateway point for new, unsophisticated customers for the Robinhood platform.  Defendants' repeated refrain that it is merely an "educational" service is belied by Defendants' admission in the Form S-1 that "Robinhood Snacks" stands to be deemed as investment advice or recommendations by customers and regulatory agencies.  The commercial nature of "Robinhood Snacks" is clear.  Not only does it serve to lure in and prepare unsuspecting consumers to sign up for the Robinhood trading app, but " Robinhood Snacks" constitutes a financial product and service in and of itself.

37.     In its Form S-1, Defendants further admitted that "Our vision is for Robinhood to become the most trusted, lowest-cost, and most culturally relevant money app worldwide."  As discussed below, in Defendants' effort to expand their market share and attract more young Black customers to their platform, Defendants engaged in the deliberate commercial misappropriation of Ice Cube's valuable celebrity persona.

38.     On March 8, 2021, Defendants impermissibly used Ice Cube's persona – i.e., his image and likeness – in connection with an advertisement (the "Advertisement") for Robinhood's financial services and products on the "Robinhood Snacks" website and app.  The Advertisement uses Ice Cube's image and likeness, including his signature catch phrase, in order to create the false impression that Ice Cube actually endorses Robinhood, its products, and its services.[1]

39.     The sole justification for Defendants' use of Ice Cube's persona is to generate interest in the Advertisement, which is not only one of the products and services offered by Defendants, but which

---

[1] A true and correct copy of the Advertisement is available for viewing on Robinhood's interactive website at the following address:
https://snacks.robinhood.com/newsletters/2KcYlm7Cjo4LfUQhj5AhuJ/ (last accessed July 6, 2021).

1    also prominently features links to other parts of Robinhood's financial services website.  Indeed, when

2    accessing the Advertisement online, the website's main navigation menu prominently features an offer

3    for the user to "**Sign Up**" for the Robinhood stock trading app – a clear and omnipresent solicitation for

4    Defendants' goods and services.

5            40.    The Advertisement creates the false impression that Ice Cube supports, endorses, or is

6    otherwise associated with Robinhood's products and services.  This is especially true as the

7    Advertisement (mis)quotes the most well-known lyric from Ice Cube's hit single, "Check Yo Self."

8    Defendants' deliberate decision to couple Ice Cube's famous lyrical catchphrase with his pictorial image

9    evidences their intent to capitalize on Ice Cube's celebrity to attract customers.  There is no correlation

10   between the lyrical catchphrase (from Ice Cube's 1993 song "Check Yo Self") and the image used

11   (taken from the 2007 motion picture *Are We Done Yet?*) other than to conjure Ice Cube's famous

12   persona to attract consumers.  As Defendants have made great efforts to market their products and

13   services as "culturally relevant" and youth-oriented, the implication of the use of Ice Cube's persona in

14   the Advertisement is clear: Ice Cube endorses, supports, or is otherwise associated with Defendants'

15   products and services, including "Robinhood Snacks."  This implication is especially strong given Ice

16   Cube's well-known reputation for being highly selective in which products he chooses to support or

17   otherwise associate himself with.  The average consumer for Defendants' products and services would

18   view the Advertisement and conclude that Robinhood was "Ice Cube approved."   In truth, Ice Cube

19   absolutely does not, and never would, support Robinhood's products and services.

20           41.    The fact that the Advertisement suggests that Ice Cube endorses Robinhood and its

21   services and products is supported by the fact the Robinhood has a demonstrable pattern and practice of

22   using established celebrities, such as Nas, Snoop Dogg, and Jay-Z, to endorse its products and services.

23   Robinhood brazenly relied on its well-publicized association with such prominent rappers when it

24   unlawfully used Ice Cube's image and likeness to create the false impression that Ice Cube supports and

25   endorses Robinhood's products and services.

26           42.    Due to the Advertisement, there is a likelihood of consumer confusion that Ice Cube

27   supports, endorses, or is otherwise associated with Defendants' products and services.  Under the Ninth

28   Circuit's eight-factor test for consumer confusion in Lanham Act celebrity cases, it is clear that

consumers face actual confusion as to whether Ice Cube supports, endorses, or is otherwise associated with Defendants' products and services, including the Advertisement itself.

- First, Ice Cube has very high level of recognition among the segment of society for whom Defendants' products and services is intended.  Defendants' products and services are directed at their primarily young customer base.  Moreover, the Advertisement concerns Defendants' efforts to appeal to a young Black demographic.  There is significant overlap between Defendants' intended customers and Ice Cube's existing customer and fan base, which is in large part is comprised of young persons in general, and young Black persons in particular.  The median age of Ice Cube's customer and fan base is 31 years old.  The median age of Defendants' customers is 31 years old.

- Second, there is a high degree of relatedness of Ice Cube's fame and success to Defendants' products and services.  Ice Cube's celebrity consists in large part of his reputation as an entrepreneur and businessperson.  Ice Cube has leveraged his celebrity in the realm of investments.  For instance, in 2019, Ice Cube was the subject of an article in *Forbes* concerning a successful investment Ice Cube had made in Disney.[2]  Ice Cube has developed a strong recognition among the public as a successful entrepreneur and investor, which makes the use of his persona by Defendants (in connection with their own investment products and services) highly misleading.

- Third, there is a high degree of similarity between the likeness of Ice Cube used in the Advertisement and Ice Cube's actual likeness.  The Advertisement uses an unadulterated image of the actual Ice Cube – leaving no doubt in the consumer's mind as to the fact that he or she is looking at Ice Cube.  This is coupled with the fact that the Advertisement uses Ice Cube's signature catchphrase lyric in conjunction with his actual pictorial image, further emphasizing to the consumer that he or she is looking at Ice Cube.

---

[2] https://www.forbes.com/sites/maddieberg/2019/03/22/the-rapper-and-the-billionaire-how-ice-cube-and-jeweler-carolyn-rafaelian-got-together-to-bid-for-a-10-billion-chunk-of-disney/?sh=464c1aa625bc (last accessed July 6, 2021).

- <u>Fourth</u>, there is evidence of actual consumer confusion.  The consuming public is easily led to believe that Ice Cube endorses, supports, or is otherwise associated with Defendants' products and services based on the use of his persona in the Advertisement.

- <u>Fifth</u>, Defendants have used the marketing channels of both the Robinhood website and the "Robinhood Snacks" subscription list to market their products and services via the Advertisement.  These marketing channels have reached in excess of 32 million persons.

- <u>Sixth</u>, the likely degree of purchaser care when using Defendants' products and services is quite low.  Defendants' customers are not particularly careful when deciding to utilize their products and services, as evidenced by the numerous regulatory fines that have already been issued to Defendants.  This lack of care makes it all the more likely that such customers are misled into believing that Ice Cube endorses, supports, or is otherwise associated with Defendants' products and services.

- <u>Seventh</u>, Defendants intended to profit by confusing consumers concerning Ice Cube's endorsement of their products and services.  Defendants intentionally and specifically selected Ice Cube's persona in order to lure customers to use their products and services.

- <u>Eighth</u>, given Defendants' reckless and unauthorized use of Ice Cube's persona in the Advertisement, and their stated desire to expand their existing customer base to include more Black customers, there is a significant likelihood that Defendants will continue to use Ice Cube's persona in additional product lines.

43.     Moreover, on information and belief, Robinhood and Robinhood Financial specifically sought to punish and make an example out of Ice Cube due to the fact that his business partner, Jeff Kwatinetz, had sued Robinhood and publicly held the company to account.  Although Ice Cube has no involvement in that lawsuit, Defendants' resulting actions speak volumes about their petty, vindictive, and malicious nature.

44.     At no time prior has Ice Cube authorized Defendants to use his image or likeness for commercial purposes of any sort, let alone the Advertisement.

45.     On March 10, 2021, Ice Cube notified Defendants in writing that the use of his image and likeness in the Advertisement was not authorized.  Ice Cube demanded that Defendants immediately

cease and desist from any further unauthorized uses of his image and likeness.

46.     Despite this notice, Defendants have continued to exploit Ice Cube's image and likeness without permission from Ice Cube and without compensating Ice Cube, causing significant damage to Ice Cube and adversely affecting the value of Ice Cube's image and likeness.

## FIRST CLAIM FOR RELIEF

### (For Violation of Lanham Act Under 15 U.S.C. § 1125(a))

47.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint at if set forth in full in this claim.

48.     Ice Cube's image and likeness has secondary meaning, as that term is understood in trademark law. As described above, Defendants have falsely used Ice Cube's likeness in the Advertisement, creating the false impression that Ice Cube endorses Robinhood and its products and services. Members of the public have come to recognize Ice Cube's image and likeness as belonging to him.  This was done to promote and attract customers to Defendants' website, products, and services, and to thereby generate revenue for Defendants. Thus, this was done in furtherance of Defendants' commercial benefit.  Ice Cube is in the business of commercializing his identity and selling his image, likeness and identity to reputable brands and companies for profit. By virtue of Ice Cube's use of his image, likeness, and identity to build his brand, his image and likeness have acquired a distinctiveness through secondary meaning. Ice Cube's image and likeness either suggests the basic nature of his product or service, identifies the characteristics of his product or service, or suggests the characteristics of his product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive.

49.     The goodwill and reputation associated with Ice Cube's image and likeness has continuously grown throughout the general public.  Ice Cube's image and likeness are now known throughout the United States, the State of California, and the world, as a source of origin for his services and endorsements.

50.     Defendants use of Ice Cube's image and likeness is designed to create and does create the false and deceptive commercial impression that Defendants and their products are associated with and/or

endorsed by Ice Cube.  The use by Defendants of Ice Cube's image and likeness is likely to cause confusion, mistake, or deception of consumers as to Ice Cube's endorsement of goods and services.

51.     The image and likeness of Ice Cube are famous and valuable.

52.     The image and likeness of Ice Cube are the sole property of Ice Cube.

53.     Consumers are likely to be attracted to Defendants' products and services through the Advertisement, creating an initial interest in the products and services upon seeing them and creating a lasting appreciation, believing them to endorsed by or otherwise associated with Ice Cube, thereby resulting in consumer confusion.  Defendants' conduct will damage Ice Cube's ability to enjoy, maintain, and exploit his hard-won recognition - and indeed, threatens to disrupt his contractual relationships with current and pending third-party endorsements.

54.     By Defendants' conduct alleged here, Defendants have wrongfully appropriated for themselves the business and goodwill value that properly belongs to Ice Cube and that Ice Cube has invested time, money, and energy in developing.

55.     By reason of Defendants' acts of unfair competition as alleged herein, Ice Cube has suffered and will continue to suffer substantial monetary damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

56.     By virtue of Defendants' acts hereinafter described, Defendants have committed, and are continuing to commit, unlawful, unfair, and fraudulent acts in violation of, *inter alia*, 15 U.S.C. § 1125(a).

57.     Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Ice Cube (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Ice Cube, and to the goodwill associated with Ice Cube's valuable and well-known image and likeness; and Ice Cube's business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

58.     Ice Cube has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to engage in the wrongful conduct herein described.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against the Defendants that:

a.      Defendants be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 15 U.S.C. § 1125;

b.      Defendants be ordered to pay Plaintiff's actual, consequential, incidental, and special damages, as well as the Defendants' profits attributable to the violations alleged;

c.      Defendants be ordered to pay Plaintiff's attorneys' fees and costs to the extent available by law; and

d.      Plaintiff be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a jury trial on all issues triable thereby.

DATED: July 6, 2021          By: /s/ M. Taitelman
                             Michael A. Taitelman
                             Sean M. Hardy
                             FREEDMAN + TAITELMAN, LLP
                             1801 Century Park West, Fifth Floor
                             Los Angeles, CA 90067
                             Tel: (310) 201-0005
                             Fax: (310) 201-0045
                             mtaitelman@ftllp.com
                             smhardy@ftllp.com
                             Attorneys for Plaintiff O'Shea Jackson, Sr.
                             (p/k/a "Ice Cube")