BROWNSTEIN HYATT FARBER SCHRECK, LLP
MITCHELL J. LANGBERG, SBN 171912
mlangberg@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, California 90067-3007
Telephone:  310.500.4600
Facsimile:   310.500.4602

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew J. McKissick (*Pro Hac Vice Admitted*)
mmckissick@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:  702.464.7054
Facsimile:   702.382.8135

Attorneys for Defendants
ROBINHOOD MARKETS, INC. and
ROBINHOOD FINANCIAL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:21-cv-02304-LB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)**<br><br>Date      August 26, 2021<br>Time:     9:30 am<br>Dept:     Courtroom B, 15th Floor<br><br>Magistrate Judge:<br>          Honorable Laurel Beeler |

PLEASE TAKE NOTICE that, on August 26, 2021, at 9:30 a.m. or as soon thereafter as counsel may be heard in Courtroom B, 15th Floor of the above-entitled court, Defendants Robinhood Markets, Inc. and Robinhood Financial LLC (collectively, "Defendants" or "Robinhood"), by and through their attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) will and do hereby move the Court to dismiss with prejudice Plaintiff O'Shea Jackson's ("Plaintiff")

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1    First Amended Complaint in its entirety.

2        Defendants move to dismiss on the grounds that Plaintiff lacks standing under

3    federal law and that the First Amended Complaint fails to state a claim for which

4    relief can be granted. Specifically, Plaintiff fails to plausibly plead facts showing how

5    Defendants' use of a still frame from a movie and a paraphrase of a line from his

6    song *Check Yo' Self* for illustrative purposes amounts to a false endorsement under

7    the Lanham Act. Moreover, Defendants' noncommercial conduct does not satisfy the

8    commercial-use requirement for Plaintiff's false endorsement claim, Plaintiff's

9    claims are barred by the First Amendment, Plaintiff's claim conflicts with federal

10   copyright law, Defendants' use of the image and paraphrase satisfied the *Rogers*

11   defense, and Plaintiff otherwise has not plead tenable claims.

12       This motion is based upon this Notice, the following memorandum of points

13   and authorities, the pleadings and records contained herein, on such other argument

14   and evidence as may be presented at the hearing, and all matters of which this Court

15   may take judicial notice.

16   Dated: July 20, 2021                      BROWNSTEIN HYATT FARBER
                                               SCHRECK, LLP
17

18

19                                            By: /s/ Mitchell J. Langberg
                                                  MITCHELL J. LANGBERG
20                                                Attorneys for Defendants
                                                  ROBINHOOD MARKETS, INC.
21                                                AND ROBINHOOD FINANCIAL,
                                                  LLC
22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

III.  ARGUMENT ............................................................................................ 4

   A.   Plaintiff's Claim Should Be Dismissed Pursuant to FRCP
        12(b)(1) Because He Lacks Standing ............................................... 4

   B.   Plaintiff's Claim Should Be Dismissed Pursuant To FRCP
        12(b)(6) Because He Fails To Allege Facts Sufficient To State A
        Claim ................................................................................................. 7

        1.   Plaintiff cannot state a claim because the Article does not
             satisfy the commercial use requirement for his claim ............... 8

        2.   Plaintiff's claim fails because it is barred, as a matter of
             law, by the First Amendment .................................................... 10

        3.   Plaintiff's Lanham Act claim fails under the *Rogers*
             Defense based on Defendants' expressive use of the
             image and phrase ...................................................................... 13

        4.   As a copyrighted work, only the copyright owner has all
             exclusive rights in the movie still frame, and Plaintiff
             cannot bypass that exclusivity with unfair competition
             law ............................................................................................. 16

        5.   Plaintiff cannot base any of his claims on the phrase
             "Check Yo Self, Before You Wreck Yo Self" ......................... 18

             a.   The phrase "Check Yo Self, Before You Wreck Yo
                  Self" does not identify Plaintiff ..................................... 18

             b.   Plaintiff's use of the Phrase in the Article amounts
                  to a nonactionable parody .............................................. 20

IV.   CONCLUSION ...................................................................................... 22

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. National Video, Inc.*
    610 F.Supp. 612 (S.D.N.Y. 1985) ............................................................. 8

*ASARCO, LLC v. Union Pac. R. Co.*,
    765 F.3d 999 (9th Cir. 2014) .................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 7

*Bayer Co. v. United Drug Co.*,
    272 F. 505 (D.N.Y. 1921)........................................................................ 20

*Bolger v. Youngs Drug Prods. Co.*,
    463 U.S. 60 (1983) ................................................................................ 8, 9

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013) ................................................................ 13

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002) .................................................................. 8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F3d 1115 (9th Cir. 2010) ................................................................... 4

*Chaquico v. Friedberg*,
    274 F.Supp.2d 942 (N.D. Cal. Aug. 11, 2017)...................................... 5, 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ............................................................................ 17, 18

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) .......................................................... 10, 11, 12

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ................................................................ 21

*E.S.S. Ennm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ................................................................ 13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ........................................................................... 19

*Gordon v. Drape Creative, Inc.*,
    897 F.3d 1184 (9th Cir. 2018) *superseded on other grounds by* 909
    F.3d 257 (Nov. 20, 2018) ...................................................... 13, 14, 15

*Hebrew University of Jerusalem v. General Motors LLC*,
    878 F.Supp. 2d 1021 (C.D. Cal 2012), vacated, 2015 WL 9653154
    (C.D. Cal. 2015) .......................................................................................... 8

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ................................................................... 11, 12

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 US 375 (1994) ........................................................................................... 4

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507
    F.3d 252, 267 (4th Cir. 2007) ..................................................................... 21

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
    156 F. Supp. 3d 425, 117 U.S.P.Q.2d 1537 (S.D.N.Y. 2016),
    judgment aff'd, 2017 Copr. L. Dec. P. 31026, 2016 W 7436489
    (2nd Cir. 2016) ............................................................................................. 21

*Mattel v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) ...................................................................... 13

*Mattel, Inc. v. Walking Mountain Prods.*
    353 F.3d 792 (9th Cir. 2003) ...................................................................... 21

*O'Toole v. Northrop Grumman Corp.*,
    499 F.3d 1218 (10th Cir. 2007) .................................................................... 4

*Rebelution, LLC v. Perez*,
    732 F. Supp. 2d 883 (N.D. Cal. July 20, 2010) .................................................. 14

*Regents of Univ. of Calif. v. United States Dept. of Homeland Security*,
    908 F.3d 476 (9th Cir. 2018) *reversed in part, vacated in part on
    other grounds by* 140 S.Ct. 1891 (Jun. 18, 2020) ................................................. 4

*Rogers v. Grimaldi*,
    875 F.2d 994 (9th Cir. 1989) ....................................................................*passim*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ............................................................................ 4, 5

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ......................................................................... 7

*Tin Pan Appel v. Miller Brewing Co.*,
 737 F.Supp. 826 (S.D.N.Y. 1990) ................................................................. 8

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) ....................................................................... 4

*Wendt v. Host Intl'l, Inc.*,
 125 F.3d 806 (9th Cir. 1997) .......................................................................... 8

*White v. Samsung Electronics America, Inc.*,
 971 F.2d 1385 (9th Cir. 1992) ........................................................................ 8

*Yeager v. Cingular Wireless LLC*,
 673 F.Supp.2d 1089 (E.D. Cal. Dec. 7, 2009) ..................................... 10, 11, 12

*In re Zynga Privacy Litig.*,
 750 F.3d 1098 (9th Cir. 2014) ....................................................................... 4

**Federal Statutes**

15 U.S.C.
 § 1064(3)........................................................................................................ 20
 § 1125(a)(1) ................................................................................................... 17
 § 1125(a)(1)(B)............................................................................................... 17

Federal Rules of Civil Procedure
 § 12(b)(1) ................................................................................................... 4, 7
 § 12(b)(6) ........................................................................................................ 7

Lanham Act
 § 43(a)...................................................................................... 13, 17, 18, 19

**Other Authorities**

J. McCarthy, *Trademark and Unfair Competition* § 28:15 (5th ed.
 2021) ........................................................................................................... 19

J. McCarthy, *Trademarks and Unfair Competition* § 31:153 (5th ed.
 2021) ........................................................................................................... 21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

After this Court dismissed Plaintiff's complaint for lack of standing, in his

4

First Amended Complaint ("FAC") Plaintiff abandons all of his untenable California

5

state law claims leaving only a single cause of action under the Lanham Act. Still,

6

Plaintiff fails to plausibly plead additional facts showing how Robinhood's March 8,

7

2021 newsletter entitled *Why are tech stocks falling?* (the "Article") violates the

8

Lanham Act. Instead, the FAC appears to be a thinly disguised motion for

9

reconsideration.  For the same reasons this Court determined the initial complaint

10

was legally insufficient, Plaintiff's FAC falls short again.

11

Plaintiff lacks standing to bring his claim because he again fails to allege how

12

Robinhood's use of his image and paraphrase of a line from his song creates the

13

misapprehension that Plaintiff sponsored, endorsed, or is otherwise affiliated with

14

Robinhood. As amended, Plaintiff's allegations are still nonactionable. Further,

15

Robinhood's noncommercial conduct cannot be the basis of Plaintiff's commercial

16

claim, the claim is barred by the First Amendment, the claim conflicts with federal

17

copyright law, Defendants' expressive use of the image and paraphrase satisfies the

18

*Rogers* defense, and the Article amounts to a nonactionable parody.

19

Plaintiff's additional facts related to congressional testimony and SEC filings

20

are red herrings and do not change the central, controlling fact of this case—that

21

Robinhood used Plaintiff's image for purposes of illustration, not endorsement. The

22

FAC fails to address this Court's previous ruling that, on its face, the Article

23

fundamentally does not suggest an endorsement between Plaintiff and Robinhood,

24

but rather used Plaintiff's image to illustrate a point about stock market corrections.[1]

25

26

[1] Order Granting Motion to Dismiss and Denying Motion to Strike As Moot (the "Order")
– ECF 29 at 7:19–21 ("Robinhood used Ice Cube's picture and paraphrase of a line from
his song to illustrate an article about market corrections. ***That illustration does not***

27

***suggest that the plaintiff endorsed Robinhood*** . . .") (emphasis added). Citations refer to
material in the Electronic Case File ("ECF"), where appropriate, pinpoint citations are to

28

the ECF-generated page numbers at the top of documents.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Instead of alleging new facts that shed light on this central issue, Plaintiff continues to reiterate the unsupported conclusion that the Article implies some form of endorsement.

Moreover, even after this Court properly concluded that the Article is "demonstrably not an advertisement,"[2] Plaintiff doubles down by alleging without any basis that Robinhood's newsletters ("Snacks") are not only advertisements, they are also standalone financial brokerage products in and of themselves.[3] Plaintiff contends that Snacks are a "gateway point" designed to lure new investors onto Robinhood's platform.[4] The truth is Snacks are educational articles that inform the public about the stock market, empowering readers with the knowledge they need to pursue their own investing goals. Plaintiff's strained efforts to convert Defendants' publication of free financial news articles into commercial activity begs the question: How can publishing a free educational article amount to commercial activity when the article is "demonstrably not an advertisement" and does not require, solicit, or encourage any transaction at all?

Accordingly, the Court should dismiss the FAC with prejudice, as there are no additional facts that can cure the legal deficiencies inherent in Plaintiff's false-endorsement claim.

## II.   STATEMENT OF FACTS

The Court is already aware of the relevant facts of this case—namely, the publication of the Article.[5] Although Plaintiff's efforts to impugn Robinhood's business practices are irrelevant to the viability of his claim, Defendants believe some background on its mission and educational content will provide useful context.

Robinhood is the stock trading platform for the everyday investor, establishing

---

[2] *Id.* – ECF 29 at 8:1.

[3] First Amended Compl., ¶ 33 – ECF 30 at 8:12–14 (explaining that because Robinhood described how Snacks could be misconstrued as financial advice in its SEC Form S-1 filing, Robinhood provided a "clear admission" that Snacks are "among [Robinhood]'s brokerage products and services.").

[4] *Id.*, ¶ 36 – ECF 30 at 10:7.

[5] Order – ECF No. 29 at 2–4 ("Statement").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

itself as the first major broker-dealer to offer commission-free stock trading. By breaking down the barriers to entry that have been built around traditional stock trading platforms—including high commission fees, account minimums, and industry jargon—Robinhood aims to democratize finance by providing everyone, regardless of race or socioeconomic background, with the opportunity to invest.

Consistent with this goal, Robinhood provides "simple, easy-to-understand and easy-to-use tools and educational resources. . . [to help] support customers from all backgrounds. . ."[6] Robinhood doesn't only provide these educational resources to its customers; it provides them to the general public as well.[7] As of March 31, 2021, Robinhood Learn—the section of Robinhood's website dedicated to educating the public about investing—had over seven million views with monthly visits up six-fold from January 2020 to March 2021.[8] Because over half of Robinhood's customers are first-time investors, speaking to them in a language they understand is critical to provide a reference point as they begin building their investment portfolios.[9]

In preparation to become a publicly-traded company, Robinhood disclosed potential risks that are linked to its business in its Form S-1 SEC filing, explaining that its "investment education tools could subject [Robinhood] to additional risks if such tools are construed to be investment advice or recommendations."[10] While Robinhood explicitly states that Snacks do not constitute financial advice and are intended for educational purposes only,[11] Robinhood included the foregoing

---

[6] First Amended Compl., ¶ 27 – ECF No. 30 at 6:12–14.

[7] *Id.*, ¶ 28 – ECF No. 30 at 6:25–27 ("[W]e provide educational resources to our customers, including our redesigned Robinhood Learn Portal, which is not just available to Robinhood customers, but to the general public and had over 3.2 million people visiting in 2020.").

[8] *Id.*, ¶ 31 – ECF No. 30 at 7:26–28.

[9] *Id.*, ¶ 32 – ECF No. 30 at 8:2–4.

[10] *Id.*, ¶ 33 – ECF No. 30 at 8:14–16.

[11] Defendants respectfully request that the Court take judicial notice of Robinhood's financial-advice disclaimer, which can be found at the bottom of the Snacks webpage here: https://snacks.robinhood.com/ (last accessed July 20, 2021) ("**[Snacks] are meant for informational purposes only, are not intended to serve as a recommendation to buy or sell any security in a self-directed Robinhood account or any other account, and are not an offer or sale of a security. They are also not research reports and are not intended to serve as the basis for any investment decision.**") (emphasis added).

disclosure in its SEC filings out of an abundance of caution.[12]

Although Plaintiff dedicates a considerable amount of the FAC delving into Robinhood's Congressional testimony and SEC filings, the FAC fails to offer any new facts related to the actual focus of this lawsuit—the Article.[13]

## III.    ARGUMENT

### A.    Plaintiff's Claim Should Be Dismissed Pursuant to FRCP 12(b)(1) Because He Lacks Standing

Plaintiff lacks standing under Article III. Article III's standing requirements limit this Court's subject matter jurisdiction. Therefore, standing is properly challenged by a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F3d 1115, 1122 (9th Cir. 2010). Plaintiff bears the burden of establishing such jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 US 375, 376-378 (1994).

Where, as here, the challenge to standing is a "facial" attack, the court accepts the well-pleaded facts as true (but not the improper conclusions) and dismisses only if those facts are insufficient to invoke jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Here, Plaintiff has failed adequately to allege a cognizable injury, nor could he plausibly do so. As a result, he does not have standing to assert his claims. To invoke the powers of the Court, Plaintiff must show that he: (1) suffered an injury (2) that is fairly traceable to Defendants' conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

---

The Court may take judicial notice of publicly-available facts on the Internet that are not subject to reasonable dispute. *Regents of Univ. of Calif. v. United States Dept. of Homeland Security*, 908 F.3d 476, 519 n. 30 (9th Cir. 2018) (taking judicial notice of the former U.S. President's "tweets") *reversed in part, vacated in part on other grounds by* 140 S.Ct. 1891 (Jun. 18, 2020); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1101–02 & n. 2 (9th Cir. 2014) (judicial notice taken of current version of publicly-available HTTP specification); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1223–25 (10th Cir. 2007) (where the court abused its discretion in not taking judicial notice of defendants' earnings history as published on its website).

[12] First Amended Compl., ¶ 34 – ECF No. 30 at 8:20–21.
[13] *Id.*, ¶ 1 – ECF No. 30 at 1:24.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, Plaintiff is required to "clearly allege facts" demonstrating each element. *Id.* (citation omitted). Satisfaction of this three-part Article III standing test ensures that federal courts do not exceed their constitutional authority. *Id.*

Injury-in-fact is the " 'first and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). As a constitutional requirement, the failure to show injury-in-fact cannot be cured by relying on a statute that grants the right to sue to a plaintiff "who would not otherwise have standing." *Id.* at 1548 (citation omitted). To satisfy this requirement, Plaintiff must show an " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* (quoting *Lujan*, 504 U.S. at 560). To be concrete, the injury "must be 'de facto'; that is, it must actually exist.... [and be] 'real,' and not 'abstract.' " *Id.* (citing dictionaries). To be particularized, the injury must " 'affect the plaintiff in a personal and individual way.' " *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). *Both* requirements— concreteness and particularization—must be established; one alone is not enough. *See id.*

Importantly, the allegations supporting a false endorsement claim under the Lanham Act cannot be conclusory. *Chaquico v. Friedberg*, 274 F.Supp.2d 942, 952 (N.D. Cal. Aug. 11, 2017) (motion to dismiss granted because the plaintiff "fail[ed] to set forth facts that [d]efendants' advertisements create an explicitly misleading description of the [defendants' goods or services].). When a complaint is completely "devoid of allegations explaining how the [defendant's use] create[s] the misimpression that Plaintiff sponsors, endorses, or is affiliated with the [defendant]," the complaint must be dismissed. *Id.*

Here, Plaintiff (again) fails, as required, to allege how the Article explicitly misleads consumers. Plaintiff's recitation of the Ninth Circuit's *Sleekcraft* eight-factor consumer confusion test as applied to celebrity false endorsement claims offers

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

conclusory legal conclusions in lieu of offering actual *facts* which support the allegations made within the analysis. For example, instead of offering facts showing actual consumer confusion, Plaintiff alleges that there is "evidence of actual consumer confusion" because the "public is easily led to believe that Plaintiff endorses. . . Defendants' products. . . based on. . . the Advertisement." [14] In essence, Plaintiff's claim states that his conclusory legal allegations support his claim, so his claim has merit, and does so without identifying (as required) the very facts relating to consumer confusion that he claims require resolution.

Moreover, the FAC fails to allege facts showing how an editorial news article's illustrative reference to a celebrity amounts to an endorsement. Plaintiff's allegations do not show that when a celebrity's likeness is used as a figure of speech (i.e., to convey an idea that is separate and apart from the celebrity's fame), the use may be mistakenly construed by consumers as an affiliation. The reason for this is clear— such illustrative uses are categorically not endorsements. The type of celebrity reference used in the Article is widespread on the Internet and is understood by reasonable people as an illustration of the idea being conveyed—not as an endorsement. This form of communication (i.e., illustrative uses and memes) is now ubiquitous in society, especially on the Internet. If each use of a celebrity's image automatically amounted to a false endorsement under the Lanham Act, every meme, GIF, and picture on the Internet depicting a celebrity would be in violation of federal law. Such a result is, of course, illogical, and if courts were to interpret the Lanham Act in this manner, the First Amendment's guarantee of free speech would be in jeopardy.

The FAC is devoid of any facts demonstrating that the Article explicitly creates the misimpression that Plaintiff sponsors, endorses, or is affiliated with Defendants. Plaintiff's allegations have no factual basis and are merely conclusory statements that the Article *implies* an endorsement. Ultimately, Plaintiff's FAC and the new

---

[14] First Amended Compl., ¶ 42, Subpara. 4 – ECF No. 30 at 13:1–3.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   allegations amount to nothing more than a bare recitation of the elements of his cause

2   of action, which is insufficient to adequately plead a federal false endorsement claim.

3   *Chaquico*, 274 F. Supp. 2d at 952.

4       Because Plaintiff has not adequately plead that the Article explicitly creates

5   the misimpression that he endorses Robinhood's product or services, his claim should

6   be dismissed pursuant to FRCP 12(b)(1).

7   **B.    Plaintiff's Claim Should Be Dismissed Pursuant To FRCP 12(b)(6)**

8   **Because He Fails To Allege Facts Sufficient To State A Claim**

9       On a motion to dismiss pursuant to FRCP 12(b)(6), all allegations of material

10  fact are taken as true and construed in the light most favorable to the plaintiff. "The

11  court need not, however, accept as true allegations that contradict matters properly

12  subject to judicial notice or by exhibit. Nor is the court required to accept as true

13  allegations that are merely conclusory, unwarranted deductions of fact, or

14  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

15  Cir. 2001) (internal citations omitted).

16      In considering the allegations and judicially noticed facts properly before it, a

17  court considers whether the complaint states "a claim to relief that is plausible on its

18  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

19  *Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely

20  consistent with a defendant's liability, it stops short of the line between possibility

21  and plausibility of 'entitlement to relief.'" *Id.*

22      Critically, where a complaint and other allowable sources (i.e., exhibits and

23  judicially noticed matter) reveal an absolute defense or bar to recovery, the claims

24  are subject to dismissal under FRCP 12(b)(6). *ASARCO, LLC v. Union Pac. R. Co.*,

25  765 F.3d 999, 1004 (9th Cir. 2014).

26      Here, Plaintiff's claim should be dismissed for failure to state a claim.

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1. <u>Plaintiff cannot state a claim because the Article does not satisfy the commercial use requirement for his claim</u>

As previously noted, the Article on its face is a noncommercial news article, including educational commentary. But, by its nature, Plaintiff's Lanham Act claim protects only commercial interests. Federal unfair competition law, like trademark law, seeks to prevent consumer confusion—i.e., to ensure that consumers know what they are buying. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) ("Under the law of false endorsement, likelihood of customer confusion is the determinative issue.") (citing *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997)).

Viable claims involving a celebrity contain a common thread—the allegedly improper use of the plaintiff's likeness is an exploitation through commercial speech, usually through an advertisement. *See, e.g.*, *Allen v. National Video, Inc.* 610 F.Supp. 612 (S.D.N.Y. 1985) (where Woody Allen sued the defendant for using a look-alike in an advertisement promoting defendants' franchised video rental chain); *Tin Pan Appel v. Miller Brewing Co.*, 737 F.Supp. 826 (S.D.N.Y. 1990) (where Miller used look-alikes of the three-person rap group "The Fat Boys" in a television commercial promoting its beer); *White v. Samsung Electronics America, Inc.*, 971 F.2d 1385 (9th Cir. 1992) (where gameshow hostess Vanna White sued Samsung for the use of a robotic look-alike in a television commercial); *Wendt v. Host Intl'l, Inc.*, 125 F.3d 806 (9th Cir. 1997) (where the actors who played Cliff and Norm in the television show "Cheers" sued based on robotic look-alikes at Cheers-themed bars in airports); *Hebrew University of Jerusalem v. General Motors LLC*, 878 F.Supp. 2d 1021 (C.D. Cal 2012), vacated, 2015 WL 9653154 (C.D. Cal. 2015) (dismissing claims based on the use of Einstein's image in an ad for the car company).

The "core notion" of commercial speech is that it "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Co.*, 463 U.S. 60, 66 (1983) (citations and quotations omitted). As *Bolger* explains, three factors are helpful in

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

determining whether speech is commercial or noncommercial in nature: (1) whether the speech is an advertisement; (2) whether the speech references a specific product; and (3) whether the speech is economically motivated. *Id*. at 66–67 (noting that an economic motivation "*would clearly be insufficient by itself to turn the materials into commercial speech*" (emphasis added)). "The combination of *all* these characteristics [] provides strong support. . . that the [materials] are properly characterized as commercial speech." *Id.* at 67 (emphasis in original).

Here, the Article is fundamentally noncommercial in nature on its face. The Court has already answered *Bolger*'s first prong, properly concluding that the Article is "demonstrably not an advertisement."[15] The Article does not reference a specific product and provides no "call to action," asking the reader to engage in a commercial transaction, nor does the Article solicit business or encourage readers to use Defendants' products or services. The Article cannot be considered commercial speech when it consisted entirely of current financial news about tech stocks and educational commentary about what constitutes a "correction" and the role of corrections in equity markets.

That Snacks has *some* economic motivation is insufficient to strip the Article of First Amendment protection. *Bolger*, 463 U.S. at 67. Snacks seeks to educate consumers about the stock market so that they better understand their investment decisions. Since Defendants are broker-dealers where consumers can make investments, Defendants benefit from that investor education. But, Snacks readers are not obligated or even solicited to employ their newly found understanding of stock markets by using Defendants' products or services.

Accordingly, the Article constitutes noncommercial speech—it is not an advertisement, it is offered free of charge, it does not reference a specific product, and it does not make an offer or solicit business. Under no set of facts can Plaintiff provide evidence of the requisite commercial use to support his claim. Therefore,

---

[15] Order – ECF 29 at 8:1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   Plaintiff's claim should be dismissed.

2       2.   <u>Plaintiff's claim fails because it is barred, as a matter of law, by
3            the First Amendment</u>

4       The Article's content was newsworthy and provided educational commentary

5   relevant to the investing public, and it is therefore protected by the First Amendment.

6   It is well settled that "no cause of action will lie for the publication of matters of the

7   public interest, which rests on the right of the public to know and the freedom of the

8   press to tell it." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

9   The First Amendment defense extends "to almost all reporting of recent events[.]"

10  *Id.* (citation omitted). "The First Amendment requires that the right to be protected

11  from unauthorized publicity be balanced against the public interest in the

12  dissemination of news and information consistent with the democratic processes

13  under the constitutional guarantees of freedom of speech and of the press." *Yeager v.*

14  *Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1096 (E.D. Cal. Dec. 7, 2009) (citations

15  omitted). To balance these interests, courts must evaluate the "nature of the precise

16  information conveyed and the context of the communication." *Id.*

17      The context of the communication is particularly important, namely, whether

18  the communication amounts to commercial speech. For example, in *Downing*, the

19  defendant-clothing manufacturer used photographs of famous surf legends in its

20  commercial catalog, which included news information, but primarily promoted its

21  retail business. *Downing*, 265 F.3d at 1000–02. Because of its demonstrably

22  commercial character, the *Downing* Court found that the defendant's use of the

23  plaintiff's likeness amounted to "window dressing." *Id.* at 1002.

24      Similarly, the claims in *Yeager* related to communications about the

25  devastation wrought by Hurricane Katrina, which, while newsworthy, were clearly

26  intended to promote the defendant's wireless services. *Yeager*, 673 F.Supp.2d at

27  1098–99. In *Yeager*, Cingular Wireless's communication highlighted a problem—

28  the need for emergency preparedness following hurricanes—and specifically

referenced its own products and services as the solution to that problem as a marketing tactic. *Id.* The newsworthy content of the *Yeager* communication was secondary to the promotional aspects of the advertisement. Consequently, the overtly commercial nature of the *Downing* and *Yeager* communications swayed the respective courts to find that the First Amendment defense did not apply.

News reporting that incorporates expressive elements (and may even possess commercial characteristics) presents a unique variety of speech. When news reporting is "'inextricably entwined' with expressive elements, [such that] they cannot be separated out 'from the fully protected whole,'" the communication is still entitled to full First Amendment protection. *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (finding that that an altered movie still of Dustin Hoffman from the movie "Tootsie" used by Los Angeles Magazine to market designer clothing was ultimately noncommercial speech despite its commercial character, and as such was fully protected by the First Amendment) (quoting *Gaudiya Vaishnava Soc'y v. City & County of San Francisco*, 952 F.2d 1059, 1064 (9th Cir.1990) (as amended)). In *Hoffman*, the Ninth Circuit explained that if the celebrity's image—the "Tootsie" photograph—had been used in a traditional advertisement the result may have been different. But, since the magazine was not paid by the clothing designers and because the communication did not "advance a commercial message," the magazine article, when considered as a whole, was a protected combination of "photography, humor, and visual and verbal commentary" on a newsworthy topic. *Id.*

The *Hoffman* Court relied on commonsense principles that differentiate commercial speech from other varieties, concluding that while the article contained commercial elements, it was "not a simple advertisement." *Id.* The Court reached this conclusion despite the fact that Los Angeles Magazine used Hoffman's image to "attract attention." *Id.* at 1186. The Court explained: "A printed article meant to draw attention to the for-profit magazine in which it appears, however, does not fall outside

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

of the protection of the First Amendment because it may help to sell copies." *Id.* (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1197–98 (9th Cir.1989) (although defendant may have published feature solely or primarily to increase circulation and therefore profits, the article is not thereby purely commercial or for purposes of advertising)). As such, the magazine article was entitled to First Amendment protection, and celebrity's false endorsement claim under the Lanham Act failed as a matter of law.

As an editorial news report, the Article falls squarely within the protection afforded by the First Amendment. As noted, the Article provides news updates on an important matter of public concern (i.e., corrections in the stock market), and its noncommercial nature bolsters that protection. Unlike the communications in *Downing* and *Yeager*, the Article does not reference a specific product or service and does not solicit business. Whereas *Downing* and *Yeager* involved advertisements, here, the Article passively presents newsworthy content. Defendants' use of the image and paraphrase at issue is relevant to the topic being discussed—corrections in the stock market. These materials effectively "tee up" the topic, linking the materials and the newsworthy topic in a meaningful and humorous way.

Even if the Article could be construed as having commercial elements, the Article's expressive use of the image and paraphrase is "inextricably entwined" with the Article as a whole, and thus, the entire news report is entitled to full First Amendment protection. Like *Hoffman*, the Article is "demonstrably not an advertisement,"[16] and established law supports the conclusion that the Article is noncommercial speech. As such, reasonable consumers would not interpret the Article as amounting to an endorsement. The Article's clever use of a headline image and caption to illustrate a point to its readers does not strip the news article of its First Amendment protection.

Accordingly, the Article is entitled to full protection under the First

---

[16] Order – ECF 29 at 8:1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Amendment, and Plaintiff's claim fails as a matter of law.

> 3. <u>Plaintiff's Lanham Act claim fails under the *Rogers* Defense based on Defendants' expressive use of the image and phrase</u>

Plaintiff's Lanham Act claim should also be dismissed because Defendants' use of the image and paraphrase was expressive. Courts construe the Lanham Act narrowly when First Amendment values are involved. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (9th Cir. 1989) ("Because overextension of Lanham Act restrictions in the area of [artistic expression] might intrude on First Amendment values, [courts] must construe the Act narrowly to avoid such a conflict."). Accordingly, under the *Rogers* test, courts must balance the "trademark and similar rights protected by § 43(a) of the Lanham Act against First Amendment rights in cases involving expressive works." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013). The *Rogers* test applies to the title and body of a creative work which includes the use of another's likeness. *Id.* at 1242 (explaining that the "only relevant legal framework for balancing the public's right to be free from consumer confusion about [the plaintiff]'s affiliation with [the defendant's goods or services] and [the defendant]'s First Amendment rights in the context of [a Lanham Act] § 43(a) claim is the *Rogers* test.").

For the *Rogers* test to apply, the work which references the plaintiff's mark, (or, as here, plaintiff's likeness) must (1) be expressive in nature, and (2) be artistically relevant to the plaintiff's mark/likeness. *Id; see also Gordon v. Drape Creative, Inc.,* 897 F.3d 1184 (9th Cir. 2018) *superseded on other grounds by* 909 F.3d 257 (Nov. 20, 2018). Artistic relevance is a "low threshold." *Rogers*, 875 F.2d at 999. "The level of [artistic] relevance merely must be above zero[.]" *E.S.S. Ennm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008). In other words, the requirement is met unless the plaintiff's likeness possesses "***no*** artistic relevance to the underlying work ***whatsoever***." *Id.* at 1100 (emphasis in original). Even a work that contains both artistic and commercial elements is still subject to the *Rogers* test. *Rogers*, 875 F.2d at 998; *see also Mattel v. MCA Records*, 296 F.3d 894,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

902 (9th Cir. 2002) ("A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the [work], but they do not expect it to identify the publisher or producer.")

The Ninth Circuit has explained that the *Rogers* test typically involves marks/likenesses which have "such cultural significance that it has become an integral part of the public's vocabulary." *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 887 (N.D. Cal. July 20, 2010). Citing *Mattel*, the *Rebelution* Court explained that "when a trademark owner asserts a right to control how we express ourselves— when. . . the mark [] has taken on an expressive meaning apart from its source-identifying function—applying the traditional test fails to account for the full weight of the public's interest in free expression." *Id.* (quotations omitted). Thus, the *Rogers* test addresses "marks that have entered the cultural lexicon because the trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function." *Id.*

*Gordon* is illustrative of the *Rogers* test. There, the defendant's greeting cards made a verbatim use of the plaintiff's trademarked tagline "Honey Badger Don't Care." *Gordon*, 897 F.3d at 1188–89. First, the Court determined that the defendant's greeting cards were expressive because they "evince[d] 'an intent to convey a particularized message'. . . [which is likely to] be understood by those who viewed it.'" *Id.* at 1194 (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010)). Next, the Court found that use of the phrase was "certainly relevant to defendant's cards; the phrase is the punchline on which the card's humor turns." *Id.* Lastly, the Court asked "whether the mark is relevant to the defendant's own **artistry**." *Id.* (emphasis in original). The Court explained that "the mark must both relate to the defendant's work and the defendant must add his own artistic expression beyond that represented by the mark." *Id.* at 1195. Since the defendant simply used the trademarked phrase word for word and did not add any artistic contribution to it, genuine issues of fact remained which prevented the court from ruling as a matter of

law. *Id.* at 1196.

Critical to the analysis in this case, the Ninth Circuit later clarified an aspect of the *Rogers* test's second prong. The Court explained that although an affirmative statement of sponsorship or endorsement is not the only means of establishing that the defendant's use of the plaintiff's mark is explicitly misleading, a court must consider the "degree to which the [defendant] use[d] the mark in the same way as the [plaintiff]." *Gordon*, 909 F.3d at 269–70. The Ninth Circuit noted that in cases where the defendant used the mark in a "different context—often in an entirely different market" the *Rogers* defense was successful. *Id.* at 270. Similarly, where the defendant added "expressive content . . . beyond the mark itself" the *Rogers* defense applies and the claim may be dismissed *as a matter of law*. *Id.* Ultimately, unlike the facts alleged here, the Ninth Circuit found that because the defendant's greeting cards made a *verbatim* use of the plaintiff's trademarked phrase, genuine issues of fact remained which preluded the court from ruling as a matter of law. *Id.*

Here, like the greeting cards in *Gordon*, the Article conveys a particularized (and humorous) message that is likely to be understood by those who view it—the importance of stock market corrections—and is thus an expressive work. The Article makes light of the underlying subject matter (i.e., economic fluctuations) in a comical manner vis-a-vis a pop-culture reference. In this sense, Defendants' use of this material effectively amounts to a parody, which may be considered inherently expressive or artistic because it uses those materials to convey a new meaning. However, in stark contrast to *Gordon*, Defendants' use of the phrase is not only artistically relevant—it is the punchline on which the Article's humor turns—it is also relevant to the Defendants' own artistry. By changing the first word from "check" to "correct," Defendants have added their own expressive content to the phrase. The simple fact that Defendants altered the phrase and used it as a figure of speech is sufficient for the Article to be deemed expressive and artistically relevant— and not explicitly misleading—for purpose of the *Rogers* test.

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Moreover, despite Plaintiff's conclusory allegations to the contrary, the market in which the purported misuse occurred is quite obviously different than that in which Plaintiff operates. Plaintiff operates in the entertainment industry (specifically, music and movies). On the other hand, Robinhood operates in the financial services industry. The fact that each party operates in entirely different markets further obviates any risk of consumer confusion and supports the application of the *Rogers* test.

Any rights that Plaintiff could claim in his "signature catchphrase"[17] are undermined by the fact that the phrase has become an integral part of the public's vocabulary. "Check yourself before you wreck yourself," and any similar variation, is widely used in American pop culture, and Plaintiff does not have the right to control the public discourse or limit the manner in which we express ourselves. The phrase has taken on a meaning that is separate and apart from any source-identifying function it may have once had, and any interest the Plaintiff can claim in this phrase is outweighed by the public's interest in free expression.

Moreover, the Article does not mislead consumers. The Article does not affirmatively represent that Plaintiff is in any way affiliated with Defendants' business or news reports, and in fact never even mentions Plaintiff's actual or character name. Ultimately, no reasonable consumer would interpret the comical nature of the Article's reference as suggesting any form of endorsement or affiliation. Even if the Defendants' use were to create the possibility that it might suggest such a relationship, this risk is outweighed by the danger in restricting this type of expressive conduct, and the Court must construe the Lanham Act narrowly to avoid such a conflict.

4.  <u>As a copyrighted work, only the copyright owner has all exclusive rights in the movie still frame, and Plaintiff cannot bypass that exclusivity with unfair competition law</u>

Plaintiff's Lanham Act claim fails because he has not alleged that he owns the

---

[17] First Amended Compl., ¶ 17 – ECF No. 30 at 5:3.

CASE NO. 3:21-cv-02304-LB

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

copyright for the film from which the image was taken. Lanham Act § 43(a) provides a remedy for the "false designation of origin, false or misleading description of facts, or false or misleading representation of fact," which is likely to result in consumer confusion. 15 U.S.C. § 1125(a)(1). However, as the Supreme Court has cautioned, "in construing the Lanham Act, we have been 'careful to caution against the misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)). More specifically, if the issue is a defendant's representation regarding the origin of the creative work conveyed by the copyrighted material, "allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law . . ." *Id.* This is because "§ 43(a) does not have boundless application as a remedy for unfair trade practices." *Dastar,* 539 U.S. at 30 (2003) (citation omitted).

At its core, Lanham Act § 43(a) creates a federal cause of action for the infringement of unregistered trademarks—prohibiting acts that deceive consumers and impair another's goodwill. *Id.* (citing McCarthy, § 27:7). For example, § 43(a) prohibits actions like Coca-Cola passing off its products as Pepsi-Cola or vice-versa. *Id.* at 32. However, the "Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* at 33.  As *Dastar* makes clear, it does not extend to claims that are essentially copyright claims.

While *Dastar* involved a false advertising claim under 15 U.S.C. § 1125(a)(1)(B)—not a false association claim under § 1125(a)(1)(A)—*Dastar*'s central holding is true in either context: courts must not sustain an action that effectively amounts to a copyright infringement claim under the guise of federal unfair competition law.

The essence of Plaintiff's claim is that by using an image containing him when it published the Article, Defendants relied on a false representation which is likely to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

cause consumer confusion.  Plaintiff points to a third-party copyright (i.e., the image) to make this showing.  However, as *Dastar* indicated, allowing Plaintiff to assert rights under Lanham Act § 43(a) based on a third-party's copyrighted material would "create a species of mutant copyright law" and, here, would effectively usurp the movie studios' copyrights in its film.  Presumably, the movie studios who produced the 2007 movie *Are We Done Yet?* from which the image was taken possess the exclusive rights in the image at issue.[18]  Plaintiff cannot bypass this exclusivity by relying on federal unfair competition law.

Critically, the Article contains no "false designation of origin, false or misleading description of fact, or false or misleading representation of fact."  The Article does not state that the Defendants are affiliated with or authorized by Plaintiff, and the mere use of an image from another's copyrighted work does not suggest any such relationship. Online news reports frequently use third-party images to illustrate the concepts being discussed in the body of the article.  As such, no reasonable consumer would be misled by its contents or mistakenly believe that Plaintiff has endorsed or sponsored Defendants.  Simply put, Defendants' use of the image in this manner—to illustrate and make light of stock trends and corrections—is simply "of no consequence" to the general consuming public.  Plaintiff's Lanham Act claim should be dismissed.

5. <u>Plaintiff cannot base any of his claims on the phrase "Check Yo Self, Before You Wreck Yo Self"</u>

a. <u>The phrase "Check Yo Self, Before You Wreck Yo Self" does not identify Plaintiff</u>

To the extent that any of Plaintiff's claims rely on the "Check Yo Self" phrase (the "Phrase") or any derivative, the claims are untenable because the Phrase does not identify Plaintiff.

---

[18] Order – ECF No. 19 at 3:2, n. 4 (taking judicial notice of the fact that the image comes from the movie *Are We Done Yet?*)

CASE NO. 3:21-cv-02304-LB

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

To be actionable under Lanham Act § 43(a), the defendant's use must be based on "a distinctive attribute of the celebrity's identity." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015). In other words, the defendant's use must clearly identify the plaintiff. *See* J. McCarthy, *Trademark and Unfair Competition* § 28:15 (5th ed. 2021). Because Plaintiff can claim no rights in the copyrighted image in this case, his claims hinge on whether Defendants' use of the phrase "correct yourself, before you wreck yourself" clearly identifies Plaintiff.

The phrase "check yourself before you wreck yourself" is widely used in American pop culture to convey a sense of seriousness by the speaker. In essence, the phrase means that the listener should proceed cautiously if he or she cannot backup the assertion being made. Urban dictionary defines the phrase as: "Take a step back and examine your actions, because you are in a potentially dangerous or sticky situation that could get bad very easily. Often in a harmful manner."[19]

Because of its widespread use, the phrase does not and cannot identify any one individual, including Plaintiff. A simple online search of the phrase shows just how ubiquitous the phrase has become. The phrase is used in scholarly articles,[20] popular movies,[21] online blogs,[22] and "#checkyourself" has over 213,000 posts on the popular social media platform Instagram—and often used very similarly to how Robinhood has used it.[23] In addition, the phrase has spawned numerous comical parody variations, including: "Text Yo'self Beefo You Wreck Yo'self",[24] "Respect Yourself Before You Wreck Yourself",[25] "Stretch Yourself Before You Wreck Yourself",[26] "Czech Yourself Before You Wreck Yourself,"[27] and "Trek Your Self Before You

---

[19] Fact No. 6, Request for Judicial Notice.
[20] Fact No. 7, Request for Judicial Notice.
[21] Fact No. 8, Request for Judicial Notice.
[22] Fact No. 9, Request for Judicial Notice.
[23] Fact No. 10, Request for Judicial Notice.
[24] Fact No. 11, Request for Judicial Notice.
[25] Fact No. 12, Request for Judicial Notice.
[26] Fact No. 13, Request for Judicial Notice.
[27] Fact No. 14, Request for Judicial Notice.

CASE NO. 3:21-cv-02304-LB
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

Wreck Yourself," [28] to name a few.

If there ever was a time when the phrase could be said to identify Plaintiff (and based on the historical widespread use, that is unlikely), such time has long since passed. Over the past three decades since Plaintiff released his song, the phrase has fallen into the public domain and is now free for all to use. A helpful analogy is when a trademark becomes generic and no longer identifies the source of the goods it once did; instead, the generic term takes on its own meaning and represents the good themselves. For this reason, when a trademark becomes generic, even a federally registered trademark is subject to cancelation at any time. 15 U.S.C. § 1064(3) (Lanham Act § 14(3)).

As Judge Learned Hand once explained, in holding ASPIRIN to be generic, "[t]he single question, as I view it, in all these cases is merely one fact: What do buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.*, 272 F. 505 (D.N.Y. 1921). Modern day consumers do not possess a mental association between the phrase and Defendant—the phrase has no source-identifying significance. In other words, the phrase is not a brand and it carries no consumer recognition as such. The phrase is merely a common, slang phrase used by all walks of life in American culture.

Because Plaintiff has no protectable interest in the Phrase, any claim relying on such interest fails as a matter of law.

        b.   <u>Plaintiff's use of the Phrase in the Article amounts to a nonactionable parody</u>

Regardless of Plaintiff's alleged/perceived trademark (or related) rights in the Phrase, the Article was parodying the Phrase, by telling readers to "correct yourself" (rather than "check yo self") in the context of an article about market corrections. As such, the parody is non-actionable.

Like other forms of intellectual property, a trademark may be the subject of a

---

[28] Fact No. 15, Request for Judicial Notice.

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

parody. When a trademark is parodied, by definition, there is no trademark infringement *because there is no likelihood of confusion*. As McCarthy explains, "the ordinary viewer will not be deceived or confused: she will see the defendant's use is just making fun of the plaintiff's trademark or its owner." J. McCarthy, *Trademarks and Unfair Competition* § 31:153 (5th ed. 2021); *see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 267 (4th Cir. 2007) (CHEWY VUITTON is parody of LOUIS VUITTON); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 445, 117 U.S.P.Q.2d 1537 (S.D.N.Y. 2016), judgment aff'd, 2017 Copr. L. Dec. P 31026, 2016 WL 7436489 (2d Cir. 2016) ("In some cases . . . it is better to 'accept the implied compliment in [a] parody' and to smile or laugh than it is to sue.").

The Ninth Circuit has long recognized, and indeed supports, parodies of trademarks. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997) ("Parody is regarded as a form of social and literary criticism, having a socially significant value as free speech under the First Amendment."); *Mattel, Inc. v. Walking Mountain Prods.* 353 F.3d 792, 807 (9th Cir. 2003) (finding that artistic photographs parodying BARBIE doll in incongruous situations are neither copyright infringement nor trademark infringement. "Where a mark assumes such cultural significance, First Amendment protections come into play."). By using another's mark to conjure up an association, while at the same time identifying one's own goods/services, the parodic use becomes a nominative fair use under the trademark analysis. *Mattel*, 353 F.3d at 810 ("Where use of [a trademark] is grounded in defendant's desire to refer to the plaintiff's product as a point of reference for defendant's own work, [the] use is nominative.")

Here, Defendants are making a parodic use of the phrase "check yourself before you wreck yourself" by changing the first word to "correct." In doing so, Defendants conjure up the association with the popular saying and comically modify it using a rhyme scheme to identify its own editorial commentary related to the stock

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

market, much in the same way CHEWY VUITTON is a play on LOUIS VUITTON. Contrary to Plaintiff's assertions, this change in wording was not a misquote[29]; rather, Defendants deliberately changed this word to effectuate the parody.

This light-hearted play on words does not, and legally cannot, result in consumer confusion because the ordinary consumer will recognize that Defendants' use is making fun of the commonly-used slang phrase. In other words, though the recognition of the parody, consumers automatically understand that no certain trademark owner is affiliated with this use, and any consumer confusion is therefore avoided. Accordingly, Defendants' use of the phrase amounts to nominative fair use because it uses this phrase to identify itself.

## IV.   CONCLUSION

Plaintiff's lone remaining claim fails, as a matter of law, for numerous reasons. He fails to plead facts that give him standing to raise any of his claims. His theory of liability depends on a commercial use when the Article was clearly a news piece complimented by commentary. The claim conflicts with copyright law, and the Article is absolutely protected under various First Amendment principles. His amended complaint should be dismissed with prejudice.

Dated: July 20, 2021

BROWNSTEIN HYATT FARBER SCHRECK, LLP


By: /s/ Mitchell J. Langberg
    MITCHELL J. LANGBERG
    Attorneys for Defendants
    ROBINHOOD MARKETS, INC.
    AND ROBINHOOD FINANCIAL,
    LLC

---

[29] First Amended Compl., ¶ 40 – ECF. No. 30 at 11:7