BROWNSTEIN HYATT FARBER SCHRECK, LLP
MITCHELL J. LANGBERG, SBN 171912
mlangberg@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, California  90067-3007
Telephone:    310.500.4600
Facsimile:     310.500.4602

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew J. McKissick (*Pro Hac Vice Admitted*)
mmckissick@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:    702.464.7054
Facsimile:     702.382.8135

Attorneys for Defendants
ROBINHOOD MARKETS, INC. and
ROBINHOOD FINANCIAL, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| O'SHEA JACKSON, SR. (p/k/a "ICE CUBE"), an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROBINHOOD MARKETS, INC., a Delaware corporation; ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>                    Defendants. | Case No. 3:21-cv-02304-LB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)**<br><br>Date        August 26, 2021<br>Time:       9:30 a.m.<br>Dept:       Courtroom B, 15th Floor<br><br>Magistrate Judge:<br>                    Honorable Laurel Beeler |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

    A.    Plaintiff Lacks Standing ................................................................................. 2

    B.    The Article is Noncommercial Speech that is Fully Protected by the First Amendment ............................................................................................ 6

    C.    The Article Parodies Plaintiff ........................................................................ 9

    D.    The Article Satisfies the *Rogers* Defense .................................................... 10

    E.    Plaintiff's Lanham Act Claim Conflicts with Copyright Law ..................... 13

    F.    Plaintiff's "Catchphrase" Is Generic and Does Not Identify Plaintiff ........ 13

III.  CONCLUSION ...................................................................................................... 15

CASE NO.  3:21-cv-02304-LB

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ...............................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 3

*Bolger v. Youngs Drug Prod. Corp.*,
  463 U.S. 60, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983) ............................... 7, 8

*Brown v. Electronic Art, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ......................................................................... 11

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ......................................................................................... 9

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2012) ......................................................................... 9

*Dastar v. Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ......................................................................................... 13

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ....................................................................... 7, 8

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ......................................................................... 13

*Estate of Fuller v. Maxfield & Oberton Holding, LLC*,
  906 F. Supp. 2d 997 (N.D. Cal. 2012) ........................................................... 5

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ..................................................................... 11, 12

*Kournikova v. General Media Commc'ns Inc.*,
  278 F. Supp. 2d 1111 (C.D. Cal 2003) ........................................................... 4

*Martin v. Wendy's Int'l, Inc.*,
  183 F. Supp. 3d 925 (N.D. Ill. 2016) ............................................................. 5

CASE NO.  3:21-cv-02304-LB

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)

*Martin v. Wendy's Int'l, Inc*
  Case No. 15 C 6998, 2017 WL 1545684 (N.D. Ill. Apr. 28, 2017) ............................ 6

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) .................................................................. 14, 15

*Monk v. N. Coast Brewing Co. Inc.*,
  2018 WL 646679 (N.D. Cal. Jan. 31, 2018) ...................................................... 5

*Regents of Univ. of Calif. v. United States Dept. of Homeland Security*,
  908 F.3d 476 (9th Cir. 2018) *reversed in part, vacated in part on other
  grounds by* 140 S.Ct. 1891 (Jun. 18, 2020) ................................................... 7

*Rogers v. Grimaldi*,
  875 F.2d 994 (9th Cir. 1989) .................................................... 10, 11, 12, 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................... 3

*Yeager v. Cingular Wireless LLC*,
  673 F. Supp. 2d 1089 (E.D. Cal. 2009) ...................................................... 7, 8

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...................................................................... 7

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

CASE NO.  3:21-cv-02304-LB

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

When this Court dismissed Plaintiff's original complaint, it expressly found that, on its face, the image and Article about which Plaintiff complains "does not suggest that the plaintiff endorsed Robinhood."[1] Despite taking the opportunity to amend his complaint, Plaintiff has not alleged a single new *fact* that supports his false endorsement case. Nor could he. Neither the congressional testimony he cites nor the recitation of case law he offers in his disguised motion for reconsideration change the simple fact that the illustration in the Article cannot be understood to be an endorsement. Instead of addressing the illustrative use issue head on, Plaintiff doubles down on his conclusory assertion that Defendants' March 8, 2021 newsletter (the "Article") was an "Advertisement" in direct contradiction of this Court's previous ruling.[2]

Fatal to Plaintiff's standing, as well as his substantive claim, is the fact that his unsupported conclusions do not overcome what this Court already decided as a matter of law—there was no advertisement and there was no endorsement. There is no basis for the Court to deviate from what it already determined. In today's digital world, where movie stills are used as memes, GIFs, and other novel forms of online content in countless communications every day, Plaintiff's suggestion that such an illustrative use is akin to an endorsement reflects an unsupported mischaracterization of online content. The type of illustration used in the Article is commonplace and understood by all reasonable people for what it is: a visual representation of the idea being conveyed. Such illustrations are an indelible part of our modern-day lexicon, and as such, the Article's meme-like reference to Plaintiff does not—and legally cannot—create a likelihood of consumer confusion. The

---

[1] Order Granting Motion to Dismiss and Denying Motion to Strike As Moot (the "Order") – ECF No. 29 at 7:19–21 ("Robinhood used Ice Cube's picture and paraphrase of a line from his song to illustrate an article about market corrections. That illustration does not suggest that the plaintiff endorsed Robinhood. . .").  Citations refer to material in the Electronic Case File ("ECF"), where appropriate, pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id*. at 7:23–8:1 ("The plaintiff characterizes the newsletter as an advertisement, not a newsletter. But he attaches the newsletter, which is demonstrably not an advertisement.").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1  Article's illustrative use of the movie still and paraphrase is categorically a non-

2  endorsement.

3  Accordingly, Plaintiff continues to lack standing to bring his claim because he fails

4  to allege facts necessary to show that consumers are likely to mistakenly believe that

5  Plaintiff sponsors, endorses, or is otherwise affiliated with Defendants' products or services.

6  Plaintiff's conclusory *Sleekcraft* analysis cannot be used to bypass his requisite factual

7  showing at the pleading stage. Indeed, the FAC's reliance on legal conclusions unsupported

8  by facts and irrelevant congressional testimony and SEC filings is an attempt to mask its

9  inability to remedy the inadequacies the Court identified in his previous complaint.

10  The FAC also should be dismissed because Defendants' affirmative defenses bar the

11  claim, as a matter of law. Among other things, Defendants enjoy the same First Amendment

12  protections as others, including those who: 1) report on newsworthy events (even if there is

13  a commercial motivation for such reporting), 2) parody other people or their work, or 3)

14  satisfy the *Roger* test, which requires only minimal creativity to protect those who have

15  published their own expressive works. Moreover, because the image used was a still shot

16  from a copyrighted work, Plaintiff's claim is preempted by copyright law.

17  The Court's conclusion that there was no advertisement and there was no

18  endorsement, coupled with Plaintiff's failure to plead new *facts* on those issues, requires

19  that the FAC be dismissed with prejudice. Even if Plaintiff had somehow cured the fatal

20  deficiencies in his original complaint, dismissal would still be required because, as a matter

21  of law, the defenses asserted defeat Plaintiff's claim. For these reasons, the Court should

22  grant the Defendants' Motion to Dismiss the FAC (the "Motion").

23  ## II.    ARGUMENT

24  ### A.    Plaintiff Lacks Standing

25  The Court already found that Plaintiff lacks standing because the Article

26  fundamentally does not suggest an endorsement. With no new relevant facts, Plaintiff's

27  unsupported conclusions change nothing. He argues that he has standing because he has an

28  economic interest in his celebrity status, citing *Lexmark* and other false *advertising* cases (a

claim not involved here).[3] But Defendants did not challenge his alleged economic interest and did not rely on *Lexmark* in the Motion at all. As this Court has already explained, Plaintiff's theory of liability is premised upon the notion that the Article "suggested [Plaintiff's] endorsement of Robinhood's products."[4] However, Plaintiff still has not pled a viable false endorsement claim because he has failed to allege facts showing that a *likelihood* of consumer confusion has resulted from the Article. The mere *possibility* of consumer confusion is insufficient.

Plaintiff's allegations "must contain sufficient factual matter. . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Critically, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted).

The FAC remains devoid of the factual allegations needed for the Court to draw the reasonable inference that the Article suggests that Plaintiff endorses Defendants' products or services. Plaintiff points to his recitation of the *Sleekcraft* factors and cursory legal analysis to show the "specific detail[s]" supporting his claim of consumer confusion.[5] But this analysis consists only of conclusions with no factual support. Plaintiff's complaint simply argues that the *Sleekcraft* factors are met. However, the Court may not assume the truth of legal conclusions merely because Plaintiff casts them as factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Consequently, the FAC does not support a right to relief. Plaintiff's conclusory assertions and mere recitation

---

[3] Opposition to Motion to Dismiss First Amended Complaint ("Opposition") – ECF No. 34 at 11:23–13:6.
[4] *Id.* at 7:18–19.
[5] *Id.* at 9:24–25 (citing FAC – ECF No. 30 at 12:3–13:19 (listing the *Sleekcraft* factors)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1  of the elements of his cause of action cannot cure this fatal defect.

2      Plaintiff's own authority, *Kournikova*, demonstrates the burden a plaintiff must meet

3  when alleging facts that support a likelihood—as opposed to the mere possibility—of

4  consumer confusion, as necessary to support a false endorsement claim. *Kournikova*

5  involved the sale of adult magazines, which the defendant promoted using false

6  information—*i.e.*, that the famous tennis star was included in the adult content. *Kournikova*

7  *v. General Media Commc'ns Inc.*, 278 F. Supp. 2d 1111 (C.D. Cal 2003). Even though the

8  defendant explicitly stated: "Exclusive Anna Kournikova Caught Close Up on Nude

9  Beach," the Ninth Circuit held that this fact, among others, "at most raises the *possibility*,

10  as opposed to the *likelihood*, of [consumer] confusion." *Id.* at 1127–28 (emphasis added).

11  As such, the defendant's conduct did not amount to an endorsement, and the celebrity's

12  false endorsement claim failed as a matter of law. *Id.* at 1128 ("Particularly on the question

13  of confusion, Kournikova's case founders [sic] because the 'mere possibility that consumers

14  may be misled is insufficient to prevail on an endorsement claim.'") (quoting *Cairns v.*

15  *Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1221 (C.D. Cal. 2000).[6] Further, because Anna

16  Kournikova is a celebrity and since she failed to show that the publisher acted with actual

17  malice, her false endorsement claim was barred by the defendant-publisher's First

18  Amendment rights. *Id.* at 1128–29.

19      In stark contrast to *Kournikova*, Defendants made no such explicit reference to

20  Plaintiff at all. The Article mentions neither his real name nor his stage name, and the

21  illustrative use of the movie still and the paraphrase certainly does not suggest any such

22  endorsement, as this Court has already properly concluded.[7] Under controlling Ninth Circuit

23  ───────────────

24  [6] *Kournikova* was decided on a summary judgment motion. However, the Court held, as a matter of law, that "possibility" of confusion does not satisfy the "critical issue of actual confusion." Given the opportunity to amend, Plaintiff offers nothing more than the bald

25  assertion in Paragraph 42 of the amended complaint that "there *is* evidence of actual confusion" (emphasis added). Yet, even if application of the *Sleekcraft* factors was

26  appropriate in this context, none of the facts alleged, even if all of them are taken as true, support anything other than the mere possibility of confusion (at best) that the Ninth

27  Circuit expressly found to be insufficient.
[7] Order – ECF No. 29 at 7:19–21 ("Robinhood used Ice Cube's picture and paraphrase of

28  a line from his song to illustrate an article about market corrections. That illustration does not suggest that the plaintiff endorsed Robinhood. . .").

law, the mere possibility of consumer confusion is insufficient to sustain a false endorsement claim under the Lanham Act, and as amended, the FAC still fails to allege any facts that plausibly show that Plaintiff is entitled to relief.

Plaintiff argues that the question of consumer confusion is not properly decided at the pleading stage. However, the issue is whether Plaintiff has sufficiently alleged *facts* to plausibly plead likelihood of consumer confusion, which is an issue that must be addressed at the pleading stage. Tellingly, the plaintiffs in the two cases on which Plaintiff primarily relies, *Fuller* and *Monk*, presented actual facts, not merely legal conclusions, showing a likelihood of consumer confusion, which prevented the Court from ruling as a matter of law at the pleading stage.[8] Plaintiff presents these cases to suggest that he should be entitled to a presumption that the Article suggests an endorsement. But the Lanham Act contains no language creating such a presumption, and federal courts do not presume the validity of a claim without supporting factual allegations. Federal pleading standards for standing (and substantive claims) require that much.

Simply put, Plaintiff continues to rely on purely conclusory statements to support his claim.[9] Plaintiff still fails to allege facts linking any alleged injury to an economic interest in his celebrity status to a legally viable claim that the alleged injury was a result of Defendants creating a likelihood of consumer confusion. The false endorsement claim is not plausible on its face. *See Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 936 (N.D. Ill. 2016) (granting motion to dismiss, explaining that where there "is no language directly or indirectly suggesting that plaintiff endorsed defendants' products, nor do[es] the plaintiff's name. . . appear in a context that might, by its nature, plausibly mislead

---

[8] Oppo. – ECF No. 34 at 15:6–27 (citing *Estate of Fuller v. Maxfield & Oberton Holding, LLC*, 906 F. Supp. 2d 997, 1002–03 (N.D. Cal. 2012) (where the plaintiff and defendant had a licensing arrangement and defendant made prominent use of the plaintiff's name to actively promote the defendant's products, even going so far as to explain that the defendants' products were inspired by and named after plaintiff's discovery of the "buckminsterfuller molecule"); *id.* 15:27–16:13 (citing *Monk v. N. Coast Brewing Co. Inc.*, 2018 WL 646679 (N.D. Cal. Jan. 31, 2018) (where the parties had a verbal licensing agreement in place, for which the defendant exceeded the scope by using images of the famous jazz musician on beer labels and other advertisements, among other things).
[9] *See, e.g., id.* at 13:1–4.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

consumers" the false endorsement claim must be dismissed.); *see also*, *Martin v. Wendy's Int'l, Inc.,* Case No. 15 C 6998, 2017 WL 1545684 (N.D. Ill. Apr. 28, 2017) (dismissing plaintiff's amended complaint because he did not "meaningfully add[] to the factual allegations he had already made."). Because it fails to plead sufficient facts to support a viable legal theory, the FAC is fatally deficient.

On this basis alone, Plaintiff lacks standing, and the FAC should be dismissed.

### B.      The Article is Noncommercial Speech that is Fully Protected by the First Amendment

Plaintiff's strained efforts to convert Defendants' editorial news reporting into commercial speech to strip the Article of First Amendment protection fall short.[10] Under Plaintiff's theory, an entity wishing to inform the public about important matters of public concern must have no connection whatsoever, either directly or indirectly, to any profit-generating activities.[11] This is not the legal standard and Plaintiff ignores that most all businesses, even those that report the news, attempt to make money one way or another.

Plaintiff continues to point to the "Sign Up" feature on Defendants' website to show that the Article amounts to commercial speech.[12] Plaintiff attempts to bolster this tenuous link by characterizing Defendants' SEC filings and congressional testimony as "admissions" that Defendants' Snacks articles are not only commercial speech but are financial products in and of themselves.[13]

All that is required to expose the absurdity of Plaintiff's argument is to visit the website for virtually any newspaper or magazine, which generally ask customers to "sign

---

[10] Order – ECF No. 29 at 7:23–8:1 (concluding that the Article is "demonstrably not an advertisement").

[11] Plaintiff, ironically, should understand that a profit motive does not automatically strip speech of its First Amendment protection given his historic battles to defend *his* First Amendment right to profit from creating and performing music that included, among other things, homophobic, misogynistic, and anti-Asian lyrics. *See* Jon Pareles, *POP VIEW; Should Ice Cube's Voice Be Chilled?*, N.Y. TIMES, Dec. 8, 1991 (available at: https://www.nytimes.com/1991/12/08/arts/pop-view-should-ice-cube-s-voice-be-chilled.html).

[12] Oppo. – ECF No. 34 at 17:4–7 ("[T]he website's main navigation menu prominently features an offer for the user to "Sign Up" for the Robinhood stock trading app – a clear an omnipresent solicitation for Defendants' goods and services.").

[13] *Id.* at 21:14–15.

CASE NO.  3:21-cv-02304-LB

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

up" and oftentimes are behind paywalls that require a subscription. For example, the website for the *San Francisco Chronicle* (the "Chronicle") (available at: https://www.sfchronicle.com/) features a "Subscribe" button in the top navigation menu.[14] Such features are commonplace in the news industry. And, of course, the print version of the Chronicle (and most any newspaper) is replete with advertisements for goods and services that can be found alongside First Amendment protected news articles, editorial opinions, cartoons, and more. To watch the nightly news on television, viewers are also subjected to commercials for goods and services. Entertainers like Plaintiff and businesses like the Chronicle are free to pursue profits while still being afforded free speech protection. That is not enough to make any particular article "commercial," and it does not make the use of the image in the Article an "advertisement." Nothing in Plaintiff's allegations changes the Court's initial ruling that the article is "demonstrably not an advertisement."[15]

In fact, the Chronicle's "Subscribe" button is more overtly commercial than Defendants' "Sign Up" button. By asking customers to "Subscribe," the Chronicle is actively soliciting a commercial transaction through a direct offer to read additional content published by the news organization, as the term "subscribe" is universally understood as the provision of goods or services in exchange for ongoing, periodic payments. Conversely, Defendants' "Sign Up" button (which readers do not need to select in order to read any Snacks articles) allows readers to separately obtain a brokerage account for free. In fact, readers need not "Sign Up" to continue reading Defendants' newsletters.

Plaintiff's reliance on *Bolger*, *Downing*, and *Yeager* is misplaced, as each of these cases dealt with an advertisement. *See Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60,

---

[14] Defendants respectfully request that the Court take judicial notice of the fact that the Chronicle's website contains a "Subscribe" button.  The Court may take judicial notice of publicly-available facts on the Internet that are not subject to reasonable dispute.  *Regents of Univ. of Calif. v. United States Dept. of Homeland Security*, 908 F.3d 476, 519 n. 30 (9th Cir. 2018) (taking judicial notice of the former U.S. President's "tweets") *reversed in part, vacated in part on other grounds by* 140 S.Ct. 1891 (Jun. 18, 2020); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1101–02 & n. 2 (9th Cir. 2014) (judicial notice taken of current version of publicly-available HTTP specification); *see also* websites for The New York Times (available at: https://www.nytimes.com/) and The Washington Post (available at: https://www.washingtonpost.com/).
[15] Order – ECF No. 29 at 7:23–8:1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

66, 103 S. Ct. 2875, 2880, 77 L. Ed. 2d 469 (1983)(pamphlets about contraceptives deemed to be commercial speech only because they were admitted to be advertisements, they referenced a specific product, and primarily had an economic motivation); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999 (9th Cir. 2001)(use of surfer's photo in quarterly catalogue that was "Abercrombie's largest advertising vehicle"); *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1097 (E.D. Cal. 2009)(concluding that publication was commercial speech because, among other things, it did not "inform the reader about emergency preparedness generally" but, instead, about how Cingular's wireless service had been improved to handle such emergencies).

Having already concluded that the Article is "demonstrably not an advertisement,"[16] these cases are readily distinguishable, and *Bolger*'s three-factor test strongly supports the conclusion that the Article amounts to noncommercial speech.[17] The Article does not reference a specific product; it provides no "call to action," asking the reader to engage in a commercial transaction; and it does not solicit business or encourage readers to use Defendants' products or services. The Article cannot be considered commercial speech when it consisted entirely of current financial news about tech stocks and educational commentary about "corrections" in equity markets.

Even if the Article has some economic motivation, that alone is insufficient to strip the Article of First Amendment protection. Snacks simply seeks to provide information about the stock market. Since Defendants are broker-dealers through which consumers can make investments, Defendants benefit from that investor education. But, critically, Snacks readers are not obligated or even solicited to employ their newly acquired information about the stock market by using Defendants' products or services.

Importantly, it is well within the province of the Court at the pleading stage to classify the nature of the speech at issue for First Amendment purposes, even when the issue

---

[16] Order – ECF 29 at 8:1

[17] *Bolger v. Youngs Drug Prods. Co.*, 463 U.S. 60, 66–67 (1983) (the three factors being: (1) whether the speech is an advertisement; (2) whether the speech references a specific product; and (3) whether the speech is economically motivated).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1    is dispositive of the case. *See Charles v. City of Los Angeles*, 697 F.3d 1146 (9th Cir. 2012)

2    (motion to dismiss affirmed after the district court correctly categorized the nature of the

3    speech at issue). Because the Article on its face is noncommercial speech that informs the

4    public about an important newsworthy matter, it is entitled to full First Amendment

5    protection. Contrary to Plaintiff's assertions, no discovery is needed to reach this

6    conclusion—it is a purely legal issue that can be determined based on the Article itself and

7    the facts already properly before the Court.

8        Ultimately, Defendant's free speech rights outweigh Plaintiff's commercial interests

9    in this case, which the Court may rule as a matter of law.

10        **C.    The Article Parodies Plaintiff**

11        Plaintiff argues that the Article does not parody him. This is incorrect. Although,

12   Plaintiff correctly points out the important distinction between parody and satire in his

13   Opposition—*i.e.*, that parody is a protected fair use and satire is not—his analysis

14   incorrectly describes and applies the difference. As the U.S. Supreme Court has explained,

15   "[p]arody needs to mimic an original to make its point . . . whereas satire can stand on its

16   own two feet[.]" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994). In other

17   words, a successful parody must necessarily invoke the underlying subject and poke fun at

18   its victim directly, as opposed to satire, which lampoons society more generally by pointing

19   out cultural follies or vices, for example. *See id.* at 580–81, n. 14 & 15. Ultimately, the

20   Article mimics Plaintiff in order to make its point, and thus parodies him directly.

21        Oddly, Plaintiff claims that the Article is not a parody because it "does not comment

22   on Plaintiff," relying on several cases involving trademark infringement (a claim not

23   involved here) to make his point.[18] This position is confusing because Plaintiff's claims are

24   based on the Article allegedly invoking his identity.[19] Apparently, Plaintiff believes that the

25   text of the Article needs to make fun of him to be deemed a parody. The First Amendment

26   is not so narrow.

27

28   [18] Oppo. – ECF No. 34, Subsec. III(D)
     [19] *Id.* at 26:3–4.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

The Article's use of the phrase "correct yourself before you wreck yourself" effectively invokes Plaintiff's tough-guy attitude and applies it to the Article's topic of stock market corrections in a comical way by changing "check yourself" to "correct yourself." Had the Article not included any newsworthy content, the illustration alone would have made no sense, as the important connection between the Article's text and the image and paraphrase would have been severed. But by linking the movie still and caption to the newsworthy topic of stock market corrections and mimicking Plaintiff just enough to make their point, the Article successfully parodies Plaintiff. The manner in which these materials are used is the comment about Plaintiff—not the body of the Article itself. Plaintiff's assertion that the Article's text must embody the parody misses the point.

Again, Defendants use images and captions at the beginning of its news reports to illustrate and make light of the topic being discussed. That is, Defendants' Snacks newsletters use materials which relate to the articles' subject matter by invoking similar concepts, related emotions, or by providing examples through pop-culture references. The use of the materials here was no exception—they were used to illustrate the importance of stock market corrections, which are required to ensure that investors don't "wreck" themselves. By mimicking Plaintiff's past "gangster" demeanor, the Article made fun of him directly by applying that attitude to the not-so-gangster topic of stock market news, thereby lampooning Plaintiff directly and effectuating the parody.

Consequently, the Article is a successful parody of Plaintiff and is therefore non-actionable.

### D.    The Article Satisfies the *Rogers* Defense

The artistic use Defendants employed with the phrase "correct yourself before you wreck yourself," while minimal, is sufficient to successfully invoke the *Rogers* defense. Plaintiff is incorrect in conclusively asserting that the *Rogers* test does not apply because the Article is not an "artistic or expressive work."[20] Plaintiff fails to appreciate the minimal creativity needed for a work to be deemed expressive and the very "low threshold" that is

---

[20] *Id.* at 19:23.

needed for a trademark use to be artistically relevant to that expressive work. *Rogers v. Grimaldi*, 875 F.2d 994, 999 (9th Cir. 1989); *see also Brown v. Electronic Art, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013) (works need not be the "expressive equal of *Anna Karenina* or *Citizen Kane*" to enjoy First Amendment protection).

Regardless of how Plaintiff chooses to characterize an "expressive work," application of the standards articulated by the Ninth Circuit demonstrates that the combination of the Article and the challenged content is sufficiently expressive for purposes of the *Rogers* test. As already noted, the Article makes a creative use of the movie still and paraphrase in such a way that it conveys a new meaning—the importance of stock market corrections. If greeting cards, which merely present an image coupled with a punchline, are expressive works under the Ninth Circuit's framework, then the Article also qualifies as an expressive work, as it relies on the same mechanisms to evince its humorous message. *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268–69 (9th Cir. 2018) ("'[A] greeting certainly evinces [a]n intent to convey a particularized message ..., and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it.'") (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010)) (other quotations and citations omitted). Like the "Honey Badger Don't Care" greeting cards, any reasonable person would interpret the Article as intending to convey the amusing message that stock market corrections are necessary to ensure that investors don't "wreck themselves."

Having satisfied *Rogers*' first prong, the only remaining question is whether the Article explicitly misleads consumers. It does not. As already noted, the type of meme illustration used in the Article is ubiquitous online and has become so widespread in today's digital world that no reasonable person would possibly interpret the Article as an implicit endorsement, let alone an explicit one. As *Gordon* notes, in applying this second prong, courts must be mindful "to balance 'the public interest in avoiding consumer confusion' against 'the public interest in free expression.'" *Gordon*, 909 F.3d at 269 (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (9th Cir. 1989).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

1   Where, as here, the use is in an entirely different context and industry—that is, the

2   financial industry versus the entertainment industry—the disparate use of the mark is "at

3   most only suggestive" and does not outweigh the user's First Amendment interests. *Id.* at

4   270 (quotation omitted). Indeed, the primary reason the Ninth Circuit remanded *Gordon*

5   back to the district court was because the plaintiff and defendant were both in the greeting

6   card industry. *Id.* at 271 (because the defendant used the plaintiff's mark "in the same way

7   that [the plaintiff] used it—to identify the source of greeting cards in which the bottom line

8   is 'Honey Badger Don't Care'" a triable issue of fact remained). Here, there is no such

9   factual issue that prevents that court from applying *Rogers* as a matter of law.

10   Further, any source-identifying function that the phrase "check yourself before you

11   wreck yourself" may have once possessed has long since passed. This phrase is now an

12   integral part of the public's vocabulary, and similar variations are widely used throughout

13   American pop culture. Plaintiff does not have the right to control the public discourse or

14   limit the manner in which we express ourselves. The phrase has taken on a meaning that is

15   separate and apart from being the identifier of Plaintiff it arguably may have once been. As

16   noted in Defendants' moving papers, even had the phrase been a registered trademark for

17   specific good and service (and it was not), it would have lost any trademark protection

18   because it has become generic.

19   Plaintiff attempts to overcome *Rogers*' second prong by alleging an explicit intent

20   to deceive and mislead consumers in his Opposition.[21] This, Plaintiff claims, is sufficient in

21   and of itself to survive a motion to dismiss when faced with the *Rogers* defense. However,

22   the FAC contains no such allegation. The FAC merely alleges that Defendants conduct in

23   creating the Article was deliberate—not that the Article explicitly mislead consumers. The

24   fact that the image and paraphrase were used *illustratively*, as properly determined by the

25   Court, undermines Plaintiff's post hoc assertion in this respect. Such an illustrative use, by

26   its very nature, cannot explicitly mislead consumers as to the source of Defendants'

27   products or services, or suggest an endorsement in connection thereto, because the

28

---

[21] *Id.* at 29:19–28 (citing FAC ¶¶ 37–43 as the basis of this assertion).

- 12 -                                          CASE NO.  3:21-cv-02304-LB

illustration is merely a visual representation of the idea being conveyed. Where, as here, there is no question that the use of another's mark (or persona) does not explicitly mislead consumers, the *Rogers* defense is readily applicable and can be sustained as a matter of law.

Accordingly, the Article satisfies the *Rogers* defense, and Plaintiff's claim fails as a matter of law.

### E.    Plaintiff's Lanham Act Claim Conflicts with Copyright Law

Plaintiff's false endorsement claim is rooted in a third party's copyrighted work, specifically, the 2007 movie, *Are We Done Yet?* In essence, Plaintiff's claim seeks to control the use of this copyrighted work by prohibiting the public display of the subject movie still, in which Plaintiff has not alleged any intellectual property rights or interest. The relief sought by Plaintiff impermissibly interferes with the exclusive rights afforded to the copyright owner of the movie, and as such, this scenario ultimately pits the Lanham Act and the Copyright Act against each other.

Here, Plaintiff relies on the Lanham Act to usurp the copyright owner's rights in the movie still under the theory that the Article creates a likelihood of consumer confusion. That is, Plaintiff asserts that Snacks readers will be misled by the idea being conveyed through Defendants' use of the movie still because it suggests that he endorses the Article, and by extension, is affiliated with Defendants.

But, as already discussed, such illustrative uses do not have this effect on purchasers. These visual representations are understood as what they are—illustrations. This is the type of claim that *Dastar* cautions against, and as the Supreme Court explained, the "Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Dastar v. Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003). As such, Plaintiff's Lanham Act claim fails because it conflicts with the Copyright Act.

### F.    Plaintiff's "Catchphrase" Is Generic and Does Not Identify Plaintiff

Only a "distinctive attribute" of a celebrity's identity is actionable under § 43(a) of the Lanham Act. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015). In other words, the use of materials which do not clearly identify the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

CASE NO.  3:21-cv-02304-LB

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

putative celebrity cannot support a false endorsement claim. To the extent that Plaintiff's claim relies on his "signature catchphrase," his claim is untenable because the phrase does not identify any one individual, let alone Plaintiff.

As mentioned, the phrase "check yourself before you wreck yourself" is widely used to convey a sense of seriousness by the speaker. Generally, the phrase translates to "you better proceed cautiously, so you don't hurt yourself."[22] Over the past several decades, the phrase has become so commonplace that it has spurred countless comical variations, which often involve subtle variations on the rhyme scheme that the phrase already employs. When a word or phrase becomes a part of society's dialect, it takes on a new meaning and loses any source-identifying function it may have once provided. Put differently, once the consumer recognition associated with a trademark has faded, the trademark ceases to exist.

The widespread use of the phrase shows that it no longer serves to identify the source of goods or services (i.e., Plaintiff), but rather is now a colloquial expression with no consumer recognition attached to it at all. In its moving papers, Defendants provide numerous examples of instances where the phrase is used to convey different ideas, all of which express some type of caution one way or another.[23] Plaintiff cannot seriously be arguing that all these uses are attempting to create consumer confusion by suggesting that he endorses each and every product or service using the phrase (or some variation of it). Reasonable people know that the phrase does not identify Plaintiff—it is simply an expression that carries its own meaning dissociated from Plaintiff.

Plaintiff's attempt to apply the *Sleekcraft* factors does not answer whether the phrase functions as a trademark—applying those factors assumes that the phrase already is a trademark and then seeks to determine if consumer confusion is likely to result from its use. Unless a trademark exists, the *Sleekcraft* factors do not apply. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated on a different issue by *Mattel, Inc. v. Walking*

---

[22] *See* Motion – ECF No. 31 at 25:11–13 (Urban Dictionary uses the following definition: "Take a step back and examine your actions, because you are in a potentially dangerous or sticky situation that could get bad very easily. Often in a harmful manner."); *see also* Fact No. 6, Request for Judicial Notice.

[23] *See* Motion – ECF No. 31 at 19:14–20:1.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2049 Century Park East, Suite 3550
Los Angeles, CA 90067-3007

*Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)(considering whether alleged infringer competed with "trademark owner" or whether good are merely related). After all, the very first *Sleekcraft* factor is the "strength of the mark." *Id.* Yet, each of the cases on which Plaintiff relies involve overtly commercial uses of distinctive attributes of various celebrities. Plaintiff does not point to a single case where an illustrative use of a generic phrase supported a false endorsement claim under the Lanham Act.

Plaintiff's attempt to claim trademark rights in a common phrase is an afront to the First Amendment's guarantee of free speech and presents exactly the type of scenario that the Ninth Circuit has cautioned against. Plaintiff is not entitled to monopolize an everyday expression simply because he incorporated a variation of that phrase into a song three decades ago. Ultimately, trademark law seeks to ensure that consumers know what they are buying, and thus instances that do not present a likelihood of consumer confusion simply cannot be the basis of a false endorsement claim.

The paraphrase used in the Article does not identify Plaintiff, and therefore, any reliance that Plaintiff places on the phrase to support his claim fails as a matter of law.

## III.   CONCLUSION

Plaintiff's claim fails, as a matter of law, for numerous reasons: he fails to plead facts that give him standing to raise his claim; his theory of liability requires commercial speech and the Article is clearly a noncommercial news piece complemented by commentary; his claim is barred by various First Amendment principles; and ultimately, Plaintiff has no right in the image or paraphrase used in the Article.

His claim does not meet the applicable standards under FRCP 12(b), and as such, it should be dismissed. In light of Plaintiff's inability to cure the deficiencies required to support his claim after already being given that opportunity, there are clearly no additional facts that exist that can do so. As such, Plaintiff's claim should be dismissed with prejudice.

1 | Dated: August 6, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER
SCHRECK, LLP

By:  /s/ Mitchell J. Langberg
    MITCHELL J. LANGBERG
    Attorneys for Defendants
    ROBINHOOD MARKETS, INC. AND
    ROBINHOOD FINANCIAL, LLC